DAVEN G. LOWHURST (State Bar No. 124723)
JOHN A. CHATOWSKI (State Bar No. 174471)
THELEN REID BROWN RAYSMAN & STEINER LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3601
Telephone: 415-371-1200
Facsimile: 415-371-1211
dglowhurst@thelen.com
jachatowski@thelen.com

Attorneys for Plaintiff
HOMESTAKE LEAD COMPANY OF MISSOURI

*ORIGINAL FILED MAY 17 2007 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA*

*E-filing*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOMESTAKE LEAD COMPANY OF MISSOURI,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and THE CONTINENTAL INSURANCE COMPANY,

    Defendants.

CASE NO. C 07 - 2634 EMC

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff HOMESTAKE LEAD COMPANY OF MISSOURI ("HOMESTAKE") hereby alleges as follows:

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

1. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is a civil action between citizens of different states and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

///

2.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that (a) HOMESTAKE is informed and believes that the defendants herein, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("NATIONAL UNION") and THE CONTINENTAL INSURANCE COMPANY ("CONTINENTAL") (collectively "DEFENDANTS"), each reside in this District for venue purposes, and (b) a substantial part of the events or omissions giving rise to the claims brought herein, including the issuance of the liability insurance policies by NATIONAL UNION that are at issue in this litigation, occurred in the City and County of San Francisco and in the City of Walnut Creek, Contra Costa County.

3.  Pursuant to Local Rule 3-2(d), this action is properly filed in the San Francisco-Oakland Division because a substantial part of the events or omissions giving rise to the claims brought herein, including the issuance of the liability insurance policies by NATIONAL UNION that are at issue in this litigation, occurred in the City and County of San Francisco and in the City of Walnut Creek, Contra Costa County.

## THE PARTIES

4.  At all pertinent times herein, Plaintiff HOMESTAKE was and is a corporation, organized and existing under the laws of the State of California. HOMESTAKE is an inactive corporation in good standing with its principal executive office in Toronto, Ontario Canada.

5.  At all pertinent times herein, Defendant NATIONAL UNION was and is a corporation, organized and existing under the laws of the Commonwealth of Pennsylvania, and having its principal place of business in New York. NATIONAL UNION is authorized to do, and is doing, business in California. NATIONAL UNION issued eight commercial general liability insurance policies to HOMESTAKE at its California office for consecutive annual periods from December 1, 1993 to December 1, 2001. NATIONAL UNION is obligated under the terms of its policies to provide indemnity and a defense to the claims at issue, and as alleged herein.

6.  At all pertinent times herein, Defendant CONTINENTAL was and is a corporation, organized and existing under the laws of the Commonwealth of Pennsylvania, and having its principal place of business in Illinois. CONTINENTAL is authorized to do, and is doing, business in California. CONTINENTAL issued ten comprehensive general liability insurance policies

covering HOMESTAKE continuously from January 1, 1975 to April 1, 1986. CONTINENTAL is obligated under the terms of its policies to provide indemnity and a defense to the claims at issue, and as alleged herein.

## FACTUAL BACKGROUND

### The Ellison Claims

7. Commencing in or about 2000, HOMESTAKE was named as a defendant in a series of bodily injury actions filed in the State of Missouri. The plaintiffs in these actions were railroad employees alleging, *inter alia*, bodily injury as a result of their exposure to products mined and/or produced by HOMESTAKE and others.

8. On or about November 22, 2000, HOMESTAKE tendered the first of these suits to NATIONAL UNION for coverage. On or about January 29, 2001, HOMESTAKE tendered to NATIONAL UNION 106 additional suits brought against it for coverage. These 107 suits—including certain additional suits later brought against HOMESTAKE as described below—eventually were collectively referred to by the parties, including DEFENDANTS, as the "Ellison Claims," and are herein referred to as the "ELLISON CLAIMS".

9. On or about April 17, 2002, HOMESTAKE tendered the 107 ELLISON CLAIMS to CONTINENTAL for coverage.

10. On or about August 13, 2002, HOMESTAKE tendered an additional seven ELLISON CLAIMS to CONTINENTAL for coverage. On or about August 19, 2002, HOMESTAKE tendered these same seven ELLISON CLAIMS to NATIONAL UNION for coverage. This brought the total number of ELLISON CLAIMS to 114.

11. On or about December 31, 2002, HOMESTAKE wrote to CONTINENTAL and NATIONAL UNION requesting reimbursement of its defense costs from each insurer—except to the extent paid by one of HOMESTAKE'S other insurers—related to the defense of the ELLISON CLAIMS.

12. On or about January 6, 2003, NATIONAL UNION confirmed that it would defend HOMESTAKE in cooperation with HOMESTAKE'S other insurers pursuant to a cost-sharing agreement entered into separately by and between HOMESTAKE'S insurers.

13. HOMESTAKE is informed and believes that in or about January 2003, DEFENDANTS and three other insurers of HOMESTAKE who are not parties to this action (The Travelers Indemnity Company, Hartford Accident & Indemnity Company, and Insurance Company of North America) agreed among themselves to share HOMESTAKE'S defense costs in certain proportions. On or about February 3, 2003, NATIONAL UNION confirmed to HOMESTAKE that NATIONAL UNION had entered into the cost-sharing agreement with CONTINENTAL and HOMESTAKE'S other insurers to reimburse HOMESTAKE'S defense costs.

14. On or about January 29, 2003, DEFENDANTS and HOMESTAKE'S other three insurers agreed to settle the then pending ELLISON CLAIMS, as well as an additional 89 unfiled claims, up to a total sum recommended by HOMESTAKE'S defense counsel.

15. In or about February and March 2003, HOMESTAKE informed DEFENDANTS of a provision of the settlement of the ELLISON CLAIMS by which HOMESTAKE would release certain co-defendants in those cases from the indemnity and contribution claims which HOMESTAKE had against those co-defendants. On or about March 5, 2003, HOMESTAKE asked DEFENDANTS to consent to HOMESTAKE'S release of those co-defendants and to confirm their respective obligations to reimburse HOMESTAKE in full for its defense costs and settlement payments, without reservation.

16. On or about March 25, 2003, DEFENDANTS did so and entered into a written agreement with HOMESTAKE and its three other insurers regarding the funding of the settlement of the ELLISON CLAIMS and payment of HOMESTAKE'S defense costs. As part of that agreement, DEFENDANTS each (1) agreed "to fund its full share of the settlement amount as has been agreed among the insurers"; (2) agreed "not, thereafter, to seek reimbursement from Homestake of any portion of the settlement payment"; (3) agreed to "pay. . . all reasonable and necessary defense costs which have been incurred and will be incurred by Homestake in the defense of the claims being settled. . . in the portions which have been agreed among the insurers"; (4) agreed "not to seek reimbursement from Homestake of any portion of the defense costs paid"; and (5) confirmed "that the cost sharing agreement among the insurers provides for payment of the settlement amount and reasonable and necessary defense costs in full (i.e. the percentage shares

total 100%)." In reliance on the representations of DEFENDANTS and HOMESTAKE'S other insurers that they would abide by the foregoing terms, HOMESTAKE agreed to release all claims which it had against them.

17. In or about March 2003, DEFENDANTS sent HOMESTAKE their agreed shares of the amount finally negotiated by HOMESTAKE'S defense counsel to settle the ELLISON CLAIMS, which was for a sum less than what DEFENDANTS and HOMESTAKE'S other insurers had agreed on January 29, 2003 to pay to resolve the ELLISON CLAIMS and the 89 unfiled claims.

### The Bray Claims

18. On or about May 23, 2003, HOMESTAKE tendered to DEFENDANTS and its other insurers 90 bodily injury claims for coverage. These claims—including certain additional claims and suits against HOMESTAKE as described below— eventually were collectively referred to by the parties, including DEFENDANTS, as the "Bray Claims," and are herein referred to as the "BRAY CLAIMS". The BRAY CLAIMS consisted of the 89 unfiled claims that DEFENDANTS and HOMESTAKE'S other insurers had agreed on January 29, 2003 to pay to resolve along with the ELLISON CLAIMS, plus one additional claim. HOMESTAKE requested specific settlement authority as to 81 of these claims.

19. On or about April 26, 2004, HOMESTAKE renewed its request to DEFENDANTS to settle the BRAY CLAIMS, which then numbered 125 claims.

20. On or about April 30, 2004, NATIONAL UNION authorized its portion of the settlement of the BRAY CLAIMS pursuant to the January 29, 2003 cost-sharing agreement among the insurers.

21. On or about June 16, 2004, after CONTINENTAL had received a copy of a recently filed complaint against HOMESTAKE by eight of the claimants who were part of the BRAY CLAIMS, CONTINENTAL agreed to fund the settlement of the BRAY CLAIMS.

22. At ensuing intervals during the remainder of 2004, as complaints filed by additional claimants who were part of the BRAY CLAIMS were served upon HOMESTAKE, HOMESTAKE tendered those complaints to DEFENDANTS for coverage.

23. In late 2004, DEFENDANTS and two of HOMESTAKE'S other insurers (Hartford Accident & Indemnity Company and the Insurance Company of North America) authorized HOMESTAKE'S defense counsel to settle the BRAY CLAIMS without the participation of the fifth insurer, The Travelers Indemnity Company. The settlement of the BRAY CLAIMS and the lawsuits filed by the BRAY claimants was subsequently completed in or about June 2005 and funded by DEFENDANTS and Hartford Accident & Indemnity Company and the Insurance Company of North America.

24. As was the case in the settlement of the ELLISON CLAIMS, as part of its settlement of the BRAY CLAIMS, HOMESTAKE entered into a companion settlement agreement with certain of its co-defendants by which it released its claims for indemnity and contribution against those co-defendants. HOMESTAKE did so in reliance upon its expectation that DEFENDANTS would fulfill their obligations to reimburse HOMESTAKE'S defense costs in full.

25. On or about August 3, 2005, NATIONAL UNION confirmed in writing that it "will continue to pay the share of defense costs that it previously agreed to pay as part of the cost-sharing agreement." However, NATIONAL UNION later contended for the first time that it had no additional obligation to reimburse HOMESTAKE'S defense costs, based on a purportedly recently-discovered Self-Insured Retention.

26. HOMESTAKE made repeated demands to DEFENDANTS that they pay all outstanding defense costs in full. While DEFENDANTS intermittently made payments to HOMESTAKE for its defense costs, these payments were incomplete, untimely, insufficient and in breach of DEFENDANTS' duties under the policies. DEFENDANTS subsequently refused to make any additional payments and have failed to reimburse HOMESTAKE'S defense costs in full.

### FIRST CAUSE OF ACTION

### (Breach of Contract)

27. HOMESTAKE repeats and realleges paragraphs 1 to 26, inclusive, of this complaint as though fully set forth herein.

///

28.   HOMESTAKE has performed all the terms, conditions, covenants, and obligations imposed upon it under the policies of insurance at issue issued by DEFENDANTS.

29.   DEFENDANTS, and each of them, have breached and repudiated their respective independent obligations to defend HOMESTAKE, including by failing to provide HOMESTAKE with a complete defense of the ELLISON CLAIMS and BRAY CLAIMS and to reimburse HOMESTAKE for all outstanding defense costs.

30.   As a proximate result of DEFENDANTS' breach, HOMESTAKE has suffered damages in an amount to be proven at trial, but in excess of $400,000.

WHEREFORE, HOMESTAKE LEAD COMPANY OF MISSOURI prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

31.   HOMESTAKE repeats and realleges paragraphs 1 to 26, inclusive, of this complaint as though fully set forth herein.

32.   HOMESTAKE has performed all the terms, conditions, covenants, and obligations imposed upon it under the policies of insurance at issue issued by DEFENDANTS.

33.   DEFENDANTS, at all material times, had a duty to act fairly and in good faith to HOMESTAKE in carrying out their responsibilities under their respective policies. They were also obliged to refrain from placing their interests above those of HOMESTAKE.

34.   As part of DEFENDANTS' obligation to act fairly and in good faith toward HOMESTAKE, DEFENDANTS owed a duty to reimburse HOMESTAKE for its reasonable defense costs promptly, timely, and fully.

35.   Notwithstanding their obligation to act fairly and in good faith toward HOMESTAKE, DEFENDANTS breached their obligation to HOMESTAKE as described above and as follows: DEFENDANTS failed to promptly and fully defend HOMESTAKE entirely for the ELLISON CLAIMS and BRAY CLAIMS. After initially paying a portion of HOMESTAKE'S defense costs in connection with the ELLISON CLAIMS and BRAY CLAIMS pursuant to the January 2003 cost-sharing agreement among HOMESTAKE'S insurers and the March 25, 2003

1  agreement between HOMESTAKE and its insurers, once the settlements of the ELLISON and
2  BRAY CLAIMS were concluded, and DEFENDANTS' potential liability on those claims had
3  been capped, DEFENDANTS refused to pay HOMESTAKE'S remaining defense
4  costs, unreasonably and without justification. Further, HOMESTAKE would not have entered into
5  the settlements of the ELLISON CLAIMS and BRAY CLAIMS and released its claims for
6  indemnity and contribution against its co-defendants in those matters without the agreement of
7  DEFENDANTS to reimburse HOMESTAKE for 100% of its reasonable and necessary defense
8  costs and to do so without reservation. By engaging in the foregoing conduct, DEFENDANTS
9  acted without probable cause and without any objective basis for refusing to honor their
10 respective insurance policies, put their financial interests ahead of the interests of their insured,
11 and forced HOMESTAKE to file suit to enforce the policies.

12      36.   As a direct and proximate result of DEFENDANTS' breach of their respective
13 covenants of good faith and fair dealing, HOMESTAKE has suffered damages in an amount to be
14 proven at trial.

15      WHEREFORE, HOMESTAKE LEAD COMPANY OF MISSOURI prays for judgment as
16 set forth below.

### THIRD CAUSE OF ACTION

#### (Declaratory Relief)

19      37.   HOMESTAKE repeats and realleges paragraphs 1 to 26, inclusive, of this
20 complaint as though fully set forth herein.

21      38.   A present and actual controversy exists between HOMESTAKE and
22 DEFENDANTS regarding DEFENDANTS' obligation to fully reimburse HOMESTAKE for its
23 defense costs as alleged herein.

24      39.   HOMESTAKE contends that DEFENDANTS, and each of them, are jointly and
25 severally obligated to reimburse HOMESTAKE for all past legal fees and expenses incurred in
26 defending the ELLISON CLAIMS and BRAY CLAIMS.

27      40.   HOMESTAKE alleges, based on information and belief, as well as on
28 DEFENDANTS' past representations, that DEFENDANTS contends otherwise.

41.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that HOMESTAKE may ascertain its rights and duties and those of DEFENDANTS with respect to DEFENDANTS' obligations to reimburse HOMESTAKE for all past legal fees and expenses incurred in defending the ELLISON CLAIMS and BRAY CLAIMS.

WHEREFORE, HOMESTAKE LEAD COMPANY OF MISSOURI prays for judgment as set forth below.

**PRAYER FOR RELIEF**

1. Actual damages in an amount subject to proof at trial, but in excess of $400,000;

2. Pre-judgment interest on the sums due HOMESTAKE at the maximum rate permitted by law;

3. Costs, expenses and attorneys' fees incurred to the maximum rate permitted by law;

4. For a declaration and order that DEFENDANTS are each obligated to reimburse all outstanding legal expenses and costs incurred by HOMESTAKE in defending the ELLISON CLAIMS and BRAY CLAIMS; and

5. For such other and further relief as the Court deems just and proper.

Dated: May 17, 2007

THELEN REID BROWN RAYSMAN & STEINER LLP


By _____
DAVEN G. LOWHURST
JOHN A. CHATOWSKI
Attorneys for Plaintiff
HOMESTAKE LEAD COMPANY OF MISSOURI

**JURY DEMAND (FRCP 38)**

Pursuant to FRCP 38, HOMESTAKE requests a trial by jury on all issues so triable.

Dated: May 17, 2007

THELEN REID BROWN RAYSMAN & STEINER LLP

By _____
DAVEN G. LOWHURST
JOHN A. CHATOWSKI
Attorneys for Plaintiff
HOMESTAKE LEAD COMPANY OF MISSOURI