Gretchen A. Ramos, No. 198689
Vance A. Woodward, No. 231730
**CARROLL, BURDICK & McDONOUGH LLP**
Attorneys at Law
44 Montgomery Street, Suite 400
San Francisco, California 94104
Telephone:     (415) 989-5900
Facsimile:     (415) 989-0932
Email:         gramos@cbmlaw.com
               vwoodward@cbmlaw.com

Attorneys for The Continental Insurance Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMESTAKE LEAD COMPANY OF MISSOURI,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and THE CONTINENTAL INSURANCE COMPANY,<br><br>　　　　　　Defendants. | No. C-07-2634-EMC<br><br>Date:　　　August 15, 2007<br>Time:　　　10:30 a.m.<br>Judge:　　 Magistrate Edward M. Chen<br>Location　Courtroom C, 15th Floor<br>　　　　　　450 Golden Gate Avenue<br>　　　　　　San Francisco, California<br><br>Complaint Filed:　May 17, 2007<br>Trial Date:　　　　None |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONTINENTAL'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY**

CBM-IPG\SF358747.3

TABLE OF CONTENTS

Page

I. SUMMARY OF ARGUMENT ................................................................................... 1

II. RELEVANT FACTS .................................................................................................. 2

    A. The Underlying Claims in This Declaratory Judgment Action and the New York Action Relate to Homestake's Ownership and Operation of a Missouri Lead Mine ................................................................................................ 2

    B. Homestake Is Seeking Coverage Under Five Different Insurers' Policies; All of These Insurers Are Parties to the New York Action ........................................... 2

    C. Should This Action Continue, All of the Insurers That Have Already Answered in the New York Action, and That Have No Connection to California Will Be Brought Into This Action ...................................................... 3

III. LEGAL ARGUMENT ................................................................................................. 3

    A. This Action Should Be Dismissed in Light of the Pending New York Action To Prevent Duplicative Litigation, To Conserve Judicial Resources and To Avoid Interference in the New York Court's Resolution of State Insurance Law Issues ................................................................................................................ 3

        1. Abstention Pursuant to *Brillhart* Is Proper Because the Relief Homestake Seeks Depends Upon the Resolution of Its Declaratory Relief Claim ............. 4

        2. In Determining Whether to Exercise Discretion, the Ninth Circuit Has Adopted a Policy of Restraint When the Action Involves State Law Issues and Generally Declines To Entertain Reactive Declaratory Actions ................................................................................................. 5

        3. This Court Should Abstain Pursuant to *Brillhart* ........................................... 5

            a. The Actions Are Parallel and Involve State Insurance Law Issues ......... 6

            b. Notions of Comity Weigh in Favor of Staying This Action ................... 7

            c. The Court's Obligation To Discourage Forum Shopping Warrants Abstention ............................................................................................... 7

            d. The New York State Court Is a Convenient Forum for the Parties ......... 8

            e. Abstention Will Ensure Efficiency .......................................................... 9

    B. The Court Should Dismiss This Action Because It Is an Inconvenient Forum for the Parties ......................................................................................................... 9

        1. An Adequate Alternative Forum Exists for Homestake To Litigate the Issues Raised in this Action ........................................................................... 10

2. Private Interest Factors Weigh in Favor of Dismissing or Staying this Action .................................................................................................. 10

3. Public Interest Factors Weigh in Favor of Dismissing or Staying ................. 11

IV. CONCLUSION ................................................................................................... 14

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Mercier,*
    913 F.2d 273 (6th Cir. 1990) ................................................................................. 7

*Am. States Ins. Co. v. Kearns,*
    15 F.3d 142 (9th Cir. 1994) .................................................................................. 5

*Brillhart v. Excess Ins. Co.,*
    316 U.S. 491 (1942) ..................................................................................... 4, 5, 9

*California State Auto. Ass'n v. Maloney,*
    341 U.S. 105 (1951) ............................................................................................. 7

*Coltec Indus. v. Cont'l Ins. Co.,*
    2005 WL 1126951 (E.D. Pa. 2005) ..................................................................... 5

*Cont'l Cas. Co. v. Robsac Indus.,*
    947 F.2d 1367 (9th Cir. 1991) ........................................................................... 7, 8

*Employers Reinsurance Corp. v. Karussos,*
    65 F.3d 796 (9th Cir. 1995) ................................................................................. 5

*Golden Eagle Ins. Co. v. Travelers Cos.,*
    103 F.3d 750 (9th Cir. 1996) ............................................................................... 5

*Gov't Employees Ins. Co. v. Dizol,*
    133 F.3d 1220 (9th Cir. 1998) ..................................................................... 5, 6, 8

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501, 508 (1947) ............................................................................. 11, 12

*Horne v. Fireman's Retirement Sys. of St. Louis,*
    69 F.3d 233 (8th Cir. 1995) ................................................................................. 5

*Lueck v. Sundstrand Corp.,*
    236 F.3d 1137 (9th Cir. 2001) ........................................................................... 10

*Medmarc Ins. Co. v. Berkeley Props.,*
    2003 U.S. Dist. LEXIS 7222 (N.D. Cal. April 28, 2003) ................................... 6

*Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) ............................................................................................ 7, 8

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ..................................................................................... 10, 12

*Polido v. State Farm Mut. Auto. Ins. Co.,*
    110 F.3d 1418 (9th Cir. 1997) ............................................................................. 6

*Public Service Commission of Utah v. Wycoff Co.*,
  344 U.S. 237 (1952) .................................................................................................... 4

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) .................................................................................................... 7

*The Continental Insurance Company v. Cyprus Amax Minerals Company, et al.*,
  index no. 0101260/07 ................................................................................................. 1

*United Nat'l Ins. Co. v. R & D Latex Corp.*,
  242 F.3d 1102, 1112 (9th Cir. 2001) .......................................................................... 4

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................................ 4, 5, 9

*Zurich Ins. Co. v. Shearson Lehman Hutton*,
  642 N.E.2d 1065 (N.Y. 1994) ................................................................................... 12

**Statutes**

Federal Declaratory Judgment Act,
  28 U.S.C. § 2201(a) ................................................................................................ 3, 4

**Other Authorities**

McCarran-Ferguson Act
  59 Stat. 33, as amended, 15 U.S.C. §§ 1011 ............................................................. 7

Restatement (Second) of Conflict of Laws § 188(2) ...................................................... 12

Restatement (Second) of Conflict of Laws § 193 ........................................................... 12

## I. SUMMARY OF ARGUMENT

The state law insurance issues in this reactive declaratory judgment action can better be settled in the case pending in New York State, which The Continental Insurance Company ("Continental") filed prior to this action and that involves all of the parties in this case and the other insurers that have an interest in the resolution of these issues. So as to avoid duplicative litigation and this Court's needless resolution of state law issues, Continental requests this Court to abstain from exercising jurisdiction and dismiss, or in the alternative stay this action. Dismissal is also warranted because New York is a more convenient forum—the majority of the parties are in closer proximity to New York than San Francisco, and New York has a greater interest in the resolution of the issues in this case as the Continental policies were issued there.

This is exactly the type of action that warrants abstention. Homestake Lead Company of Missouri ("Homestake") initiated the present insurance coverage action involving state law insurance issues after Continental filed a similar and more comprehensive insurance coverage action in New York state court, styled *The Continental Insurance Company v. Cyprus Amax Minerals Company, et al.*, index no. 0101260/07, on January 26, 2007 (the "New York Action"). This action, like the New York Action, relates to Continental's obligations to Homestake under the primary policies that Continental issued to Amax, Inc. for bodily injury claims asserted against Homestake in the State of Missouri.

Permitting this action to proceed would waste the Court's resources, result in duplicative litigation and risk inconsistent rulings on important issues of state insurance law, which the New York court is best suited to decide. As Homestake has no practical connection to California, and the majority of the interested parties are located in or close to New York, this Court has no reason to exercise jurisdiction. One can only surmise that Homestake filed this action, rather than plead its causes of action in the New York Action, in an attempt to secure a more favorable forum and to retaliate against Continental for filing in New York. Such procedural maneuvering should not be permitted, especially in this instance where Homestake's causes of action can be decided in the more comprehensive New York Action, which involves all

of the parties that have an interest in the resolution of the issues Homestake raises in this action—not just the two that Homestake decided to sue here.

## II. RELEVANT FACTS

### A. The Underlying Claims in This Declaratory Judgment Action and the New York Action Relate to Homestake's Ownership and Operation of a Missouri Lead Mine

In 1967, Homestake, along with Amax, Inc., now know as Cyprus Amax Minerals Company, began operating a lead mine and mill in Missouri (the "Missouri Operation"). (Woodward Decl., Exhibit 1, BNSF Complaint ¶¶ 35-37, 39; Exhibit 2, Continental Complaint ¶¶ 21-24.) Since 2000, individuals have asserted claims against Homestake, Amax and other parties such as BNSF Railway Company ("BNSF") seeking damages for bodily injuries allegedly caused from exposure to lead dust. (Woodward Decl., Exhibit 1, BNSF Complaint, ¶¶ 128-233.) Homestake's claims in this suit relate to the first two sets of lead claims—the Ellison and the Bray Claims. (Woodward Decl., Exhibit 3, Homestake Complaint, ¶¶ 7, 18.) In 2005, BNSF brought an action in Missouri against Homestake seeking indemnity in relation to certain lead-pollution-related bodily injury claims that it had settled as well as for lead-pollution-related property damage that BNSF suffered directly (the "BNSF Contribution Claims"). (Woodward Decl., Exhibit 1, BNSF Complaint.) The New York Action seeks a declaration on Continental's obligations to Homestake for these Claims. (Woodward Decl., Exhibit 2, Continental Complaint.)

### B. Homestake Is Seeking Coverage Under Five Different Insurers' Policies; All of These Insurers Are Parties to the New York Action

Continental and another insurer—Insurance Company of North America ("INA")—issued insurance policies to Amax, Inc. under which Homestake claims it is an additional insured. (Woodward Decl., Exhibit 2, Continental Complaint, ¶ 26-27.) INA and several other insurers—The Travelers Indemnity Company ("Travelers"), Hartford Accident & Indemnity Company ("Hartford") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union")—allegedly issued coverage directly to Homestake during the relevant period. (Woodward Decl., Exhibit 2, Continental Complaint, ¶¶ 28-31.)

A coverage dispute has now arisen amongst Homestake, Amax and their insurers regarding coverage for the lead-pollution-related bodily injury and property damage claims. In an attempt to resolve these and other coverage issues, on January 26, 2007, Continental filed a declaratory relief action in New York state court against Amax, the named insured on the Continental policies, an affiliate named Missouri Lead Smelting Company ("MLS"), Homestake, and all their potentially responsive insurers: Travelers, Hartford, National Union, INA and an alleged successor to INA named Century Indemnity Company ("Century Indemnity"). (Woodward Decl., Exhibit 2, Continental Complaint.)

### C. Should This Action Continue, All of the Insurers That Have Already Answered in the New York Action, and That Have No Connection to California Will Be Brought Into This Action

Homestake filed this competing action on May 17, 2006, but only named two defendants: National Union and Continental. Homestake's complaint addresses only a subset of the lead claims, and raises issues that Homestake could have raised via counterclaim in the New York Action. Although Homestake is nominally incorporated in California, it has no connection to California. (Woodward Decl., Exhibit 3, Homestake Complaint, ¶ 4.) It shut down operations years ago, and its business address is now located in Toronto, Ontario. (Woodward Decl., Exhibit 3, Homestake Complaint, ¶ 4; and Woodward Decl., Exhibit 5, Homestake Answer, ¶ 10-11.) None of the other interested parties—Amax and the other insurers named as defendants in the New York Action—have any connection to California. (Woodward Decl., Exhibit 2, Continental Complaint, ¶¶ 5-16; Exhibit 3, Homestake Complaint, ¶ 4; Exhibit 4, Answer of Amax and MLS, ¶¶ 7-9; Exhibit 6, Century Indemnity's Answer, ¶¶ 12-13; Exhibit 7, Hartford's Answer, ¶ 14; Exhibit 8, Travelers' Answer, ¶ 15; and Exhibits 9-14.)

## III. LEGAL ARGUMENT

### A. This Action Should Be Dismissed in Light of the Pending New York Action To Prevent Duplicative Litigation, To Conserve Judicial Resources and To Avoid Interference in the New York Court's Resolution of State Insurance Law Issues

Homestake seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that it is entitled to coverage under the Continental policies for its underlying lead

liabilities. Under the Federal Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration"; however, a district court is not compelled to exercise that jurisdiction. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).

### 1. Abstention Pursuant to *Brillhart* Is Proper Because the Relief Homestake Seeks Depends Upon the Resolution of Its Declaratory Relief Claim

Under the Declaratory Judgment Act, codified at 28 U.S.C. § 2201, a federal court has "substantial discretion" to decline to exercise jurisdiction over an action for declaratory relief. *See Wilton,* 515 U.S. at 286-287. Indeed, "this is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Service Commission of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952).

In *Brillhart,* the U.S. Supreme Court developed an abstention rule that applies in matters such as this where suits have been initiated, one in state court and one in federal court and the two actions involve similar claims or the parties' claims against each other could be adjudicated in one of the courts. The Supreme Court reasoned that abstention was proper because:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495.

Although Homestake alleges claims for breach of contract and bad faith in addition to its request for declaratory relief, because the request for declaratory relief lies at the heart of the action—as the breach of contract and bad faith claims are wholly dependent upon the resolution of Homestake's request for declaratory relief—the *Brillhart/Wilton* abstention doctrine applies. See *United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (finding that "despite requests for monetary relief, the actions were primarily declaratory in nature and therefore jurisdiction remained discretionary"); *Golden Eagle Ins. Co. v. Travelers*

*Cos.*, 103 F.3d 750, 755 (9th Cir. 1996), and *Employers Reinsurance Corp. v. Karussos*, 65 F. 3d 796, 801 (9th Cir. 1995), *both overruled on other grounds*, *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998.[1]

### 2. In Determining Whether to Exercise Discretion, the Ninth Circuit Has Adopted a Policy of Restraint When the Action Involves State Law Issues and Generally Declines To Entertain Reactive Declaratory Actions

The touchstone consideration in determining whether abstention is warranted is whether the "questions in controversy between the parties to the federal suit … can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. Although in *Brillhart* the Supreme Court did not purport to provide a complete list of relevant factors to consider in deciding whether to abstain, the Court cautioned district courts to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions in an attempt to forum shop; and (3) avoid duplicative litigation. *Id.* at 494; s*ee also Wilton*, 515 U.S. at 283. In addition to the *Brillhart* factors, the Ninth Circuit has suggested that when determining whether to abstain from exercising jurisdiction, district courts should consider whether the declaratory action will settle all aspects of the controversy or serve a useful purpose in clarifying the legal issues, the convenience of the parties, and the availability and relative convenience of other remedies. *See Am. States Ins. Co. v. Kearns,* 15 F.3d 142, 145 (9th Cir. 1994). The district court therefore "must balance concerns of judicial administration, comity, and fairness to the litigants." *Id.* at 144.

### 3. This Court Should Abstain Pursuant to *Brillhart*

Balancing the *Brillhart* factors, taking into account the basic principles of federalism, fairness and efficiency, and recognizing that no federal interest will be promoted by

---

[1] Courts in other districts also apply the *Brillhart/Wilton* doctrine under these circumstances. *See, e.g., Horne v. Fireman's Retirement Sys. of St. Louis*, 69 F.3d 233, 235 (8th Cir. 1995) (court found that action was "most aptly characterized as one for declaratory judgment" where the plaintiff sought "a declaration of his rights … with any additional relief based on the court's decree"); *Coltec Indus. v. Cont'l Ins. Co.*, 2005 WL 1126951, *2-4 (E.D. Pa. 2005) (finding that where other claims hinge on the outcome of the declaratory relief claim, the *Brillhart/Wilton* abstention standard is appropriate).

deciding this case, it is clear this Court should not exercise jurisdiction over this action in light of the pending New York Action.

### a. The Actions Are Parallel and Involve State Insurance Law Issues

Since there is a procedural vehicle available in the New York Action to resolve the issues asserted in this action, these actions are parallel. *See Polido v. State Farm Mut. Auto. Ins. Co.*, 110 F.3d 1418, 1423 (9th Cir. 1997), *overruled on other grounds in Dizol*, 133 F. 3d 1220; *see also Medmarc Ins. Co. v. Berkeley Props.*, 2003 U.S. Dist. LEXIS 7222 (N.D. Cal. April 28, 2003). There only need be an "overlap of factual questions between the two actions" and an available "procedural vehicle" in state court by which the federal plaintiff may resolve the issues asserted in the federal action. *Id.*, *citing Karussos*, 65 F.3d at 800.

The underlying claims, for which Homestake seeks coverage under the Continental policies in this action and for which Continental seeks a declaration regarding its coverage obligations in the New York Action, relate to Homestake's ownership and operation of a Missouri Lead Mine. The New York Action seeks a determination on whether Homestake is entitled to coverage under the Continental policies for BNSF's contribution claim, while this action seeks a declaration of Continental's obligation to Homestake for defense costs relating to the first set of Missouri lead claims naming Homestake as a defendant—the Bray and Ellison cases. And the resolution of the disputes at issue in the New York Action and in this case hinges upon the interpretation of Continental's policies. Although the New York Action and this action are not identical as they do not currently contain the exact same causes of action, because Homestake could assert its causes of action raised here in the New York Action and an overlap of factual questions exist, the actions are parallel.

The New York Action involves all of the same parties as this action, and includes the other insurers that issued policies that allegedly provide coverage to Homestake for the underlying lead claims. All the necessary parties have appeared in the New York Action and are subject to the jurisdiction of a New York court. Consequently, this factor supports abstention.

### b. Notions of Comity Weigh in Favor of Staying This Action

This action involves insurance coverage issues that are governed by state law. Insurance coverage disputes can be heard in either federal or state court, but insurance is a matter of state law, and states have a strong interest in enforcing and interpreting their own insurance laws. *See generally California State Auto. Ass'n v. Maloney,* 341 U.S. 105, 109-10 (1951) (noting that the nature of the insurance industry necessitates pervasive state regulation). The concern for preserving federalism and respecting comity interests is particularly weighty where the state's interest in protecting "complex state administrative processes from undue federal interference" is at stake, as in the wholly state regulated insurance industry and where the federal interest is minimal because the plaintiff's claim raises only questions of state law. *Cont'l Cas. Co. v. Robsac Indus.,* 947 F.2d 1367, 1371 (9th Cir. 1991) (citation omitted). "States, as a matter of tradition and express federal consent, have an important interest in maintaining precise and detailed regulatory schemes for the insurance industry." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706 (1996), *citing* McCarran-Ferguson Act 59 Stat. 33, as amended, 15 U.S.C. §§ 1011, *et seq.*; *see generally, Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 279 (6th Cir. 1990) (finding the state courts are best situated to identify and enforce the public policies that form the foundation of such regulation).

Abstention is therefore appropriate because permitting this action to proceed will undoubtedly result in this Court's needless examination of important state law issues that the New York court is qualified and more than capable of adjudicating.

### c. The Court's Obligation To Discourage Forum Shopping Warrants Abstention

An inference of forum shopping is drawn from the fact that Homestake filed in federal district court despite the pendency of the New York Action. The filing of Homestake's declaratory relief action after Continental filed the New York Action, and the filing of Homestake's answer in the New York Action without asserting counterclaims that relate to the issues in this action implies forum shopping. In *Moses H. Cone*, the Supreme Court noted that the "vexatious or reactive nature of either the federal or the state litigation may influence the

decision whether to defer to a parallel state litigation." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1 at 17 n.20 (1983). In *Cont'l Cas. Co. v. Robsac Industries,* 947 F.2d 1367, 1371 (9th Cir.1991), *overruled on other grounds, Dizol,* 133 F.3d 1220, the Ninth Circuit stated that if a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction. Where there are parallel state proceedings involving the same parties and related issues at the time the federal declaratory action is filed, such as here, there is a presumption that the entire suit should be heard in state court. *See Dizol,* 133 F.3d at 1225.

All of the parties to this action are parties in the New York Action. In this action, Homestake seeks resolution of disputes regarding coverage for lead bodily injury claims just as Continental does in the New York Action. Homestake has responded to Continental's New York Action, and at that time could have asserted these claims via a counterclaim but chose not to. And although the issues raised by Homestake are not identical to the claims asserted by Continental in the New York Action, Homestake can assert these causes of action by seeking leave of court to amend its previously response, or by stipulation of the parties. *See* N.Y. C.P.L.R. 3025(b).[2] Homestake's decision to file this declaratory relief action therefore implies forum shopping. Such procedural maneuvering, which only unnecessarily increases the parties' costs of litigation, should not be allowed. This factor therefore also supports abstention.

### d. The New York State Court Is a Convenient Forum for the Parties

New York is clearly the more convenient forum because the majority of the parties that have an interest in the litigation, and who will eventually be parties to this dispute are

---

[2] N.Y. C.P.L.R. 3025 states:

> **(b) Amendments and supplemental pleadings by leave.** A party may amend his pleading, or supplement it by setting forth additional or subsequent transactions or occurrences, at any time by leave of court or by stipulation of all parties. Leave shall be freely given upon such terms as may be just including the granting of costs and continuances.

located in or closer to New York than California. (Woodward Decl., Exhibits 4, 6-14.) Homestake has no real ties with California. (Woodward Decl., Exhibit 3, Homestake Complaint, ¶ 4.) And the New York Action is further along, as all interested parties have already made an appearance, whereas here should this action proceed many other parties would need to be added. Thus, common sense dictates that all claims be decided in the more complete and convenient New York Action.

### e. Abstention Will Ensure Efficiency

The Supreme Court has cautioned that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495; *accord Wilton*, 515 U.S. at 283 ("a district court might be indulging in gratuitous interference, if it permitted the federal declaratory action to proceed"). Here abstention is warranted because it will prevent the parties racing to the court in the other jurisdiction to obtain a ruling and will guard against duplicative litigation.

The New York Action, which was filed several months prior to this action, is progressing, thus raising the specter of an unnecessary duplication of effort and waste of judicial resources should this Court decline to abstain. If the Court does not abstain, Continental will be forced to litigate similar issues in two different forums, which will involve much of the same discovery and will result in duplicative work. Not only would it be impractical, it would be unwise and a waste of judicial resources to allow this suit to proceed forward in this Court. *Wilton*, 515 U.S. at 288.

Abstention is well justified in this incomplete, reactive suit that exclusively involves state insurance law issues. Consequently, this Court should abstain from exercising jurisdiction and allow the parties to resolve their disputes in the New York Action.

### B. The Court Should Dismiss This Action Because It Is an Inconvenient Forum for the Parties

Aside from the grounds for abstaining, a dismissal or stay is appropriate here on the basis of *forum non conveniens*. "A district court has discretion to decline to exercise jurisdiction

in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). In determining whether to exercise this discretion, a court should consider whether an adequate alternate forum exists and whether the balance of public and private interests favors a different forum. *Id.*; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

        1.    **An Adequate Alternative Forum Exists for Homestake To Litigate the Issues Raised in this Action**

Generally, an alternative forum is available where the defendant is amenable to service of process and the forum provides "some remedy" for the wrong at issue. *Lueck*, 236 F.3d at 1143, quoting *Piper Aircraft*, 454 U.S. at 254 n. 22. This threshold test is met here because Homestake has filed a response in the New York Action, and could seek relief for its claims by asserting them via a counterclaim, or seeking permission to file such a counterclaim pursuant to N.Y. C.P.L.R. 3025(b). The New York Action provides an adequate alternative forum for Homestake to raise the same issues that it asserts in this action.

        2.    **Private Interest Factors Weigh in Favor of Dismissing or Staying this Action**

Ordinarily, the most important private interest factor is the plaintiff's very choice of forum, but that factor does not apply here because Homestake has no real connection to California:

> [T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. [But] that the presumption applies with less force when the plaintiff or real parties in interest are foreign.

*Piper Aircraft Co.*, 454 U.S. at 255. Although Homestake is nominally incorporated in California, it is an inactive corporation and it has no business address in California. (Woodward Decl., Exhibit 3, Homestake Complaint, ¶ 4.) Its business address is now located in Toronto, Ontario. (Id.) Whatever real ties Homestake had with California were severed years ago. Therefore, the usual presumption in favor of plaintiffs' chosen forum simply does not apply.

Other private interest factors include:

> [The] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Much of the evidence in this case will be in the form of documents and witness testimony. The majority of the interested parties are located in or near New York. Consequently, the majority of documents and witnesses are likely located in or near New York. Granted, right now, there are only three parties. But if this matter is allowed to continue, Continental will be forced to cross-claim against the insurers and policyholders that it named in its New York action, namely Amax, MLS, INA, Century, Hartford and Travelers. While Amax and MLS are now based out of Arizona, the other parties are all located on or near the east coast. INA and Century operate out of Philadelphia, Pennsylvania, Harford and Travelers operate out of Hartford, Connecticut, and National Union operates out of New York City. Therefore, the center of gravity in these proceedings certainly does not rest in California, but rather lies on the East Coast, making New York the appropriate venue for this dispute.

Considering the location of the parties, there can be no question that California is an inconvenient forum; Homestake cannot claim any convenience even for itself. One can only presume that Homestake brought this action solely to obtain a strategic advantage and not due to any convenience considerations.

### 3. Public Interest Factors Weigh in Favor of Dismissing or Staying

The public interest factors also strongly favor dismissal. The public interest factors focus on the potential burden on the forum where the suit was filed. *Gulf Oil*, 330 U.S. at 508-509. The public interest factors include:

> Administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.*, 454 U.S. at 242 n.6, quoting *Gulf Oil Corp.*, 330 U.S. at 508-09.

Here, the controversy cannot realistically be characterized as being localized in any particular place because it involves parties dispersed in various states regarding contracts entered into in different states. But it is clear that California has little if any interest in the resolution of this dispute. Thus, there is no reason to burden California residents to serve on a jury for this case.

The most relevant public interest factors are the applicable law and the avoidance of unnecessary problems in conflict of laws. Here, the New York court likely will apply New York law to the interpretation of the Continental policies. In deciding which state's law applies when interpreting insurance policies, New York courts look first to the "the state which the parties understood was to be the principal location of the insured risk." *Zurich Ins. Co. v. Shearson Lehman Hutton*, 642 N.E.2d 1065, 1069 (N.Y. 1994); Restatement (Second) of Conflict of Laws § 193. Here, the policies provided coverage across the United States. Thus, no particular state can be identified as the principal location of insured risk. Consequently, a New York court would apply a "center of gravity" or "grouping of contacts" test, utilizing factors in Restatement (Second) of Conflict of Laws § 188, to establish which state "has the most significant relationship to the transaction and the parties." *Zurich Ins. Co.*, 642 N.E.2d at 1068. The state with the most significant contacts is determined by looking at (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2).

Under New York's center of gravity test, New York law will be found to govern the interpretation of the Continental policies. The first two Continental policies were entered into while both Continental and Amax operated out of New York. (Woodward Decl., ¶ 18.) Later policies were issued when Amax had relocated its offices to Greenwich, Connecticut. (Woodward Decl., ¶ 18.) But throughout the relevant period—1975 to 1986—the policies were brokered through a New York broker, Continental operated out of New York, and Amax was

1  incorporated in New York. (Woodward Decl., Exhibit 2, Continental Complaint, ¶¶ 5-8 and 19;
2  and Exhibits 9-11.) Hence, a New York court will surely apply New York law.

3        Also, by allowing the relevant issues to be litigated all in one dispute, potential
4  conflicts will be avoided. As discussed above, the New York Action is the more comprehensive
5  action. The coverage issues raised by Homestake's action all could be raised and adjudicated in
6  the New York Action. The balance of conveniences suggests that trial in California would be
7  unnecessarily burdensome for the parties and the court, thus dismissal is proper and the parties'
8  should be required to resolve all their disputes in New York, not California.

9  ///
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 //

## IV.   CONCLUSION

This Court should dismiss this action in accordance with its discretion to decline to exercise jurisdiction provided under the Declaratory Judgment Act or on *forum non conveniens* grounds. This action is fundamentally a declaratory relief action. The state insurance law issues that Homestake raises in this action can be adjudicated in the more compressive first-filed New York Action that includes all of the parties that have an interest in the resolution of these issues. California has no interest in the resolution of these issues, as the relevant Continental policies were negotiated in New York, issued to a New York company, and neither Homestake nor any of the other parties that would involved in this suit have any genuine ties to California. Furthermore, no federal interest would be promoted by this Court deciding this case, and all of the issues can be resolved in the New York Action, which is best suited to adjudicate this matter. In light of the foregoing arguments, Continental requests this Court dismiss this action or, in the alternative stay this action pending the resolution of the New York Action.

Dated:  June 14, 2007

Respectfully submitted,

CARROLL, BURDICK & McDONOUGH LLP

By _____/s/ Gretchen A. Ramos_____
         Gretchen A. Ramos
         Vance A. Woodward
Attorneys for
The Continental Insurance Company