# EXHIBIT 1-B

LOC at locations other than Cherryville based on negligence, negligence per se, and products liability.

278.    Mining company is liable to the non-employee claimants allegedly exposed to LOC at locations other than Cherryville based on negligence for:

a.    Failing to remove all LOC from the railcars when unloading the cars at Herculaneum Smelter.

b.    Failing to inspect the railcars after the cars were unloaded at Herculaneum Smelter to make sure the cars were empty before releasing the cars back to the railroad.

c.    Failing to warn BNSF that the railcars contained significant quantities of LOC after the cars were unloaded at Herculaneum Smelter.

d.    Failing to provide BNSF with the results of mining company's blood lead testing of mining company's employees who worked around LOC.

e.    Failing to warn BNSF of the dangers of inhaling or ingesting LOC or the potential of ingesting harmful leads of LOC from hand-to-mouth contact when lead mining company knew of such dangers based on blood lead data it had collected over the course of many years of testing its own employees who worked around LOC.

f.    Failing to warn BNSF's car cleaning contractors at Cherryville of the dangers of inhaling or ingesting LOC or the potential of ingesting harmful levels of LOC from hand-to-mouth contact when lead mining company knew of such danger based on blood lead data it had collected over the course of many years of testing its own employees who worked around LOC.

g.     Failing to classify and handle LOC as a "poison" for shipping

purposes under U.S.D.O.T. Hazardous Material regulations when mining

company knew or should have known that LOC was "so toxic to humans as to

afford a hazard to health during transportation."

279.    Mining company is liable to the non-employee claimants allegedly

exposed to LOC at locations other than Cherryville based on negligence per se for failing

to comply with the following regulations:

a.     49 C.F.R. §§ 172.200(a), 172.202(a)(2), 172.203(c)(1a), and

173.29, which required mining company to provide shipping papers to the

railroad identifying the railcars as containing hazardous material when significant

quantities of LOC remained in the cars after the cars were unloaded at

Herculaneum Smelter;

b.     49 C.F.R. §§ 172.203(m)(1), 172.204(a)(1), 172.500(a),

172.504(a), 172.508, 172.554, 173.22(a)(1), and 173.1132, which required mining

company to classify and/or describe LOC as a "poison" in shipping papers and

railcar placards based on information known to mining company that LOC was

"so toxic to humans as to afford a hazard to health during transportation."

280.    As a result of mining company's failure to comply with the aforesaid

regulations relating to the loading, unloading, and handling of dangerous articles, the

railcars BNSF set out for cleaning at Cherryville Siding contained significant amounts of

LOC.

281.    Lead mining company's failure to comply with the aforesaid regulations

relating to the loading, unloading, and handling of dangerous articles deprived BNSF

information it needed to warn the car cleaning contractors that the railcars contained a "poison."

282.    Mining company is liable to the non-employee claimants allegedly exposed to LOC at locations other than Cherryville based on strict liability in tort for:

a.    Placing an unreasonably dangerous and defective product, LOC, into the stream of commerce.

b.    Failing to warn of the inherently dangerous characteristics of a product, LOC, that it placed into the stream of commerce.

283.    The aforesaid negligence of mining company and/or the defective condition and inherently dangerous characteristics of LOC caused or contributed to cause the injuries alleged by the non-employee claimants allegedly exposed to LOC at locations other than Cherryville.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation on Count IV of Plaintiff's Petition for contribution with respect to the claims of the non-employee claimants allegedly exposed to LOC at locations other than Cherryville, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT V
### (The Doe Run Resources Corporation – Ellison, Andrews and Bray
### FELA Claimants - Contractual Indemnity)

284.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 244 through 246 of this Petition.

285.    The FELA claimants contend that they inhaled and ingested air-borne LOC dust at the load out areas, track scales and unloading stations on the Lead Line and

at other points between the load out areas, track scales and unloading stations on the Lead

Line and shipping destinations for LOC shipments where LOC dust blew out of open-top

railcars and off LOC-contaminated ballast and right-of-way in BNSF's railyards, sidings

and other tracks and ingested LOC dust from hand-to-mouth contact after their arms,

hands, faces, hair, and clothing became contaminated with LOC dust from BNSF railcars

on which LOC dust settled and from LOC-contaminated ballast and right-of-way in

BNSF's railyard, sidings, and other tracks, and that such inhalation and ingestion caused

them to become lead poisoned, which resulted in personal injury to them.

     286.    Mining company failed to comply with the following federal regulations

relating to the loading, unloading or handling of dangerous articles:

         a.    30 C.F.R. § 48.31, which required mining company to provide

hazard training, including lead protection training, to BNSF train crews who came

onto mining company's premises at Viburnum Mine/Mill, Buick Mine/Mill, and

Fletcher Transload.

         b.    30 C.F.R. § 57.15006, which required mining company to provide

special protective equipment and clothing to BNSF employees who came into

mining company's premises at Viburnum Mine/Mill, Buick Mine/Mill and

Fletcher Transload when hazards of process could be encountered in a manner

capable of causing injury.

         c.    30 C.F.R. §§ 57.5001, 57.5002, and 57.5005, which required

mining company to keep air-borne lead dust below specified levels at the load out

areas and track scales at Viburnum Mine/Mill, Buick Mine/Mill, and Fletcher

Transload.

    d.     30 C.F.R. § 57.5003, which required mining company to keep work areas clean and orderly.

    e.     30 C.F.R. § 57.9202, which required mining company to load mobile equipment (i.e. front end loaders) used for the haulage of mine material to minimize spillage where a hazard to a person could be created.

    f.     30 C.F.R. §57.20011, which required mining company to barricade or post warning signs displaying the nature of the hazard (i.e. lead exposure) and any protective actions required at locations where health or safety hazards existed and were not immediately obvious to train crews who came onto mining company's premises at Viburnum Mine/Mill, Buick Mine/Mill, and Fletcher Transload.

    g.     29 C.F.R. § 1910.1025, which required mining company to keep air-borne lead dust below specified levels at the unloading station at Herculaneum Smelter and the unloading station and track scale at Buick Smelter.

    h.     49 C.F.R. §§ 171.8, 171.10, 172.101, 173.22, 173.24, and 173.240, which required mining company to load LOC into leak-proof, sift-proof railcars for shipment.

    i.     49 C.F.R. §§ 172.200(a), 172.202(a)(2), 172.203(c)(1a), and 173.29, which required mining company to provide shipping papers to the railroad identifying the railcars as containing hazardous material when significant quantities of LOC remained in the cars after the cars were unloaded at Herculaneum Smelter;

j.    49 C.F.R. §§ 172.203(m)(1), 172.204(a)(1), 172.500(a),

172.504(a), 172.508, 172.554, 173.22(a)(1), and 173.1132, which required mining

company to classify and/or describe LOC as a "poison" in shipping papers and

railcar placards based on information known to mining company that LOC was

"so toxic to humans as to afford a hazard to health during transportation."

k.    49 C.F.R. §§ 172.101, 173.22(a)(2), 173.24(c) & (e), 173.132, and

173.240 - 173.242, which required mining company to select a closed package for

shipping LOC based on information known to mining company that LOC was "so

toxic to humans as to afford a hazard to health during transportation."

287.    BNSF's liability to FELA claimants arose from mining company's failure

to comply with the aforesaid regulations relating to the loading, unloading, or handling of

dangerous articles, which caused LOC to become air-borne at harmful levels in the

workplace and to settle on BNSF's rail equipment and to leak from BNSF's railcars onto

the ballast in BNSF's railyards, sidings, tracks, and right-of-way.

288.    BNSF's liability to the FELA claimants arose also from mining

company's use and operation of the track scales, movement of railcars on the industry

track, and use of its own motive power to move cars on the industry sidetrack at

Viburnum Mine/Mill, Buick Mine/Mill, and Buick Smelter, which caused LOC to

become air-borne at harmful levels in the work place and to settle on BNSF's rail

equipment and to leak from BNSF's railcars onto the ballast in BNSF's railyards, sidings,

tracks, and right-of-way.

289.    BNSF brakemen, conductors, switchmen, engineers, firemen and other

employees who worked in the load out areas or unloading stations on the Lead Line or

who switched cars or worked on trains that carried LOC to or from facilities described above, or in railyards or on sidings or tracks where such cars or trains passed through or stopped, were exposed to air-borne LOC dust that was blown out of the cars and off the ballast and right-of-way.

290.   BNSF brakemen, conductors, switchmen, engineers, firemen, and other employees who switched cars or worked on BNSF trains that carried LOC climbed onto and into the cars, engines, and cabooses in the course of their work, and in this manner came into contact with the sides, edges, ladders, steps, grab irons, handholds, handbrakes, pin pullers, couplers, air hoses, angle cocks, and other parts and appliances of the railcars and got LOC dust onto their arms, hands, faces, hair and clothing.

291.   BNSF carmen and other employees who inspected, maintained and repaired rail equipment in railyards or on sidings or tracks where such cars or trains passed through or stopped were exposed to air-borne LOC dust that was blown out of the cars and off the ballast and right-of-way.

292.   BNSF carmen and other employees who inspected, maintained, and repaired cars, engines, and cabooses in trains that carried LOC climbed onto and into the cars, engines, and cabooses in the course of their work, and in this manner came into contact with the sides, edges, ladders, steps, grab irons, handholds, handbrakes, pin pullers, couplers, air hoses, angle cocks, and other parts and appliances of the railcars and got LOC dust onto their arms, hands, faces, hair and clothing.

293.   BNSF trackmen, track inspectors, track foremen, drivers, welders, machine operators, signal maintainers and other employees who worked on the track, ballast, or right-of-way in the railyards or on the sidings or tracks where such cars or

trains passed through or stopped were exposed to air-borne LOC dust that was blown out of the cars and off the ballast and right-of-way.

294.    BNSF trackmen, track inspectors, track foremen, drivers, welders, machine operators, signal maintainers, and other employees who worked on the track, ballast, or right-of-way in the railyards or on the sidings or tracks where such cars or trains passed through or stopped came into contact with LOC-contaminated ballast while performing their work and got LOC dust onto their arms and hands.

295.    The FELA claimants contend that that they inhaled and ingested air-borne LOC dust in the workplace and ingested LOC dust from hand-to-mouth contact after their arms, hands, faces, hair and clothing became contaminated with LOC dust, and that such inhalation and ingestion of LOC dust caused them to become lead poisoned, which resulted in personal injury to them.

296.    The claims of FELA claimants who were exposed to air-borne LOC dust and/or LOC dust on rail equipment arose from mining company's failure to comply with "regulations issued by . . . [a] lawful authority . . . governing the . . . loading, unloading and handling of . . . dangerous articles as defined in said . . . regulations" and, therefore, such claims fall within the scope of the indemnity provisions of ¶8 of the 1968 Buick Mine/Mill Sidetrack Agreement and ¶10 of the 1968 Buick Smelter Unloading Station Side track Agreement.

297.    The claimed injuries of FELA claimants who were exposed to air-borne LOC dust and/or LOC dust on rail equipment were caused "in whole or in part, by an unhealthful, hazardous, or dangerous condition, caused by, contributed to, or aggravated by [mining company's] presence on and use of the premises or [mining company's]

violation of . . . regulations . . . pertaining to . . . hazardous materials" and, therefore, such claims fall within the scope of the indemnity provisions of ¶9 of the 1991 Fletcher Transload Lease.

298.    The claims of FELA claimants who were exposed to air-borne LOC dust and/or LOC dust on rail equipment arose from use of the track scales at Buick Mine/Mill and Buick Smelter and, therefore, such claims fall within the scope of the indemnity provisions of ¶10 of the 1968 Buick Smelter Unloading Station Sidetrack Agreement and ¶3 of the 1973 Supplement to the 1968 Buick Mine/Mill Sidetrack Agreement.

299.    The claims of FELA claimants who were exposed to air-borne LOC dust and/or LOC dust on rail equipment or in railroad ballast while working on the sidetracks at Viburnum Mine/Mill, Buick Mine/Mill, Buick Smelter, or Fletcher Transload, arose from claimants being present on or about the sidetracks and, therefore, such claims fall within the scope of the indemnity provisions of ¶6 of the 1967 Viburnum Sidetrack Agreement, ¶6 of the 1968 Buick Mine/Mill Sidetrack Agreement, ¶6 of the 1968 Buick Smelter Unloading Station Sidetrack Agreement, pertinent portions of the 1968 Fletcher Transload Sidetrack Agreement, ¶7 of the 1979 Fletcher Transload Sidetrack Agreement, ¶7 of the 1990 Buick Smelter Recycling Center Sidetrack Agreement, and ¶10 of the 1991 Fletcher Transload Lease Agreement, unless such indemnity provisions are superseded by another indemnity provision of the same agreement.

300.    The claims of FELA claimants who were exposed to LOC dust in the ballast and right-of-way in BNSF's railyards, sidings and tracks arose from mining company's failure to comply with "regulations issued by . . . [a] lawful authority . . . governing the . . . loading, unloading and handling of . . . dangerous articles as defined in

said . . . regulations" and, therefore, such claims fall within the scope of the indemnity provisions of ¶8 of the 1968 Buick Mine/Mill Sidetrack Agreement.

301.    The claims of FELA claimants who were exposed to LOC in the ballast and right-of-way in BNSF's railyards, sidings and tracks arose from mining company's movement of railcars on the industry track and/or use of its own motive power to move cars on the industry sidetrack and, therefore, fall within the scope of the indemnity provisions of ¶10(c) of the 1967 Viburnum Mine/Mill Sidetrack Agreement, ¶12 of the 1968 Buick Mine/Mill Sidetrack Agreement, and ¶11 of the 1968 Buick Smelter Unloading Station Sidetrack Agreement.

302.    The LOC to which the FELA claimants were exposed was hauled in railcars that included railcars that were subject to the 1991 Car Lease Agreement, and, therefore, such claims fall within the scope of the indemnity provisions of ¶5 of the 1991 Car Lease Agreement.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation on Count V of Plaintiff's Petition for contractual indemnity with respect to the claims of the Ellison, Andrews and Bray FELA claimants, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT VI
### (The Doe Run Resources Corporation – Andrews and Ellison FELA Claimants - Contribution)

303.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 244 through 246 of this Petition.

304.    The Andrews and Ellison FELA claimants contend that they inhaled and ingested air-borne LOC dust at the load out areas, track scales and unloading stations on the Lead Line and at points between the load out areas, track scales and unloading stations on the Lead Line and shipping destinations for LOC shipments where LOC dust blew out of open-top railcars and off LOC-contaminated ballast and right-of-way in BNSF's railyards, sidings and tracks and ingested LOC dust from hand-to-mouth contact after their arms, hands, faces and clothing became contaminated with LOC dust from BNSF railcars on which LOC dust settled and from LOC-contaminated ballast and right-of-way in BNSF's railyards, sidings, and tracks, and that such inhalation and ingestion caused them to become lead poisoned, which resulted in personal injury to them.

305.    As hereinafter alleged in more specific detail, mining company bears joint liability with BNSF for the claims of the Andrews and Ellison FELA claimants based on negligence, negligence per se, and strict liability for products liability.

306.    Mining company is liable to the Andrews and Ellison FELA claimants based on negligence for:

a.    Failing to remove all LOC from the railcars when unloading the cars at Herculaneum Smelter.

b.    Failing to inspect the railcars after the cars were unloaded at Herculaneum Smelter to make sure the cars were empty before releasing the cars back to the railroad.

c.    Failing to warn BNSF that the railcars contained significant quantities of LOC after the cars were unloaded at Herculaneum Smelter.

d.      Failing to take precautions to prevent spillage of LOC onto the ground during unloading of the railcars at Herculaneum Smelter.

e.      Failing to take precautions at the unloading station at Herculaneum Smelter to suppress air-borne LOC dust by cleaning up spilled LOC and regularly sprinkling the ground with water in the vicinity of the unloading station to prevent spilled LOC from drying out.

f.      Failing to regularly monitor for excessive amounts of LOC dust in the air at the unloading station at Herculaneum Smelter.

g.      Failing to take precautions to prevent spillage of LOC onto the ground in the load out areas at Viburnum Mine/Mill and Buick Mine/Mill during the process of loading LOC into railcars from storage piles to the railcars using front-end loaders.

h.      Failing to take precautions at the load out areas at Viburnum Mine/Mill and Buick Mine/Mill to suppress air-borne LOC dust by cleaning up spilled LOC and regularly sprinkling the ground with water in the load out areas to prevent spilled LOC from drying out.

i.      Failing to regularly monitor for excessive amounts of LOC dust in the air at the load out areas at Viburnum Mine/Mill and Buick Mine/Mill.

j.      Failing to take precautions to prevent spillage of LOC onto the ground during weighing and load adjusting of railcars at the track scales at Viburnum Mine/Mill, Buick Mine/Mill and Buick Smelter.

k.      Failing to take precautions at the track scales at Viburnum Mine/Mill, Buick Mine/Mill, and Buick Smelter to suppress air-borne LOC dust

by cleaning up spilled LOC in the vicinity of the track scales and regularly sprinkling the ground with water in the area of the track scales to prevent spilled LOC from drying out.

l.      Failing to regularly monitor for excessive amounts of LOC dust in the air at the track scales at Viburnum Mine/Mill, Buick Mine/Mill, and Buick Smelter.

m.      Failing to take precautions to prevent spillage of LOC onto the ground during loading of railcars using the overhead crane in the load out area at Fletcher Transload.

n.      Failing to take precautions at the load out area at Fletcher Transload to suppress air-borne LOC dust by cleaning up spilled LOC and regularly sprinkling the ground with water in load out area to prevent spilled LOC from drying out.

o.      Failing to regularly monitor for excessive amounts of LOC dust in the air at the load out area at Fletcher Transload.

p.      Failing to take precautions at the unloading shed at Buick Smelter to suppress air-borne LOC dust by cleaning up dried-out LOC in the storage bins beneath the unloading shed and regularly sprinkling the ground with water in the storage bins to prevent residual LOC from drying out.

q.      Failing to regularly monitor for excessive amounts of LOC dust in the air at the unloading shed at Buick Smelter.

r.      Failing to cover open-top railcars loaded with LOC or to spray a "binder" on the LOC to keep the LOC from blowing out the tops of the railcars.

2415236                                    78

s.    Failing to provide BNSF with the results of mining company's blood lead testing of mining company's employees who worked around LOC.

t.    Failing to warn BNSF of the dangers of inhaling or ingesting LOC or the potential of ingesting harmful levels of LOC from hand-to-mouth contact when mining company knew of such danger based on blood lead data it had collected over the course of many years of testing its own employees who worked around LOC.

u.    Failing to warn BNSF employees of the dangers of inhaling or ingesting LOC or the potential of ingesting harmful levels of LOC from hand-to-mouth contact when mining company knew of such danger based on blood lead data it had collected from testing its own employees who worked around LOC.

v.    Failing to provide lead protection training to BNSF employees who worked on mining company's premises at Viburnum Mine/Mill, Buick Mine/Mill, Buick Smelter, and Fletcher Transload.

w.    *Failing to offer blood lead testing to BNSF's employee who* worked on mining company's premises at Viburnum Mine/Mill, Buick Mine/Mill, Buick Smelter, and Fletcher Transload when mining company knew that its own employees who were working under similar conditions had experienced elevated blood lead levels.

x.    Failing to notify the Missouri Department of Health of the elevated blood lead levels experienced by mining company's employees who worked around LOC at Viburnum Mine/Mill and Buick Mine/Mill.

y.      Failing to plug drain holes in the bottoms of railcars before loading the cars with LOC.

z.      Failing to exercise care not to punch holes in the sides of railcars when using the bucket of the front-end loaders to move railcars along the sidetracks.

aa.     Failing to exercise care not to punch holes in the sides of railcars when using the bucket of the front end loaders to adjust loads in loaded railcars at the track scale.

bb.     Failing to repair or plug holes in the sides of railcars before loading the cars with LOC.

cc.     Failing to warn BNSF that mining company was not plugging drain holes in the bottoms of railcars before loading the cars with LOC.

dd.     Failing to warn BNSF that mining company was failing to repair or plug holes in the sides of railcars before loading the cars with LOC.

ee.     Failing to classify and handle LOC as a "poison" for shipping purposes under U.S.D.O.T. Hazardous Materials regulations when mining company knew or should have known that LOC was "so toxic to humans as to afford a hazard to health during transportation."

307.    Mining company is liable to the FELA claimants based on negligence per se for one or more of the following regulatory violations:

a.      Failing to comply with 30 C.F.R. § 48.31, which required mining company to provide hazard training, including lead protection training, to BNSF employees who worked on mine company property.

b.    Failing to comply with 30 C.F.R. § 57.15006, which required

mining company to provide special protective equipment and clothing to BNSF

employees who came onto mining company's premises at Viburnum Mine/Mill,

Buick Mine/Mill, and Fletcher Transload when hazards of process could be

encountered in a manner capable of causing injury.

c.    Failing to comply with 30 C.F.R. §§ 57.5001, 57.5002, and

57.5005, which required mining company to keep air-borne lead dust below

specified levels at the load out areas and track scales at Viburnum Mine/Mill,

Buick Mine/Mill, and Fletcher Transload.

d.    Failing to comply with 30 C.F.R. § 57.5003, which required

mining company to keep work areas clean and orderly.

e.    Failing to comply with 30 C.F.R. § 57.9202, which required

mining company to load mobile equipment (i.e. front end loaders) used for the

haulage of mine material to minimize spillage where a hazard to a person could be

created.

f.    Failing to comply with 30 C.F.R. §57.20011, which required

mining company to barricade or post warning signs displaying the nature of the

hazard (i.e. lead exposure) and any protective actions required at locations where

health or safety hazards existed and were not immediately obvious to train crews

who came onto mining company's premises at Viburnum Mine/Mill, Buick

Mine/Mill, and Fletcher Transload.

g.    29 C.F.R. § 1910.1025, which required mining company to keep air-borne lead dust below specified levels at the unloading station at Herculaneum Smelter and the unloading station and track scale at Buick Smelter.

h.    Failing to comply with MO. CODE STATE REGS., Title 19, §20-20.010, 20-20.020, 20-20.030, which required mining company to report elevated blood lead levels to the local health authority or the Missouri Department of Health.

i.    Failing to comply 49 C.F.R., §§ 171.8, 171.10, 172.101, 173.22, 173.24 and 173.240, which required mining company to load LOC into leak-proof, sift-proof railcars for shipment.

j.    Failing to comply with 49 C.F.R. §§ 172.200(a), 172.202(a)(2), 172.203(c)(1a), and 173.29, which required mining company to provide shipping papers to the railroad identifying the railcars as containing hazardous material when significant quantities of LOC remained in the cars after the cars were unloaded at Herculaneum Smelter;

k.    Failing to comply with 49 C.F.R. §§ 172.203(m)(1), 172.204(a)(1), 172.500(a), 172.504(a), 172.508, 172.554, 173.22(a)(1), and 173.1132, which required mining company to classify and/or describe LOC as a "poison" in shipping papers and railcar placards based on information known to mining company that LOC was "so toxic to humans as to afford a hazard to health during transportation."

l.    Failing to comply with 49 C.F.R. §§ 172.101, 173.22(a)(2), 173.24(c) & (e), 173.132, and 173.240 - 173.242, which required mining

2415236                              82

company to select a closed package for shipping LOC based on information known to mining company that LOC was "so toxic to humans as to afford a hazard to health during transportation."

308.    Mining company is liable to the FELA claimants based on strict liability in tort for product defect for:

a.    Placing an unreasonably dangerous and defective product, LOC, into the stream of commerce.

b.    Failing to warn of the inherently dangerous characteristics of a product, LOC, that it placed into the stream of commerce.

309.    The aforesaid negligence of mining company and/or the defective condition and inherently dangerous characteristics of LOC caused or contributed to cause the injuries alleged by the FELA claimants.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation on Count VI of Plaintiff's Petition for contribution with respect to the claims of the Andrews and Ellison FELA claimants, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT VII

### (The Doe Run Resources Corporation – Andrews and Ellison FELA Claimants - Implied Indemnity)

310.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 244 through 246 of this Petition.

2415236                                          83

311.    The Andrews and Ellison FELA claimants contend that they inhaled and ingested air-borne LOC dust at the load out areas, track scales and unloading stations on the Lead Line and at other points between the load out areas, track scales and unloading stations on the Lead Line and shipping destinations for LOC shipments where LOC dust blew out of open-top railcars and off LOC-contaminated ballast and right-of-way in BNSF's railyards, sidings and tracks and ingested LOC dust from hand-to-mouth contact after their arms, hands, faces, hair, and clothing became contaminated with LOC dust from BNSF railcars on which LOC dust settled and from LOC-contaminated ballast and right-of-way in BNSF's railyard, side tracks, and tracks, and that such inhalation and ingestion caused them to become lead poisoned, which resulted in personal injury to them.

312.    BNSF's liability to the FELA claimants was vicarious and arose by operation of law based on BNSF's non-delegable duty under the Federal Employers Liability Act, 45 U.S.C. §§ 51, *et seq.*, to provide its employees a safe place to work, and *arose out of the active negligence* and fault of mining company in creating such unsafe conditions as hereinafter alleged.

313.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 306 through 309 of this Petition.

314.    BNSF would not have been liable to the FELA claimants but for the aforesaid negligence and fault of mining company in creating the aforesaid unsafe conditions.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation on Count VII of Plaintiff's Petition for

implied indemnity with respect to the claims of the Andrews and Ellison FELA

claimants, and award BNSF damages in an amount that exceeds the jurisdictional amount

of this court, plus court costs and prejudgment interest and such other relief to which

BNSF may be entitled under the circumstances.

**COUNT VIII**
**(The Doe Run Resources Corporation – Cleanup of**
**Contamination in Rail Yards, Sidings and Tracks - Contractual Indemnity)**

315.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 244 through 246 of this Petition.

316.    The contamination of ballast and right-of-way in BNSF's railyards,

sidings and tracks was caused by:

a.    Mining company's failure to comply with 49 C.F.R. §§ 171.8,

171.10, 172.101, 173.22, 173.24 and 173.240, which required mining company to

load LOC into leak-proof, sift-proof railcars for shipment.

b.    Mining company's failure to comply with 49 C.F.R. §§ 172.101,

173.22(a)(2), 173.24(c) & (e), 173.132, and 173.240 - 173.242, which required

mining company to select a closed package for shipping LOC based on

information known to mining company that LOC was "so toxic to humans as to

afford a hazard to health during transportation."

c.    Mining company's use of the track scales at Buick Mine/Mill and

Buick Smelter, which resulted in holes being punched into the sides of cars by the

front-end loaders mining company used to adjust loaded cars at the track scales.

d.    Mining company's movement of railcars on the side track and/or

use of motive power to move cars on the sidetracks at Viburnum Mine/Mill,

Buick Mine/Mill, and Buick Smelter, which resulted in holes being punched into the sides of cars by the front-end loaders mining company used to move railcars.

317.    The cost and expense BNSF has incurred, or will incur in the future, to clean up LOC contamination in its yards, sidings and tracks arose from mining company's failure to comply with "regulations issued by . . . [a] lawful authority . . . governing the . . . loading [or] handling of dangerous articles as defined in said . . . regulations" and, therefore, falls within the scope of the indemnity provisions of ¶8 of the 1968 Buick Mine/Mill Sidetrack Agreement and ¶8 of the Buick Smelter Unloading Station Sidetrack Agreement.

318.    The cost and expense BNSF has incurred, or will incur in the future, to clean up LOC contamination in its yards, sidings and tracks arose from mining company's movement of railcars on the sidetracks and/or use of its own motive power to move cars on the industry sidetracks and, therefore, falls within the scope of the indemnity provisions of ¶10(c) of the 1967 Viburnum Mine/Mill Sidetrack Agreement, ¶12 of the 1968 Buick Mine/Mill Sidetrack Agreement, and ¶11 of the 1968 Buick Smelter Unloading Station Sidetrack Agreement.

319.    The cost and expense BNSF has incurred, or will incur in the future, to clean up LOC contamination in its yards, sidings, and tracks arose from mining company's use of the track scales at Viburnum Mine/Mill, Buick Mine/Mill, and Buick Smelter and, therefore, falls within the scope of the indemnity provisions of ¶10 of the 1968 Buick Smelter Unloading Station Sidetrack Agreement and ¶3 of the 1973 Supplement to the 1968 Buick Mine/Mill Sidetrack Agreement.

320.    The cost and expense BNSF has incurred, or will incur in the future, to clean up LOC contamination in its yards, sidings and tracks arose from mining company's use of railcars subject to the 1991 Car Lease and, therefore, fall within the scope of the indemnity provisions of ¶5 of the 1991 Car Lease Agreement.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation on Count VIII of Plaintiff's Petition for contractual indemnity for cleanup costs, and award BNSF damages, including recovery of its legal fees and expenses incurred in investigating and negotiating the clean up of LOC contamination of its railyards, sidings and tracks in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT IX
### (The Doe Run Resources Corporation – Cleanup of
### Contamination in Rail Yards, Sidings and Tracks – Negligence)

321.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 244 through 246 of this Petition.

322.    Mining company was negligent in its loading and movement of railcars at Viburnum Mine/Mill, Buick Mine/Mill, Buick Smelter, and Fletcher Transload in one or more of the following respects:

a.    Failing to plug drain holes in the bottoms of railcars before loading the cars with LOC.

b.    Failing to exercise care not to punch holes in the sides of railcars when using the bucket of the front-end loaders to move railcars along the sidetracks.

     c.     Failing to exercise care not to punch holes in the sides of railcars when using the bucket of the front-end loaders to adjust loads in loaded railcars at the track scale.

     d.     Failing to repair or plug holes in the sides of railcars before loading the cars with LOC.

     e.     Failing to warn BNSF that mining company was not plugging drain holes in the bottoms of railcars before loading the cars with LOC.

     f.     Failing to warn BNSF that mining company was failing to repair or plug holes in the sides of railcars before loading the cars with LOC.

     g.     Failing to cover open-top railcars loaded with LOC or to spray a "binder" on the LOC to keep the LOC from blowing out the tops of the railcars.

     h.     Failing to classify and handle LOC as a "poison" for shipping purposes under U.S.D.O.T. Hazardous Materials regulations, which would have required LOC to be shipped in closed packages, when mining company knew or should have know that LOC was "so toxic to humans as to afford a hazard to health during transportation."

323.     Mining company was negligent per se in its loading and movement of railcars at Viburnum Mine/Mill, Buick Mine/Mill, Buick Smelter, and Fletcher Transload in the following respects:

     a.     Failing to comply with 49 C.F.R. §§ 171.8, 171.10, 172.101, 173.22, 173.24, and 173.240, which required mining company to load LOC into leak-proof, sift-proof railcars for shipment.

b.     Failing to comply with 49 C.F.R. §§ 172.101, 173.22(a)(2), 173.24(c) & (e), 173.132, and 173.240 - 173.242, which required mining company to select a closed package for shipping LOC based on information known to mining company that LOC was "so toxic to humans as to afford a hazard to health during transportation."

324.    The negligence and negligence per se of mining company in the loading and movement of railcars cased the lead contamination in BNSF's railyards, sidings and tracks and the injury and damage to BNSF hereinbefore alleged.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation on Count IX of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT X
### (The Doe Run Resources Corporation -- Cleanup of Contamination in Rail Yards, Sidings and Tracks – Product Liability)

325.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 244 through 246 of this Petition.

326.    The LOC that blew out of open-top railcars and leaked from the railcars was an unreasonably dangerous and defective product or an inherently dangerous product the mining company placed into the stream of commerce.

327.    Mining company is liable to BNSF based on strict liability in tort for product defect for:

a.     Placing an unreasonably dangerous and defective product, LOC, into the stream of commerce.

b.    Failing to warn of the inherently dangerous characteristics of a product, LOC, that it placed into the stream of commerce.

328.    The defective and unreasonably dangerous conditions of LOC caused lead contamination in BNSF's railyards, sidings and other tracks and the injury and damage to BNSF hereinbefore alleged.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation on Count X of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XI
### (Fluor Corporation, Doe Run Investment Holding Corporation, A.T. Massey Coal Company – Non-Employee Claimants Allegedly Exposed to LOC at Cherryville - Contractual Indemnity)

329.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 1 through 243 of this Petition.

330.    All references in Counts XI through XX to "mining company" are to Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company and their predecessors, agents, and partners.

331.    Fluor Corporation is liable for the acts and omissions of its predecessors, agents and partners from 1967 to 1994.

332.    Doe Run Investment Holding Corporation is liable for the acts and omissions of its predecessors, agents and partners from 1967 to 1994.

333.    A.T. Massey Coal Company is liable for the acts and omissions of its predecessors, agents and partners from 1967 to 1994.

334.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 247 through 258 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XI of Plaintiff's Petition for contractual indemnity with respect to the claims of the non-employee claimants allegedly exposed to LOC at Cherryville, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XII
### (Fluor Corporation, Doe Run Investment Holding Corporation, A.T. Massey Coal Company – Non-Employee Claimants Allegedly Exposed to LOC at Cherryville - Contribution)

335.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

336.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 260 through 267 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XII of Plaintiff's Petition for contribution with respect to the claims of the non-employee claimants allegedly exposed to LOC at Cherryville, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XIII
**(Fluor Corporation, Doe Run Investment Holding Corporation,
A.T. Massey Coal Company - Non-Employee Claimants Allegedly
Exposed to LOC at Locations Other Than Cherryville - Contractual Indemnity)**

337.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

338.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 269 through 274 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XIII of Plaintiff's Petition for contractual indemnity with respect to the claims of the non-employee claimants allegedly exposed to LOC at locations other than Cherryville, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XIV
**(Fluor, Doe Run Investment Holding Corporation,
A.T. Massey Coal Company - Non-Employee Claimants Allegedly
Exposed to LOC at Locations Other Than Cherryville - Contribution)**

339.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

340.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 276 through 283 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey

2415236                                    92

Coal Company on Count XIV of Plaintiff's Petition for contribution with respect to the claims of the non-employee claimants allegedly exposed to LOC at locations other than Cherryville, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XV
**(Fluor Corporation, Doe Run Investment Holding Corporation, A.T. Massey Coal Company - Andrews and Bray FELA Claimants - Contractual Indemnity)**

341.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

342.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 285 through 302 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XV of Plaintiff's Petition for contractual indemnity with respect to the claims of the Andrews and Bray FELA claimants, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XVI
**(Fluor Corporation, Doe Run Investment Holding Corporation, A.T. Massey Coal Company – Andrews FELA Claimants – Contribution)**

343.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

344.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 304 through 309 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XVI of Plaintiff's Petition for contribution with respect to the claims of the Andrews FELA claimants, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XVII
**(Fluor Corporation, Doe Run Investment Holding
Corporation, A.T. Massey Coal Company
- Andrews FELA Claimants - Implied Indemnity)**

345.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

346.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 311 through 314 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XVII of Plaintiff's Petition for implied indemnity with respect to the claims of the Andrews FELA claimants, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XVIII
### (Fluor Corporation, Doe Run Investment Holding Corporation, A.T. Massey Coal Company - Cleanup of Rail Yards, Sidings and Tracks - Contractual Indemnity)

347.  BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

348.  BNSF adopts and incorporates herein by reference the allegations of paragraphs 316 through 320 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XVIII of Plaintiff's Petition for contractual indemnity with respect to cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XIX
### (Fluor Corporation, Doe Run Investment Holding Corporation, A.T. Massey Coal Company - Cleanup of Contamination in Rail Yards, Sidings and Tracks - Negligence)

349.  BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

350.  BNSF adopts and incorporates herein by reference the allegations of paragraphs 322 through 324 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XIX of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court,

plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XX
**(Fluor Corporation, Doe Run Investment Holding
Corporation, A.T. Massey Coal Company – Cleanup of
Contamination in Rail Yards, Sidings and Tracks – Product Liability)**

351.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 329 through 333 of this Petition.

352.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 326 through 328 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Fluor Corporation, Doe Run Investment Holding Corporation, and A.T. Massey Coal Company on Count XX of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XXI
**(Homestake Lead Company of Missouri – Non-Employee Claimants
Allegedly Exposed to LOC at Cherryville – Contractual Indemnity)**

353.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 1 through 243 of this Petition.

354.    All references in Counts XXI to XXX to "mining company" are to Homestake Lead Company of Missouri and its predecessors, agents, and partners.

355.    Homestake Lead Mining Company of Missouri is liable for the acts and omissions of its predecessors, agents and partners from 1967 to 1990.

356.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 247 through 258 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri in Count XXI of Plaintiff's Petition for contractual indemnity with respect to the claims of the non-employee claimants allegedly exposed to LOC at Cherryville, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XXII
**(Homestake Lead Company of Missouri - Non-Employee
Claimants Allegedly Exposed to LOC at Cherryville - Contribution)**

357.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 353 through 355 of this Petition.

358.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 260 through 267 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri on Count XXII of Plaintiff's Petition for contribution with respect to the claims of the non-employee claimants allegedly exposed to LOC at Cherryville, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XXIII
### (Homestake Lead Company of Missouri – Non-Employee Claimants Allegedly Exposed to LOC at Locations Other Than Cherryville – Contractual Indemnity)

359.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 353 through 355 of this Petition.

360.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 269 through 274 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri on Count XIII of Plaintiff's Petition for contractual indemnity with respect to the claims of the non-employee claimants allegedly exposed to LOC at locations other than Cherryville, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, and award BNSF damages in an amount that exceeds the jurisdictional amount of this Court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XXIV
### (Homestake Lead Company of Missouri – Non-Employee Claimants Allegedly Exposed to LOC at Locations Other Than Cherryville – Contribution)

361.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 353 through 355 of this Petition.

362.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 276 through 283 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri on Count XXIV of Plaintiff's Petition for contribution with respect to the claims of the non-employee claimants allegedly exposed

to LOC at locations other than Cherryville, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XXV
#### (Homestake Lead Company of Missouri –
#### Andrews FELA Claimants – Contractual Indemnity)

363.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 353 through 355 of this Petition.

364.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 285 through 302 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri on Count XXV of Plaintiff's Petition for contractual indemnity with respect to the claims of the Andrews FELA claimants, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XXVI
#### (Homestake Lead Company of Missouri –
#### Andrews FELA Claimants – Contribution)

365.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 353 through 355 of this Petition.

366.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 304 through 309 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri on Count XXVI of Plaintiff's Petition for

contribution with respect to the claims of the Andrews FELA claimants, and award BNSF

damages in an amount that exceeds the jurisdictional amount of this court, plus court

costs and prejudgment interest and such other relief to which BNSF may be entitled

under the circumstances.

### COUNT XXVII
**(Homestake Lead Company of Missouri –
Andrews FELA Claimants – Implied Indemnity)**

367.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 353 through 355 of this Petition.

368.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 311 through 314 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and

against Homestake Lead Company of Missouri on Count XXVII of Plaintiff's Petition for

implied indemnity with respect to the claims of the Andrews FELA claimants, and award

BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus

court costs and prejudgment interest and such other relief to which BNSF may be entitled

under the circumstances.

### COUNT XXVIII
**(Homestake Lead Company of Missouri  – Cleanup
of Rail Yards, Sidings and Tracks – Contractual Indemnity)**

369.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 353 through 355 of this Petition.

370.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 316 through 320 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and

against Homestake Lead Company of Missouri on Count XXVIII of Plaintiff's Petition

for contractual indemnity for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XXIX
### (Homestake Lead Company of Missouri - Cleanup of Contamination in Rail Yards, Sidings and Tracks - Negligence)

371.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 353 through 355 of this Petition.

372.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 322 through 324 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri on Count XXIX of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XXX
### (Homestake Lead Company of Missouri - Cleanup of Contamination in Rail Yards, Sidings and Tracks - Product Liability)

373.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 353 through 355 of this Petition.

374.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 325 through 328 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Homestake Lead Company of Missouri on Count XXX of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the

jurisdictional amount of this court, plus court costs and prejudgment interest and such
*other relief to which BNSF* may be entitled under the circumstances.

### COUNT XXXI
**(Missouri Lead Smelting Company - Non-Employee Claimants
Allegedly Exposed to LOC at Cherryville - Contractual Indemnity)**

375.    BNSF adopts and incorporates herein by reference the allegations of
paragraphs 1 through 243 of this Petition.

376.    All references in Counts XXXI, XXXIII, XXXV, and XXXVIII to
"mining company" are to Missouri Lead Smelting Company and its predecessors, agents,
and partners.

377.    Missouri Lead Smelting Company is liable for the acts and omissions of
its predecessors, agents and partners from 1967 to 1986.

378.    BNSF adopts and incorporates herein by reference the allegations of
paragraphs 247 through 258 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and
against Missouri Lead Smelting Company on Count XXXI of Plaintiff's Petition for
contractual indemnity with respect to the claims of the non-employee claimants allegedly
exposed to LOC at Cherryville, and award BNSF damages, including recovery of its legal
fees and expenses incurred in defending the underlying personal injury claims, in an
*amount that exceeds the jurisdictional amount of this court*, plus court costs and
prejudgment interest and such other relief to which BNSF may be entitled under the
circumstances.

## COUNT XXXII
### (Cyprus Amax Minerals Corporation and Missouri
### Lead Smelting Company - Non-Employee Claimants
### Allegedly Exposed to LOC at Cherryville - Contribution)

379.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 1 through 243 of this Petition.

380.    All references in Counts XXXII, XXXIV, XXXVI, XXXVII, XXXIX, and XL to "mining company" are to Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company and their predecessors, agents, and partners.

381.    Cyprus Amax Minerals Corporation is liable for the acts and omissions of its predecessors, agents and partners from 1967 to 1986.

382.    Missouri Lead Smelting Company is liable for the acts and omissions of its predecessors, agents and partners from 1967 to 1986.

383.    To facilitate the sale of its subsidiaries' interests in Amax-Homestake Lead Tollers, Buick Mine/Mill, and Buick Smelter, Amax, Inc. entered into a "Parent Companies Agreement" with Homestake Mining, Inc, the parent company of Homestake Lead Company of Missouri, wherein Amax, Inc. agreed to guarantee performance of the obligations of Amax Lead Company of Missouri and Missouri Lead Smelting Company with respect to the sale of their partnership interests; to-wit Amax, Inc. agreed to assume the liabilities of Amax Lead Company and Missouri Lead Smelting Company.

384.    Without the "Parent Companies Agreement," Homestake Lead Company of Missouri would not have purchased the interests of Amax Lead Company of Missouri and Missouri Lead Smelting Company in Amax-Homestake Lead Tollers, Buick Mine/Mill, and Buick Smelter because of the potential that Homestake Lead Company of Missouri would succeed to the liabilities of Amax Lead Company of Missouri and

Missouri Lead Smelting Company with no means for recovering contribution or indemnity from those companies if they transferred the sale proceeds to Amax, Inc. and went out of business.

385.    In December 1986, after transferring the proceeds from the sale of its interest in Amax-Homestake Lead Tollers, Buick Mine/Mill and Buick Smelter to Amax, Inc., Amax Lead Company of Missouri withdrew from doing business in Missouri and in September 1988 dissolved its corporate structure without making provision for securing its contingent liabilities related to its ownership and operation of Buick Mine/Mill or Buick Smelter.

386.    The aforesaid sale by Amax Lead Company of Missouri and Missouri Lead Smelting Company of their respective interests in Amax-Homestake Lead Tollers, Buick Mine/Mill, and Buick Smelter and their transfer of the sale proceeds to Amax, Inc. was structured in the manner described above in an effort by Amax, Inc. to receive the proceeds of the sale of the business without taking responsibility for the contingent liabilities of the business.

387.    Equity demands that a constructive trust be imposed on the proceeds from the sale by Amax Lead Company of Missouri and Missouri Smelting Company of their interests in Amax-Homestake Lead Tollers, Buick Mine/Mill, and Buick Smelter to prevent Amax, Inc. from being unjustly enriched by receiving the benefit of the proceeds from the sale of the business without succeeding to the contingent liabilities of the business.

388.    Pleading in the alternative, BNSF alleges that Amax, Inc. assumed all assets and liabilities of Amax Lead Company of Missouri when Amax Lead Company of Missouri dissolved in September 1988.

389.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 260 through 267 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company on Count XXXII of Plaintiff's Petition for contribution with respect to the claims of the non-employee claimants allegedly exposed to LOC at Cherryville, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

**COUNT XXXIII**
**(Missouri Lead Smelting Company -**
**Non-Employee Claimants Alleged Exposed**
**to LOC at Locations Other Than Cherryville**
**- Contractual Indemnity)**

390.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 375 through 377 of this Petition.

391.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 269 through 274.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Missouri Lead Smelting Company on Count XXXIII of Plaintiff's Petition for contractual indemnity with respect to the claims of the non-employee claimants allegedly exposed at locations other than Cherryville, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, and award BNSF

damages in an amount that exceeds the jurisdictional amount of this court, plus costs and

prejudgment interest and such other relief to which BNSF may be entitled under the

circumstances.

**COUNT XXXIV**
**(Cyprus Amax Minerals Corporation and Missouri Lead**
**Smelting Company - Non-Employee Claimants Allegedly**
**Exposed to LOC At Locations Other Than Cherryville - Contribution)**

392.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 379 through 388 of this Petition.

393.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 276 through 283 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and

against Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company on

Count XXXIV of Plaintiff's Petition for contribution with respect to the claims of the

non-employee claimants allegedly exposed to LOC at locations other than Cherryville,

and award BNSF damages in an amount that exceeds the jurisdictional amount of this

court, plus court costs and prejudgment interest and such other relief to which BNSF may

be entitled under the circumstances.

**COUNT XXXV**
**(Missouri Lead Smelting Company - Andrews**
**FELA Claimants - Contractual Indemnity)**

394.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 375 through 377 of this Petition.

395.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 285 through 302 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Missouri Lead Smelting Company on Count XXXV of Plaintiff's Petition for contractual indemnity with respect to the claims of the Andrews FELA claimants, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XXXVI
**(Cyprus Amax Minerals Corporation and Missouri Lead
Mining Company – Andrews FELA Claimants – Contribution)**

396.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 379 through 388 of this Petition.

397.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 304 through 309 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company on Count XXXVI of Plaintiff's Petition for contribution with respect to the claims of the Andrews FELA claimants, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XXXVII
**(Cyprus Amax Minerals Corporation and Missouri Lead
Smelting Company – Andrews FELA Claimants – Implied Indemnity)**

398.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 379 through 388 of this Petition.

399.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 311 through 314 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company on Count XXXVII of Plaintiff's Petition for implied indemnity with respect to the claims of the Andrews FELA claimants, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XXXVIII
### (Missouri Lead Smelting Company - Cleanup of Rail Yards, Sidings and Tracks - Contractual Indemnity)

400.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 375 through 377 of this Petition.

401.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 316 through 320 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Missouri Lead Smelting Company on Count XXXVIII of Plaintiff's Petition for contractual indemnity for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XXXIX
### (Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company - Cleanup of Contamination in Rail Yards, Sidings and Tracks - Negligence)

402.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 379 through 388 of this Petition.

2415236

108

403.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 322 through 324 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company on Count XXXIX of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XL
**(Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company – Cleanup of Contamination in Rail Yards, Sidings and Tracks – Product Liability)**

404.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 379 through 388 of this Petition.

405.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 326 through 328 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against Cyprus Amax Minerals Corporation and Missouri Lead Smelting Company on Count XL of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XLI
### (DR Acquisition Corp. and The Renco Group, Inc. – Non-Employee Claimants Allegedly Exposed to LOC at Cherryville – Contractual Indemnity)

406.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 1 through 243 of this Petition.

407.    All references in Counts XLI through L to "mining company" are to DR Acquisition Corp. and The Renco Group, Inc., and their predecessors, agents, and partners.

408.    DR Acquisition Corp. and The Renco Group, Inc. are liable for the acts and omissions of their predecessors, agents and partners from 1968 to 1986.

409.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 247 through 258 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLI of Plaintiff's Petition for contractual indemnity with respect to the claims of non-employee claimants allegedly exposed to LOC at Cherryville, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XLII
### (DR Acquisition Corp. and The Renco Group, Inc. – Non-Employee Claimants Allegedly Exposed to LOC at Cherryville – Contribution)

410.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 406 through 408 of this Petition.

411.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 260 through 267 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLII of Plaintiff's Petition for contribution with respect to the claims of non-employee claimants allegedly exposed to LOC at Cherryville, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XLIII
### (DR Acquisition Corp. and The Renco Group, Inc. - Non-Employee Claimants Allegedly Exposed to LOC at Locations Other Than Cherryville - Contractual Indemnity)

412.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 406 through 408 of this Petition.

413.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 269 through 274 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLIII of Plaintiff's Petition for contractual indemnity with respect to the claims of non-employee claimants allegedly exposed to LOC at locations other than Cherryville, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court,

plus court costs and prejudgment interest and such other relief to which BNSF may be

entitled under the circumstances.

## COUNT XLIV
### (DR Acquisition Corp. and The Renco Group, Inc. - Non-Employee Claimants Allegedly Exposed at Locations Other Than Cherryville - Contribution)

414.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 406 through 408 of this Petition.

415.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 276 through 283 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and

against DR Acquisition Corp. and The Renco Group, Inc. on Count XLIV of Plaintiff's

Petition for contribution with respect to the claims of non-employee claimants allegedly

exposed at locations other than Cherryville, and award BNSF damages, including

recovery of its legal fees and expenses incurred in defending the underlying personal

injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court

costs and prejudgment interest and such other relief to which BNSF may be entitled

under the circumstances.

## COUNT XLV
### (DR Acquisition Corp. and The Renco Group, Inc. - Andrews and Bray FELA Claimants - Contractual Indemnity)

416.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 406 through 408 of this Petition.

417.    BNSF adopts and incorporates herein by reference the allegations of

paragraphs 285 through 302 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLV of Plaintiff's Petition for contractual indemnity with respect to the claims of the Andrews and Bray FELA claimants, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XLVI
### (DR Acquisition Corp. and The Renco Group, Inc. - Andrews FELA Claimants - Contribution)

418.   BNSF adopts and incorporates herein by reference the allegations of paragraphs 406 through 408 of this Petition.

419.   BNSF adopts and incorporates herein by reference the allegations of paragraphs 304 through 309 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLVI of Plaintiff's Petition for contribution with respect to the claims of the Andrews FELA claimants, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XLVII
### (DR Acquisition Corp. and The Renco Group, Inc. - Andrews FELA Claimants - Implied Indemnity)

420.   BNSF adopts and incorporates herein by reference the allegations of paragraphs 406 through 408 of this Petition.

421.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 311 through 314 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLVII of Plaintiff's Petition for implied indemnity with respect to the claims of the Andrews FELA claimants, and award BNSF damages, including recovery of its legal fees and expenses incurred in defending the underlying personal injury claims, in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

### COUNT XLVIII
**(DR Acquisition Corp. and The Renco Group, Inc. -
Cleanup of Rail Yards, Sidings and Tracks - Contractual Indemnity)**

422.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 406 through 408 of this Petition.

423.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 316 through 320 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLVIII of Plaintiff's Petition for contractual indemnity for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT XLIX
### (DR Acquisition Corp. and The Renco Group, Inc. - Cleanup of Rail Yards, Sidings and Tracks - Negligence)

424.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 406 through 408 of this Petition.

425.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 322 through 324 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count XLIX of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT L
### (DR Acquisition Corp. and The Renco Group, Inc. - Cleanup of Rail Yards, Sidings and Tracks - Products Liability)

426.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 406 through 408 of this Petition.

427.    BNSF adopts and incorporates herein by reference the allegations of paragraphs 326 through 328 of this Petition.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against DR Acquisition Corp. and The Renco Group, Inc. on Count L of Plaintiff's Petition for damages for cleanup costs, and award BNSF damages in an amount that exceeds the jurisdictional amount of this court, plus court costs and prejudgment interest and such other relief to which BNSF may be entitled under the circumstances.

## COUNT LI
### (All Defendants - All Claims - Contribution
### Based on Tortious Conduct of Entities Acting in Concert)

428.   BNSF adopts and incorporates herein by reference paragraphs 1-243 of

this Petition.

429.   All reference in this Count to "mining company" are to the Doe Run

Resources Corporation, Fluor Corporation, Doe Run Investment Holding Corporation,

A.T. Massey Coal Company, Homestake Lead Company of Missouri, Missouri Lead

Smelting Company, Cyprus Amax Minerals Corporation, DR Acquisition Corp., and The

Renco Group, Inc., and their respective predecessors, agents, and partners.

430.   The non-employee claimants contend that they inhaled and ingested air-

borne LOC dust and ingested LOC dust from hand-to-mouth contact after their arms,

hands, faces, hair and clothing became contaminated with LOC dust from BNSF's

railcars that were cleaned at Cherryville Siding and that such inhalation and ingestion of

LOC dust caused them to become lead poisoned, which resulted in personal injury to

them.

431.   The FELA claimants contend that they inhaled and ingested air-borne

LOC dust at the load out areas, scale tracks and unloading stations on the Lead Line and

at other points between the load out areas, scale tracks and unloading stations on the Lead

Line and shipping destinations for LOC shipments where LOC dust blew out of open-top

railcars and off LOC-contaminated ballast and right-of-way in BNSF's railyards, sidings

and tracks and ingested LOC dust from hand-to-mouth contact after their arms, hands,

faces, hair and clothing became contaminated with LOC dust from BNSF railcars on

which LOC dust settled and from LOC-contaminated ballast and right-of-way in BNSF's

railyards, sidings and tracks, and that such inhalation and ingestion caused them to

become lead poisoned, which resulted in personal injury to them.

432.    Each mining company bears joint liability with BNSF for the claims of the

non-employee claimants and the FELA claimants based on negligence and negligence per

se on the part of each mining company in the respects hereinafter alleged, which caused

or contributed to cause the injuries claimed by the non-employee claimants and the FELA

claimants.

433.    The contamination of the ballast and right-of-way in BNSF's railyards,

sidings and tracks was caused or contributed to be caused by the negligence and

negligence per se of each mining company in the respects hereinafter alleged.

434.    Each mining company was negligent in the following respects:

a.    Failing to classify and describe LOC as a "poison" in shipping

papers and on railcar hazmat placards pursuant to U.S.D.O.T. Hazardous

Materials Regulations, which would have required LOC to be shipped in closed

packages, when mining company knew or should have known that LOC was "so

toxic to humans as to afford a hazard to health during transportation."

b.    Failing to notify the Missouri Department of Health of the elevated

blood lead levels experienced by mining company's employees who worked

around LOC at Viburnum Mine/Mill and Buick Mine/Mill.

c.    Failing to offer lead protection training to BNSF employees who

worked on the premises at Viburnum Mine/Mill, Buick Mine/Mill, Buick Smelter,

and Fletcher Transload.

d.      Failing to offer special protective equipment and clothing to BNSF employees who worked on the premises of Viburnum Mine/Mill, Buick Mine/Mill, Buick Smelter, and Buick Transload.

e.      Failing to warn BNSF and BNSF's employees of the dangers of inhaling or ingesting LOC or the potential of ingesting harmful levels of LOC from hand-to-mouth contact when lead mining company knew of such danger based on blood lead data it had collected over the course of many years from testing its own employees who worked around LOC.

435.   Each mining company was negligent per se for:

a.      Failing to comply with 49 C.F.R. §§172.203(m), 172.204(a)(1), 172.500(a), 172.504(a), 172.508, 172.554, 173.22(a)(1) and 173.1132, which required mine company to classify and/or describe LOC as a "poison" in shipping papers and on railcar hazmat placards, which would have required mining company to select a closed package for shipping LOC, when mining company knew or should have known that LOC was "so toxic to humans as to afford a hazard to health during transportation."

b.      Failing to comply with MO. CODE STATE REGS., Title 19 §20-20.010, 20-20.020, 20-20.030, which required mining company to report elevated blood lead levels to the local health authority or the Missouri Department of Health.

c.      Failing to comply with 30 C.F.R. §48.31, which required mining company to provide hazard training, including lead protection training, to BNSF employees who worked on mining company property.

d.    Failing to comply with 30 C.F.R. §57.15006, which required

mining company to provide special protective equipment and clothing to BNSF

employees who worked on mining company property.

436.    Each mining company acted in concert with the other Defendants and

pursuant to a common design with the other Defendants in committing the tortious acts

alleged above because each mining company did not want to have to acknowledge, either

explicitly or implicitly, that LOC was "so toxic to humans as to afford a hazard to health

during transportation," which would have required mining companies to classify and ship

LOC as a "poison" under U.S.D.O.T. Hazardous Materials regulations, because they did

want to incur the cost and expense that would have been entailed to ship LOC in a closed

package or to otherwise comply with U.S.D.O.T. Hazardous Materials regulations that

apply to shipping "poisons."

437.    Each mining company knew that the tortious acts of the other Defendants

herein breached a legal duty of the other Defendants, yet each mining company gave

substantial assistance and encouragement to the other Defendants to commit such tortious

acts because each mining company knew that if the other Defendants acted otherwise,

they would be required, at considerable cost and expense, to classify and ship LOC as a

"poison," including shipping LOC in a closed package and otherwise complying with

U.S.D.O.T. Hazardous Materials regulations relating to "poisons."

438.    Each mining company gave substantial assistance to the other Defendants

herein in accomplishing the tortious acts alleged above by agreeing, either expressly or

tacitly, not to classify or ship LOC as a "poison," and each mining company's own

conduct in failing to classify and ship LOC as a "poison" constituted a separate breach of a legal duty to the non-employee claimants, the FELA claimants, and BNSF.

439.   As a result of the joint negligence and negligence per se of the mining companies herein alleged, the non-employee claimants and the FELA claimants were exposed to LOC and LOC leaked from and was blown out of BNSF's railcars onto the ballast and right-of-way of BNSF's tracks, railyards and sidings, and BNSF was deprived of information it needed to take protective measures against exposure of non-employee claimants and FELA claimants to LOC and against leakage and blowing of LOC out of BNSF's railcars into the ballast and right-of-way of BNSF's railyards, sidings and tracks.

440.   Each mining company is liable for the negligent acts of each of the other Defendants herein in the respects herein alleged that caused or contributed to cause injury to the non-employee claimants and the FELA claimants and contamination of the ballast and right-of-way of BNSF's tracks, railyards and sidings.

WHEREFORE, BNSF prays this Court enter judgment in favor of BNSF and against The Doe Run Resources Corporation, Fluor Corporation, Doe Run Investment Holding Corporation, DR Acquisition Corp., The Renco Group, Inc., A.T. Massey Coal Company, Homestake Lead Company of Missouri, Cyprus Amax Minerals Company, and Missouri Lead Smelting Company on Count LI of Plaintiff's Petition for contribution with respect to the claims of the non-employee claimants and FELA claimants, except for liability already released by BNSF with respect to such claims, and for damages for clean up costs, and award BNSF damages in an amount that exceeds jurisdictional amount of this Court, plus court costs and pre-judgment interest and such other relief to which BNSF may be entitled under the circumstances.

THOMPSON COBURN LLP

By _____
Paul M. Brown MBE # 28109
One USBank Plaza
St. Louis, MO 63101
314-552-6016
314-552-7016 (Fax)

Attorneys for Plaintiff BNSF Railway
Company