# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE CONTINENTAL INSURANCE COMPANY,

                                    Plaintiff,

-against-

CYPRUS AMAX MINERALS COMPANY,
MISSOURI LEAD SMELTING COMPANY,
HOMESTAKE LEAD COMPANY OF MISSOURI,
INSURANCE COMPANY OF NORTH AMERICA,
CENTURY INDEMNITY COMPANY, THE
TRAVELERS INDEMNITY COMPANY, NATIONAL
UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA, and HARTFORD ACCIDENT &
INDEMNITY COMPANY,

                                    Defendants.

Index No.: 0101260/07

COMPLAINT
FOR DECLARATORY
JUDGMENT

NEW YORK
COUNTY CLERK'S OFFICE

JAN 2 6 2007

NOT COMPARED
WITH COPY FILED

Plaintiff The Continental Insurance Company ("Continental"), by its attorneys, as
and for its Complaint for Declaratory Judgment pursuant to section 3001 of the Civil Practice
Law and Rules, alleges as follows:

## NATURE OF ACTION

1.      Continental seeks a declaratory judgment concerning its obligation to
defend and indemnify Cyprus Amax Minerals Company ("Cyprus Amax"), Missouri Lead
Smelting Company ("MLS Company"), and Homestake Lead Company of Missouri
("Homestake") (collectively the "Coverage Claimants") under the liability insurance policies
Continental issued to Amax, Inc. from 1975 until 1986 ("the Continental Policies").

2.      BNSF Railway Company ("BNSF") has sued the Coverage Claimants for
contribution for settlements paid in relation to alleged bodily injuries and remediation costs
incurred for alleged property damage caused by lead pollution (the "Claims") including but not
limited to the claims alleged in the action styled *BNSF Railway Co. v. The Doe Run Resources*

*Co., et al.*, Circuit Court for the City of St. Louis, Missouri, case no. 052-01585 (filed on or around May 6, 2005).

      3.    As Coverage Claimants seek insurance coverage for the Claims under the Continental Policies, Continental seeks a declaration of rights, duties and liabilities of the parties under the Continental Policies.

      4.    In the event this Court determines there is coverage for the Claims under the Continental Policies, Continental also seeks to have this Court delineate rules for allocating defense costs and losses relating to the Claims among Continental, the Coverage Claimants and the other Insurer Defendants (as defined in paragraph 17 below), as applicable law and the Continental Policies require such apportionment.

## THE PARTIES

      5.    Plaintiff Continental is incorporated under the laws of the Commonwealth of Pennsylvania, and has its principal place of business in Chicago, Illinois. Continental is authorized to do business in the State of New York.

      6.    During the period from before January 1, 1975 through December 31, 1977, Continental was incorporated in New York, and from before January 1, 1975 through and after April 1, 1986, Continental's principal place of business was located at 80 Maiden Lane, New York, New York.

      7.    The Continental Policies were issued to Amax, Inc. On information and belief, Amax, Inc. was a New York corporation during the period from before January 1, 1962 to November 15, 1993, and maintained its principal place of business in New York until 1976. On or around November 15, 1993, Amax merged with Cyprus Minerals Company forming Cyprus Amax.

8.  On information and belief, Defendant Cyprus Amax is a corporation organized under the laws of Delaware authorized to do and doing business in the State of New York, with its principal place of business in a state other than New York. Defendant Cyprus Amax is the successor of Amax, Inc. ("Amax"), the named insured under the Continental Policies, and is the parent of Defendant MLS Company.

9.  On information and belief, Defendant MLS Company is incorporated under the laws of the State of Delaware, and since 1993 has been an inactive corporation. From 1965 to 1986, Defendant MLS Company was a wholly owned subsidiary of Amax Lead Company of Missouri ("Amax Missouri"), which was a wholly owned subsidiary of Amax. On information and believe, Defendant MLS Company is currently a wholly owned subsidiary of Cyprus Amax.

10.  On information and belief, Defendant Homestake is, and at all relevant times was, a California corporation.

11.  On information and belief, during the period from before January 1, 1962 through April 1, 1986, Homestake's principal place of business was located in San Francisco, California.

12.  On information and belief, Defendant Insurance Company of North America ("INA") is, and at all relevant times was, a Pennsylvania corporation. INA is authorized to do business in the State of New York.

13.  On information and belief, Defendant Century Indemnity Company ("Century") is, and at all relevant times was, a Pennsylvania corporation. On information and belief, Century is the successor in interest to certain insurance policies issued by INA and

Century is therefore responsible for the payment of claims under those policies. Century is authorized to do business in the State of New York.

14. On information and belief, Defendant Hartford Accident & Indemnity Company ("Hartford") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Upon information and belief, at all times relevant hereto, Hartford was authorized to do, and did business in the State of New York.

15. Upon information and belief, Defendant The Travelers Indemnity Company ("Travelers"), is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Upon information and belief, at all times relevant hereto, Travelers was authorized to do, and did, business in the State of New York.

16. Upon information and belief, defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York. National Union is a member of the American International Group of insurance companies ("AIG"). Upon information and belief, at all times relevant hereto, National Union was authorized to do, and did, business in the State of New York.

17. The defendants identified in paragraph 12 through 16 above are defined as the "Insurer Defendants".

## JURISDICTION AND VENUE

18. Pursuant to section 3001 of the Civil Practice Law and Rules (the "CPLR") as well as other statutory and common law bases, this Court has jurisdiction over the

147854.1

4

subject matter of this action because Continental seeks declarations regarding the respective

rights and obligations of the parties.

19.    Pursuant to sections 301, 302(a)(1) and 302(a)(4) of the CPLR as well as

other statutory, constitutional and common law bases, this Court has personal jurisdiction over

each of the defendants because each defendants does business within the State of New York, has

consented to the jurisdiction of this Court, and/or because the causes of action arise in whole or

part from their transaction of business in the State and/or their ownership, use or possession of

real property within the State of New York.  In addition, Defendants claim rights under insurance

policies issued in New York through a broker in New York (Frenkel & Company, Inc.) to a New

York corporation (Amax).  In addition, each Defendant is or was transacting business in the State

of New York within the time periods relevant to the causes of action stated herein.

20.    Venue is proper in this county because the plaintiff resides herein, and/or

the defendants are non-residents who may be sued here pursuant to sections 503(a) and 503(c) of

the CPLR.

## FACTUAL BACKGROUND

21.    Upon information and belief, in 1967, Amax and Homestake Lead

Company of Missouri, operating as a partnership, opened and began operating a lead mine and

mill near Buick, Missouri known as the Buick Mine/Mill.

22.    BNSF has filed suit, against the Coverage Claimants, seeking

reimbursement for the amounts BNSF paid in respect of the underlying claimants' alleged lead-

pollution-related bodily injury and for remediation costs as a result of alleged property damage

caused by lead pollution.

23.    The Coverage Claimants have taken the position and demanded that

Continental is obligated under the Continental Polices to pay certain defense costs and/or

147854.1                                    5

indemnify them for the costs and liabilities they have incurred and allegedly will incur in connection with the Claims, and have demanded that Continental make such payments.

24.     On information and belief, the Claims arise as a result of discharges of pollutants and or contaminants and such discharges were neither sudden nor accidental. Accordingly, coverage under the Continental Policies for the Claims is barred by the pollution exclusion in the Continental Policies.     Moreover, even if Continental is obligated to reimburse the Coverage Claimants for some portion of their defense costs and/or to indemnify them for some portion of their liability in connection with the Claims, Continental's obligation is limited to a proportionate share of such payment.

25.     Coverage under the Continental Policies for the Claims to the extent that they relate to environmental property damage is barred as to Defendants Cyprus Amax and MLS Company where such Claims were previously released in a past settlement between the parties.

## THE LIABILITY INSURANCE POLICIES AT ISSUE

26.     Continental issued the following commercial general liability primary policies to Amax:

| Policy Number | Effective/Expiration Dates |
| --- | --- |
| L 3320862 | 1/1/75 – 1/1/76 |
| L 3618826 | 1/1/76 – 1/1/77 |
| L 1184328 | 1/1/77 – 1/1/78 |
| L 1184328 | 1/1/78 – 1/1/79 |
| L 1184328 | 1/1/79 – 1/1/80 |
| SRL 3635813 | 1/1/80 – 1/1/81 |
| SRL 3636099 | 1/1/81 – 1/1/82 |
| SRL 3636291 | 1/1/82 – 1/1/83 |
| SRL 3636677 | 1/1/83 – 1/1/84 |
| SRL 3636859 | 1/1/84 – 1/1/85 |

| Policy Number | Effective/Expiration Dates |
|---|---|
| SRL 3344412 | 1/1/85 – 1/1/86 |
| SRL 3347418 | 1/1/86 – 4/1/86 |

27.    Upon information and belief, INA issued the following policies of primary liability insurance to American Metal Climax[1]:

| Policy Number | Effective/Expiration Dates |
|---|---|
| LB 39736 | 1/1/65 – 1/1/68 |
| ALB 47168 | 1/1/68 – 1/1/71 |
| ALB 47212 | 1/1/71 – 1/1/72 |
| ALB 47240 | 1/1/72 – 1/1/74 |
| ALB 47276 | 1/1/74 – 1/1/75 |
| ALB 47279 | 1/30/74 – 1/1/75 |

28.    Upon information and belief, Travelers issued the following policies of primary liability insurance to Homestake:

| Policy Number | Effective/Expiration Dates |
|---|---|
| NSL1932300 | 3/1/66 – 3/1/67 |
| NSL1932300 | 3/1/67 – 3/1/68 |
| NSL7722190 | 3/1/68 – 3/1/69 |
| NSL7722190 | 3/1/69 – 3/1/70 |
| NSL7722190 | 3/1/70 – 4/1/71 |

29.    Upon information and belief, INA issued the following policies of primary liability insurance to Homestake:

---

[1] On information and belief, on or around July 1, 1974, American Metal Climax, Inc. ("American Metal Climax") changed its name to Amax.

| Policy Number | Effective/Expiration Dates |
|---|---|
| ISLGO3194899 | 3/1/84 – 3/1/85 |
| ISLGO5695181 | 3/1/85 – 3/1/86 |
| HDCGO5696240 | 3/1/86 – 12/1/86 |
| HDCGO569680A | 12/1/86 – 12/1/87 |
| HDCGO5697761 | 12/1/87-12/1/88 |
| ISLG05698613 | 12/1/88-12/1/89 |
| ISLG05699204 | 12/1/89-12/1/90 |
| ISLG05699885 | 12/1/90 –12/1/91 |
| ISLG15017259 | 12/1/91 –12/1/92 |
| HD0615017740 | 12/1/92-12/1/93 |

30.     Upon information and belief, National Union issued the following policies
of primary liability insurance to Homestake:

| Policy Number | Effective/Expiration Dates |
|---|---|
| GL5908180 | 12/1/93-12/1/94 |
| GL5909276 | 12/1/94-12/1/95 |
| GL5909304 | 12/1/95-12/1/96 |
| GL1463764 | 12/1/96-12/1/97 |
| RMGL1135532 | 12/1/97-12/1/98 |
| RMGL6122420 | 12/1/98-12/1/99 |
| RMGL6123167 | 12/1/99-12/1/00 |
| RMGL6123167 | 12/1/00-12/1/01 |

31.     Upon information and belief, Hartford issued the following policies of
primary liability insurance to Homestake:

| Policy Number | Effective/Expiration Dates |
|---|---|
| 57C240394 | 5/1/77-5/1/78 |
| 57C243542 | 5/1/78-12/1/78 |
| 57C245531 | 12/1/78-12/1/79 |
| 57CMX0050 | 12/1/79-12/1/80 |
| 57CMX0050 | 12/1/80-12/1/81 |
| 57CMX0050 | 12/1/81-12/1/82 |
| 57CMX0050 | 12/1/82-12/1/83 |
| 57CMX0050 | 12/1/83-5/1/84 |

## FIRST CAUSE OF ACTION
### (Declaratory Relief Against the Insureds – Rights and Obligations Under the Continental Policies for Claims)

32.     Continental repeats and incorporates by reference the allegations set forth in paragraphs 1 through 31 above.

33.     This is a cause of action for declaratory relief pursuant to Section 3001 of CLPR.  Continental seeks a judicial determination of the respective rights and duties of Continental and Defendants with respect to an actual controversy arising under the Continental Policies.

34.     Continental is informed and believes, and on that basis alleges, that the Coverage Claimants contend Continental and certain other Insurer Defendants are obligated under the terms of their respective policies to provide coverage in connection with the Claims and that Continental and certain other Insurer Defendants are obligated to defend the Coverage Claimants with respect to the Claims and are obligated to indemnify them for the full amount of their alleged damages and costs incurred in defense of the Claims to date.

147854.1                              9

35.     An actual controversy exists between Continental, on the one hand, and the Coverage Claimants, on the other, concerning their respective rights and obligations with respect to whether, or to what extent, Continental has or could have any obligation to defend or indemnify the Coverage Claimants with respect to Claims based on the terms, conditions and exclusions of the Continental Policies.  Such disputes include, but are not limited to, whether and to what extent Continental has any obligation to defend or indemnify the Coverage Claimants with respect to the Claims, because, among other things:

(a)     some or all of the underlying claims do not involve "bodily injuries" or "personal injuries" within the meaning of some or all of the Continental Policies;

(b)     some or all of the underlying claims do not involve "property damage" within the meaning of some or all of the Continental Policies;

(c)     coverage for some or all of any alleged bodily injury, personal injury or property damage is excluded under applicable exclusions, including, without limitation, the pollution exclusions contained in the Continental Policies;

(d)     coverage is not or may not be available for bodily injuries, personal injuries or property damage that takes place outside the policy period of each Continental Policy;

(e)     coverage for the Claims may be barred in whole or in part because the risk of the underlying claims, if any, and/or alleged losses of the Coverage Claimants were expected and intended, known and/or should have been known to Cyprus Amax, MLS Company and Homestake prior to the issuance of some or any of the Continental Policies;

(f)    the Coverage Claimants, by their actions and/or inaction, failed to mitigate, minimize or avoid damages and/or to cooperate with Continental in connection with the underlying claims, and/or may have jeopardized subrogation rights; and

(g)    pre-existing settlement agreements may bar coverage available for the Claims.

36.    Under the circumstances, a determination by this Court is necessary and proper at this time so that the parties may ascertain their respective rights and obligations and avoid the multiplicity of legal actions that would otherwise occur.  The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

37.    Continental seeks a judicial determination of the rights and obligations of the parties with respect to an actual controversy arising out of the Continental Policies.

38.    The issuance of relief by this Court will resolve some or all of the existing controversy between the parties.

<u>**SECOND CAUSE OF ACTION**</u>

**(Declaratory Relief Against All Defendants:  Allocation of Damages)**

39.    Continental repeats and incorporates by reference the allegations set forth in paragraphs 1 through 38.

40.    To the extent that Continental owes any defense or indemnity obligations to the Coverage Claimants in respect of the Claims, Continental contends it is entitled to an apportionment of liability pursuant to applicable law and the Continental Policies.  Continental and the Insurer Defendants on the one hand, and the Coverage Claimants, on the other, dispute whether any defense or indemnity obligations exist and dispute apportionment of liability under the insurance policies issued to Amax and Homestake under the applicable law, arising out of

Claims. Continental is further informed and believes that the Coverage Claimants will dispute that any amount may be apportioned to them.

41.    Thus, to the extent that Continental owes any defense or indemnity obligations to Coverage Claimants in respect of the Claims, Continental seeks a judicial determination of the rights and obligations as between Continental, the Coverage Claimants, and the other Insurer Defendants pursuant to principles of contribution, indemnification, subrogation, set-off or apportionment however denominated.

42.    In particular, Continental seeks a declaration as to the proper allocation of any defense and indemnity obligations among Continental, the Coverage Claimants, and the other Insurer Defendants in respect of the Claims.

43.    Continental also seeks a declaration as to its rights to contribution, indemnification, or recovery however denominated, from the Insurer Defendants and the Coverage Claimants for the amounts that Continental has paid or allegedly owes to the Coverage Claimants in respect of the Claims.

44.    A determination by this Court is necessary and proper at this time so that the parties may ascertain their respective rights and obligations and avoid the multiplicity of legal actions that would otherwise occur. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

45.    The issuance of relief by this Court will resolve some the existing controversy between the parties.

## **PRAYER**

WHEREFORE, Continental prays for relief pursuant to section 3017(b) of the CPLR as follows:

1. On the First Cause of Action, Continental requests that the Court enter a judgment declaring the following:

   a. New York law applies to the interpretation of the Continental Policies in relation to the Coverage Claimants.

   b. The pollution exclusion contained in each of the Continental Policies bars coverage for the Claims.

   c. There is no potential for coverage for the Claims under the Continental Policies.

   d. Continental owes no defense or indemnity obligations to the Coverage Claimants in respect of the Claims.

   e. Continental is entitled to costs of suit incurred herein and for such other relief as the Court may deem proper.

2. On the Second Cause of Action, Continental requests that the Court enter a judgment awarding Continental the following:

   a. Contribution as against the Coverage Claimants and the Insurer Defendants in respect of the Claims.

b. Continental is entitled to costs of suit incurred herein and for such other relief

as the Court may deem proper.

DATED:  January 26, 2007

FORD MARRIN ESPOSITO WITMEYER
  & GLESER L.L.P.

By: _____

Charles A. Booth
Matthew C. Ferlazzo
Wall Street Plaza, 88 Pine Street
New York, New York 10036-5101

-and-

Gretchen A. Ramos
Vance A. Woodward
CARROLL BURDICK & McDONOUGH LLP
44 Montgomery Street
San Francisco, CA 94104
(415) 989-1900

Attorneys for Plaintiff
THE CONTINENTAL INSURANCE COMPANY

147854.1                            14