# EXHIBIT 8

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

| | | |
|---|---|---|
| THE CONTINENTAL INSURANCE COMPANY, | ) | Index No. 0101260/07 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| CYPRUS AMAX MINERALS COMPANY, | ) | |
| MISSOURI LEAD SMELTING COMPANY, | ) | **DEFENDANT** |
| HOMESTAKE LEAD COMPANY OF MISSOURI, | ) | **TRAVELERS INDEMNITY** |
| INSURANCE COMPANY OF NORTH AMERICA, | ) | **COMPANY'S ANSWER** |
| CENTURY INDEMNITY COMPANY, THE | ) | **TO COMPLAINT FOR** |
| TRAVELERS INDEMNITY COMPANY, NATIONAL | ) | **DECLARATORY** |
| UNION FIRE INSURANCE COMPANY OF | ) | **JUDGMENT** |
| PITTSBURGH, PA, and HARTFORD ACCIDENT & | ) | |
| INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Travelers Indemnity Company ("Travelers"), by and through its undersigned

counsel, hereby answers Plaintiff The Continental Insurance Company's ("Continental")

Complaint for Declaratory Judgment ("Complaint") as follows:

## NATURE OF ACTION

1.      Continental seeks a declaratory judgment concerning its obligation to defend and
indemnify Cyprus Amax Minerals Company ("Cyprus Amax"), Missouri Lead Smelting
Company ("MLS Company"), and Homestake Lead Company of Missouri ("Homestake")
(collectively the "Coverage Claimants") under the liability insurance policies Continental issued
to Amax, Inc. from 1975 until 1986 (the "Continental Policies").

## ANSWER:

Travelers admits that this action purports to be one for declaratory relief.  Travelers is

without knowledge or information sufficient to form a  belief as to the remaining allegations in

Paragraph 1.

2.    BNSF Railway Company ("BNSF") has sued the Coverage Claimants for contribution for settlements paid in relation to alleged bodily injuries and remediation costs incurred for alleged property damage caused by lead pollution (the "Claims") including, but not limited to, the claims alleged in the action *BNSF Railway Co. v. The Doe Run Resources Co., et al.,* Circuit Court for the City of St. Louis, Missouri, case no. 052-01585 (filed on or around May 6, 2005).

**ANSWER:**

Travelers admits only that BNSF filed a lawsuit captioned *BNSF Railway Co. v. The Doe Run Resources Corp. et. al.* in the Circuit Court for the City of St. Louis, State of Missouri and that the operative complaint or other relevant pleadings in that case speak for themselves as to the allegations asserted and relief sought in that case.  Travelers denies any allegations inconsistent therewith.

3.    As Coverage Claimants seek insurance coverage for the Claims under the Continental Policies, Continental seeks a declaration of rights, duties and liabilities of the parties under the Continental Policies.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 3.

4.    In the event this Court determines there is coverage for the Claims under the Continental Policies, Continental also seeks to have this Court delineate rules for allocating defense costs and losses relating to the Claims among Continental, the Coverage Claimants and the other Insurer Defendants (as defined in paragraph 17 below), as applicable law and the Continental Policies require such apportionment.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to allegations contained in Paragraph 4.

## THE PARTIES

5.    Plaintiff Continental is incorporated under the laws of the Commonwealth of Pennsylvania, and has its principal place of business in Chicago, Illinois.  Continental is authorized to do business in the State of New York.

- 2 -

**ANSWER:**

·Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 5.

6. During the period from before January 1, 1975 through December 31, 1977, Continental was incorporated in New York, and from before January 1, 1975 through and after April 1, 1986, Continental's principal place of business was located at 80 Maiden Lane, New York, New York.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 6.

7. The Continental Policies were issued to Amax, Inc. On information and belief, Amax, Inc. was a New York corporation during the period from before January 1, 1962 to November 15, 1993, and maintained its principal place of business in New York until 1976. On or around November 15, 1993, Amax merged with Cyprus Minerals Company forming Cyprus Amax.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 7.

8. On information and belief, Defendant Cyprus Amax is a corporation organized under the laws of Delaware authorized to do and doing business in the State of New York, with its principal place of business in a state other than New York. Defendant Cyprus Amax is the successor of Amax, Inc. ("Amax"), the named insured under the Continental Policies, and is the parent of Defendant MLS Company.

**ANSWER:**

Travelers without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 8.

9. On information and belief, Defendant MLS Company is incorporated under the laws of the State of Delaware, and since 1993 has been an inactive corporation. From 1965 to 1986, Defendant MLS Company was a wholly-owned subsidiary of Amax Lead Company of Missouri ("Amax Missouri"), which was a wholly-owned subsidiary of Amax. On information and belief, Defendant MLS Company is currently a wholly-owned subsidiary of Cyprus Amax.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 9.

10.    On information and belief, Defendant Homestake is, and at all relevant times, a California corporation.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 10.

11.    On information and belief, during the period from before January 1, 1962 through April 1, 1986, Homestake's principal place of business was located in San Francisco, California.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 11.

12.    On information and belief, Defendant Insurance Company of North America ("INA") is, and at all relevant times was, a Pennsylvania corporation.  INA is authorized to do business in the State of New York.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 12.

13.    On information and belief, Defendant Century Indemnity Company ("Century") is, and at all relevant times was, a Pennsylvania corporation.  On information and belief, Century is the successor-in-interest to certain insurance policies issued by INA and Century is therefore responsible for the payment of claims under those policies.  Century is authorized to do business in the State of New York.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 13.

14.    On information and belief, Defendant Hartford Accident & Indemnity Company ("Hartford") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  Upon information and belief, at all times relevant hereto, Hartford was authorized to do, and did business in the State of New York.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 14.

15.    Upon information and belief, Defendant The Travelers Indemnity Company ("Travelers'), is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  Upon information and belief, at all times relevant hereto, Travelers was authorized to do, and did, business in the State of New York.

**ANSWER:**

Travelers admits the allegations contained in Paragraph 15.

16.    Upon information and belief, defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York. National Union is a member of the American International Group of insurance companies ("AIG").  Upon information and belief, at all times relevant hereto, National Union was authorized to do, and did, business in the State of New York.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 16.

17.    The defendants identified in paragraph 12 through 16 above are defined as the "Insurer Defendants".

**ANSWER:**

Travelers states only that the allegations contained in Paragraphs 12 through 16 speak for themselves and denies any allegations contained in Paragraph 17 that are inconsistent therewith.

## JURISDICTION AND VENUE

18.    Pursuant to section 3001 of the Civil Practice Law and Rules (the "CPLR") as well as other statutory and common law bases, this Court has jurisdiction over the subject matter of this action because Continental seeks declarations regarding the respective rights and obligations of the parties.

**ANSWER:**

Travelers admits the allegations contained in Paragraph 18.

19.    Pursuant to sections 301, 302(a)(1) and 302(a)(4) of the CPLR as well as other statutory, constitutional and common law bases, this Court has personal jurisdiction over each of the defendants because each defendant does business within the State of New York, has consented to the jurisdiction of this Court, and/or because the causes of action arise in whole or part from their transaction of business in the State and/or their ownership, use or possession of real property within the State of New York. In addition, Defendants claim rights under insurance policies issued in New York through a broker in New York (Frenkel & Company, Inc.) to a New York corporation (Amax). In addition, each Defendant is or was transaction business in the State of New York within the time periods relevant to the causes of action stated herein.

**ANSWER:**

Travelers admits only that this Court has personal jurisdiction over it and that Travelers is or was transacting business in the State of New York during the time periods relevant to the causes of action alleged in the Complaint. Travelers denies that it issued insurance policies through a broker in New York (Frenkel & Sons) to a New York Corporation Amax. Travelers is without knowledge or information sufficient to form a belief about the allegations in Paragraph 19 that relate to any of the other Defendants.

20.    Venue is proper in this county because the plaintiff resides herein, and/or the defendants are non-residents who may be sued here pursuant to sections 503(a) and 503(c) of the CPLR.

**ANSWER:**

Travelers admits that venue is proper as to Travelers. Travelers is without knowledge or

information sufficient to form a belief as to whether venue is proper as to any of the other

Defendants.

## FACTUAL BACKGROUND

21.    Upon information and belief, in 1967, Amax and Homestake Lead Company of
Missouri, operating as a partnership, opened and began operating a lead mine and mill near
Buick, Missouri known as the Buick Mine/Mill.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 21.

22.    BNSF has filed suit, against the Coverage Claimants, seeking reimbursement for
the amounts BNSF paid in respect of the underlying claimants' alleged lead-pollution-related
bodily injury and for remediation costs as a result of alleged property damage caused by lead
pollution.

**ANSWER:**

Travelers admits only that BNSF filed a lawsuit captioned *BNSF Railway Co. v. The Doe*

*Run Resources Corp. et. al.* in the Circuit Court for the City of St. Louis, State of Missouri and

that any allegations or other positions asserted by BNSF against the Coverage Claimants in that

case are set forth in the operative complaint and/or any pleadings or discovery in that case and

that the terms of those documents speak for themselves. Travelers denies any allegations that are

inconsistent therewith.

23.    The Coverage Claimants have taken the position and demanded that Continental
is obligated under the Continental Policies to pay certain defense costs and/or indemnify them
for the costs and liabilities they have incurred and allegedly will incur in connection with the
Claims, and have demanded that Continental make such payments.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 23.

24.     On information and belief, the Claims arise as a result of discharges of pollutants and or contaminants and such discharges were neither sudden nor accidental. Accordingly, coverage under the Continental Policies for the Claims is barred by the pollution exclusion in the Continental Policies. Moreover, even if Continental is obligated to reimburse the Coverage Claimants for some portion of their defense costs and/or to indemnify them for some portion of their liability in connection with the Claims, Continental's obligation is limited to a proportionate share of such payment.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 24.

25.     Coverage under the Continental Policies for the Claims to the extent that they relate to environmental property damage is barred as to Defendants Cyprus Amax and MLS Company where such Claims were previously released in a past settlement between the parties.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 25.

## THE LIABILITY INSURANCE POLICIES AT ISSUE

26.    Continental issued the following commercial general liability primary policies to Amax:

| Policy Number | Effective/Expiration Dates |
|---------------|----------------------------|
| L 3320862     | 1/1/75 - 1/1/76            |
| L 3618826     | 1/1/76 - 1/1/77            |
| L 1184328     | 1/1/77 - 1/1/78            |
| L 1184328     | 1/1/78 - 1/1/79            |
| L 1184328     | 1/1/79 - 1/1/80            |
| SRL 3635813   | 1/1/80 - 1/1/81            |
| SRL 3636099   | 1/1/81 - 1/1/82            |
| SRL 3636291   | 1/1/82 - 1/1/83            |
| SRL 3636677   | 1/1/83 - 1/1/84            |
| SRL 3636859   | 1/1/84 - 1/1/85            |
| SRL 3344412   | 1/1/85 - 1/1/86            |
| SRL 3347418   | 1/1/86 - 4/1/86            |

## ANSWER:

Travelers is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 26.

27.    Upon information and belief, INA issued the following policies of primary liability insurance to American Metal Climax:[1]

| Policy Number | Effective/Expiration Dates |
|---|---|
| LB 39736 | 1/1/65 - 1/1/68 |
| ALB 47168 | 1/1/68 - 1/1/71 |
| ALB 47212 | 1/1/71 - 1/1/72 |
| ALB 47240 | 1/1/72 - 1/1/74 |
| ALB 47276 | 1/1/74 - 1/1/75 |
| ALB 47279 | 1/30/74 - 1/1/75 |

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 27.

28.    Upon information and belief, Travelers issued the following policies of primary liability insurance to Homestake:

| Policy Number | Effective/Expiration Dates |
|---|---|
| NSL1932300 | 3/1/66 - 3/1/67 |
| NSL1932300 | 3/1/67 - 3/1/68 |
| NSL7722190 | 3/1/68 - 3/1/69 |
| NSL7722190 | 3/1/69 - 3/1/70 |
| NSL7722190 | 3/1/70 - 4/1/71 |

---

[1] On information and belief, on or around July 1, 1974, American Metal Climax, Inc. ("American Metal Climax") changed its name to Amax.

**ANSWER:**

Travelers admits only that it issued a policy bearing number NSL 1932300 for the policy period March 1, 1965 to March 1, 1968 and a policy bearing number NSL 7722190 for the policy period March 1, 1968 to April 1, 1971 and Travelers denies any allegations contained in Paragraph 28 that are inconsistent therewith.

29.    Upon information and belief, INA issued the following policies of primary liability insurance to Homestake:

| Policy Number | Effective/Expiration Dates |
|---|---|
| ISLGO3194899 | 3/1/84 - 3/1/85 |
| ISLGO5695181 | 3/1/85 - 3/1/86 |
| HDCGO5696240 | 3/1/86 - 12/1/86 |
| HDCGO569680A | 12/1/86 - 12/1/87 |
| HDCGO5697761 | 12/1/87 - 12/1/88 |
| ISLG05698613 | 12/1/88 - 12/1/89 |
| ISLG05699204 | 12/1/89 - 12/1/90 |
| ISLG05699885 | 12/1/90 - 12/1/91 |
| ISLG15017259 | 12/1/91 - 12/1/92 |
| HD0615017740 | 12/1/92 - 12/1/93 |

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 29.

30.    Upon information and belief, National Union issued the following policies of primary liability insurance to Homestake:

| Policy Number | Effective/Expiration Dates |
|---|---|
| GL5908180 | 12/1/93 - 12/1/94 |
| GL5909276 | 12/1/94 - 12/1/95 |
| GL5909304 | 12/1/95 - 12/1/96 |
| GL1463764 | 12/1/96 - 12/1/97 |
| RMGL1135532 | 12/1/97 - 12/1/98 |
| RMGL6122420 | 12/1/98 - 12/1/99 |
| RMGL6123167 | 12/1/99 - 12/1/00 |
| RMGL6123167 | 12/1/00 - 12/1/01 |

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 30.

31.    Upon information and belief, Hartford issued the following policies of primary liability insurance to Homestake:

| Policy Number | Effective/Expiration Dates |
|---------------|----------------------------|
| 57C240394 | 5/1/77 - 5/1/78 |
| 57C243542 | 5/1/78 - 12/1/78 |
| 57C245531 | 12/1/78 - 12/1/79 |
| 57CMX0050 | 12/1/79 - 12/1/80 |
| 57CMX0050 | 12/1/80 - 12/1/81 |
| 57CMX0050 | 12/1/81 - 12/1/82 |
| 57CMX0050 | 12/1/82 - 12/1/83 |
| 57CMX0050 | 12/1/83 - 5/1/84 |

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the

allegations contained in Paragraph 31.

**FIRST CAUSE OF ACTION**
**(Declaratory Relief Against the Insured - Rights and Obligations Under the Continental Policies for Claims)**

32.    Continental repeats and incorporates by reference the allegations set forth in paragraphs 2 through 31 above.

**ANSWER:**

Travelers incorporates by reference each of its responses to paragraphs 2-31 as its

response to Paragraph 32.

33.    This is a cause of action for declaratory relief pursuant to Section 3001 of CLPR. Continental seeks a judicial determination of the respective rights and duties of Continental and Defendants with respect to an actual controversy arising under the Continental Policies.

**ANSWER:**

Travelers admits this purports to be an action for declaratory relief. Travelers is without knowledge or information to sufficient to form a belief as to the remaining allegations contained in Paragraph 33.

34. Continental is informed and believes, and on that basis alleges, that the Coverage Claimants contend Continental and certain other Insurer Defendants are obligated under the terms of their respective policies to provide coverage in connection with the Claims and that Continental and certain other Insurer Defendants are obligated to defend the Coverage Claimants with respect to the Claims and are obligated to indemnify them for the full amount of their alleged damages and costs incurred in defense of the Claims to date.

**ANSWER:**

Travelers admits that Homestake has tendered to Travelers the claims asserted by BNSF in the action entitled *BNSF Railway Co. v. The Doe Run Resources Co., et al.*, in the Circuit Court for the City of St. Louis, State of Missouri, seeking coverage under policies issued by Travelers, but is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 34.

35. An actual controversy exists between Continental, on the one hand, and the Coverage Claimants, on the other, concerning their respective rights and obligations with respect to whether, or to what extent, Continental has or could have any obligation to defend or indemnify the Coverage Claimants with respect to Claims based on the terms, conditions and exclusions of the Continental Policies. Such disputes include, but are not limited to, whether and to what extent Continental has any obligation to defend or indemnify the Coverage Claimants with respect to the Claims, because, among other things:

(a)    some or all of the underlying claims do not involve "bodily injuries" or "personal injuries" within the meaning of some or all of the Continental Policies;

(b)    some or all of the underlying claims do not involve "property damage" within the meaning of some or all of the Continental Policies;

(c)    coverage for some or all of any alleged bodily injury, personal injury or property damage is excluded under applicable exclusions, including, without limitation, the pollution exclusions contained in the Continental Policies;

(d)    coverage is not or may not be available for bodily injuries, personal injuries or property damage that takes place outside the policy period of each Continental Policy;

- 14 -

(e)    coverage for the Claims may be barred in whole or in part because the risk of the underlying claims, if any, and/or alleged losses of the Coverage Claimants were expected and intended, known and/or should have been known to Cyprus Amax, MLS Company and Homestake prior to the issuance of some or any of the Continental Policies;

(f)    the Coverage Claimants, by their actions and/or inaction, failed to mitigate, minimize or avoid damages and/or to cooperate with Continental in connection with the underlying claims, and/or may have jeopardized subrogation rights; and

(g)    pre-existing settlement agreements may bar coverage available for the Claims.

**ANSWER:**

Travelers is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in Paragraph 35.

36.    Under the circumstances, a determination by this Court is necessary and proper at this time so that the parties may ascertain their respective rights and obligations and avoid the multiplicity of legal actions that would otherwise occur.  The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

**ANSWER:**

Travelers admits the allegations contained in Paragraph 36.

37.    Continental seeks a judicial determination of the rights and obligations of the parties with respect to an actual controversy arising out of the Continental Policies.

**ANSWER:**

Travelers admits that Continental purports to seek a judicial determination but is without

knowledge or information sufficient to form as belief as to the remaining allegations contained in

Paragraph 37.

38.    The issuance of relief by this Court will resolve some or all of the existing controversy between the parties.

**ANSWER:**

Travelers admits the allegations contained in Paragraph 38.

## SECOND CAUSE OF ACTION
### (Declaratory Relief Against All Defendants; Allocation of Damages)

39.    Continental repeats and incorporates by reference the allegations set forth in paragraphs 1 through 38.

**ANSWER:**

Travelers incorporates by reference each of its responses to paragraphs 1-38 as its

response to Paragraph 39.

40.    To the extent that Continental owes any defense or indemnity obligations to the Coverage Claimants in respect of the Claims, Continental contends it is entitled to an apportionment of liability pursuant to applicable law and the Continental Policies. Continental and the Insurer Defendants on the one hand, and the Coverage Claimants, on the other, dispute whether any defense or indemnity obligations exist and dispute apportionment of liability under the insurance policies issued to Amax and Homestake under the applicable law, arising out of Claims. Continental is further informed and believes that the Coverage Claimants will dispute that any amount may be apportioned to them.

**ANSWER:**

Travelers admits that there is a dispute about whether any defense or indemnity

obligations exist under the insurance policies Travelers issued to Homestake for claims asserted

by BNSF in the action entitled *BNSF Railway Co. v. The Doe Run Resources Corp., et al.*, in the

Circuit Court for the City of St. Louis, State of Missouri. Travelers is without knowledge or

information sufficient to form a belief as to the remaining allegations contained in Paragraph 40.

41.    Thus, to the extent that Continental owes any defense or indemnity obligations to Coverage Claimants in respect of the Claims, Continental seeks a judicial determination of the rights and obligations as between Continental, the Coverage Claimants, and the other Insurer Defendants pursuant to principles of contribution, indemnification, subrogation, set-off or apportionment however denominated.

**ANSWER:**

Travelers admits that Continental purports to seek a judicial determination but is without

knowledge or information sufficient to for a belief as to the remaining allegations contained in

Paragraph 41.

42.     In particular, Continental seeks a declaration as to the proper allocation of any defense and indemnity obligations among Continental, the Coverage Claimants, and the other Insurer Defendants in respect of the Claims.

**ANSWER:**

Travelers admits that Continental purports to seek certain declarations in this lawsuit, but Travelers is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 42.

43.     Continental also seeks a declaration as to its rights to contribution, indemnification, or recovery however denominated, from the Insurer Defendants and the Coverage Claimants for the amounts that Continental has paid or allegedly owes to the Coverage Claimants in respect of the Claims.

**ANSWER:**

Travelers admits that Continental also purports to seek certain declarations in this lawsuit, but Travelers is without knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 43.

44.     A determination by this Court is necessary and proper at this time so that the parties may ascertain their respective rights and obligations and avoid the multiplicity of legal actions that would otherwise occur.  The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

**ANSWER:**

Travelers admits the allegations contained in Paragraph 44.

45.     The issuance of relief by this Court will resolve some of the existing controversy between the parties.

**ANSWER:**

Travelers admits the allegations contained in Paragraph 45.

## ADDITIONAL DEFENSES

### FIRST DEFENSE

Coverage is barred under the insurance policies that Travelers issued Homestake Mining Company ("Homestake")(the "Travelers Policies") in whole or in part, because Homestake has failed to meet and perform all conditions and obligations under the Travelers Policies.

### SECOND DEFENSE

To the extent that any applicable statute of limitations has lapsed, any and all claims against Travelers are barred.

### THIRD DEFENSE

Coverage is or may be barred in whole or in part by the doctrines of waiver, laches, unclean hands and/or estoppel.

### FOURTH DEFENSE

The Travelers Policies do not provide coverage for any form of injury, damage, liability or loss arising out of, or related to, environmental contamination excluded by the pollution exclusion clauses contained in the Travelers Policies.  To the extent the claims arising of the action captioned *BNSF Railway Co. v. The Doe Run Resources Corp. et. al.* in the Circuit Court for the City of St. Louis, State of Missouri ("Underlying Action") involve such injury, damage, liability or loss, coverage is barred.

### FIFTH DEFENSE

Coverage under the Travelers Policies is barred to the extent Homestake had notice of any accident, occurrence, conditions, events or damages alleged in the Underlying Action and failed to give timely notice to or cooperate with Travelers in accordance with the terms and conditions of the Travelers Policies.

## SIXTH DEFENSE

Coverage under the Travelers Policies is barred to the extent Homestake failed to immediately forward to Travelers every demand, notice, summons or other process received by it or its representative as required under the Travelers Policies.

## SEVENTH DEFENSE

Coverage is barred under the Travelers Policies to the extent Homestake failed to cooperate with Travelers as required by the Travelers Policies.

## EIGHTH DEFENSE

The Travelers Policies do not provide coverage for any claims for equitable relief.

## NINTH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent the Underlying Action includes claims for recovery of punitive damages, fines or penalties.

## TENTH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent the Underlying Action does not seek relief in the form of "damages" within the meaning of the Travelers Policies.

## ELEVENTH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent the Underlying Action does not involve or otherwise constitute "bodily injury" or "property damage" as defined in the Travelers Policies.

## TWELFTH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent any of the alleged injuries or damages from or at issue in the Underlying Action occurred prior and/or subsequent to the dates during which the Travelers Policies provided liability insurance.

### THIRTEENTH DEFENSE

Homestake is not entitled to defense and/or indemnity costs incurred in connection with or resulting from claims for "bodily injury" or "property damage" which took place during periods in which they were uninsured, self-insured or not insured by Travelers, or in which there is no applicable insurance coverage or such coverage has been exhausted or is otherwise unrecoverable.

### FOURTEENTH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent the Underlying Action was not caused by an "accident" or "occurrence" as defined in the Travelers Policies.

### FIFTEENTH DEFENSE

The Travelers Policies do not cover ordinary business expenses that Homestake has incurred as part of its ongoing business operations.

### SIXTEENTH DEFENSE

Defense costs that were not reasonably and necessarily incurred are not covered under any of the Travelers Policies.

### SEVENTEENTH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent the Underlying Action arose from liability assumed by Homestake or arise from any contract or agreement other than as specified in the Travelers Policies.

### EIGHTEENTH DEFENSE

Coverage under the Travelers Policies is barred to the extent Homestake made any voluntary payment or settlement or assumed any obligation for damages or expenses for any

amount in excess of any deductible without Travelers approval as provided in the Travelers Policies.

### NINETEENTH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent Homestake has entered a compromise settlement without Travelers' consent.

### TWENTIETH DEFENSE

Coverage under the Travelers Policies is barred, in whole or in part, to the extent the Underlying Action seeks recovery for liabilities arising out of the acts or omissions of any individual or organization other than those individuals or organizations declared or described as a named insured or insured in the Travelers Policies.

### TWENTY-FIRST DEFENSE

Coverage under the Travelers Policies may be barred, in whole or in part, to the extent the Underlying Action involves bodily injury arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated as a named insured.

### TWENTY-SECOND DEFENSE

Coverage under the Travelers Policies may barred to the extent coverage is sought for any person or entity whose interest in the Travelers Policies was secured without the written consent of Travelers.

### TWENTY-THIRD DEFENSE

To the extent that Homestake knew or had reason to know, at the time the Travelers Policies were issued, that a loss or liability had occurred or would ensue due to the conditions which are the subject of this action, recovery is barred by the known loss doctrine.

### TWENTY-FOURTH DEFENSE

Coverage under the Travelers Policies is barred to the extent Homestake failed to mitigate, minimize or avoid any alleged injury or damage.

### TWENTY-FIFTH DEFENSE

Coverage under the Travelers Policies is barred to the Homestake's acts or failures to act gave rise to the Underlying Action and were in violation of law and/or public policy.

### TWENTY-SIXTH DEFENSE

Coverage under the Travelers Policies is barred to the extent Homestake expected or intended any injury or damage with respect to the Underlying Action.

### TWENTY-SEVENTH DEFENSE

Coverage under the Travelers Policies is barred to the extent the Underlying Action arose from an uninsurable loss or risk known to Homestake before the inception of the Travelers Policies.

### TWENTY-EIGHTH DEFENSE

Coverage under the Travelers Policies is barred to the extent the Underlying Action involves bodily injury to any employee of Homestake arising out of and in the course of his or her employment by Homestake.

### TWENTY-NINTH DEFENSE

Coverage under the Travelers Policies is barred to the extent the Underlying Action involves any obligation for which Homestake and/or any carrier as Homestake's insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law.

### THIRTIETH DEFENSE

To the extent Homestake or its predecessors, affiliates, agents, brokers or other representatives intentionally or unintentionally failed to disclose, concealed, omitted, or misrepresented facts material to the risks at issue in this litigation, Homestake's claims for coverage are barred.

### THIRTY-FIRST DEFENSE

Any duty of Travelers under the Travelers Policies to reimburse or indemnify with respect to any claim or action is subject to any self-insured retention, deductible, underlying limits and the applicable limits of liability contained in such policies.

### THIRTY-SECOND DEFENSE

Coverage under the Travelers Policies is barred to the extent any alleged "bodily injury" or "property damage" arises out of the willful violation of a penal statute or ordinance committed by or with the consent of Homestake.

### THIRTY-THIRD DEFENSE

Coverage for the Underlying Action may be barred or limited pursuant to the "other insurance" provisions contained in the Travelers Policies.

### THIRTY-FOURTH DEFENSE

Coverage for the Underlying Action is barred to the extent Homestake has failed to enforce any right of contribution or indemnity against any person or organization who may be liable to Homestake because of injury or damage to which the Travelers Policies may also apply and to the extent Homestake has failed to cooperate with Travelers in enforcement of such right.

### THIRTY-FIFTH DEFENSE

Coverage under the Travelers Policies is barred to the extent the aggregate limits of liability under those insurance policies already have been exhausted, and coverage for the

Underlying Action under each of the remaining Travelers Policies is limited or barred to the extent the aggregate limit of liability under such insurance policies has been or will be impaired or exhausted.

### THIRTY-SIXTH DEFENSE

Coverage for the Underlying Action may be barred or limited pursuant to the coordination clause contained in certain of the Travelers Policies which provides that, in the event a loss is covered by more than one Travelers policy containing a coordination clause, the sum of the applicable limits of liability under all such policies will not be more than the limit of liability of the policy which has the highest limit of liability applicable to the occurrence, and Travelers will not be liable for more than its proportionate share of that highest limit of liability.

### THIRTY-SEVENTH DEFENSE

Coverage for the Underlying Action is barred for the "bodily injury" claims in the Underlying Action pursuant to other limits of liability set forth in the Travelers Policies, including limits of liability that apply on a "per occurrence" basis.

### THIRTY-EIGHTH DEFENSE

Travelers reserves the right to allocate or reallocate liability (if any liability exists) to other insurers and Homestake for uninsured or self-insured periods or periods not insured by Travelers, and periods in which there is no applicable insurance coverage or such coverage has been exhausted or is otherwise unrecoverable.

### THIRTY-NINTH DEFENSE

Coverage for the Underlying Action is barred to the extent Homestake has failed to present Travelers with sufficient facts to demonstrate that it is entitled to coverage under the Travelers Policies.

## FORTIETH DEFENSE

There is no coverage under Travelers policy number NSL-1932300 for the policy period March 1, 1965 to March 1, 1968 for: (1) injury to or destruction of property owned, occupied by or rented to the "insured" …., or (2) except with respect to liability under sidetrack agreements covered by this policy …., to injury to or destruction of (i) property while on premises owned by or rented to the insured for the purposes of having operations performed on such property by or on behalf of the "insured" …., (iv) that particular part of any property, not on premises owned by or rented to the "insured" , (a) upon which operations are being performed by or on behalf of the "insured" at the time of the injury thereto or destruction of, arising out of such operations or (b) out of which any injury or destruction arises, or (c) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the "insured," (v) property which is being transported by the "insured" by motor vehicle or team, including the loading and unloading thereof, or (3) to injury or destruction of any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the "named insured," or work completed by or for the "named insured," out of which the accident arises.

## FORTY-FIRST DEFENSE

There is no coverage under Travelers policy number NSL-7722190 for the policy period March 1, 1968 to April 1, 1971 for "property damage" to (1) property owned or occupied by or rented to the "insured," (2) property used by the "insured" or (3) property in the care, custody or control of the "insured' or as to which  the "insured" for any purpose exercising physical control, except that (2) and (3) do not apply to liability under a written sidetrack agreement.

### FORTY-SECOND DEFENSE

There is no coverage under policy number NSL-1932300 for the policy period March 1,

1965 to March 1, 1968 to the extent that Homestake's liability in the Underlying Action does not

arise out of Contractual Liability as that term is defined in the policy, to the extent that one or

more of the exclusions in the Contractual Liability Coverage Part applies.

### FORTY-THIRD DEFENSE

There is no coverage under policy number NSL-7722190 for the policy period March 1,

1968 to April 1, 1971 under the Contractual Liability provisions for liability assumed by the

"insured" under an "incidental contract."

### FORTY-FOURTH DEFENSE

Plaintiff's Complaint does not provide Travelers with sufficient information which would

permit Travelers to ascertain all potentially applicable defenses to Plaintiffs' Complaint.

Therefore, Travelers reserves the right to assert additional defenses in the future, should

additional information arise supporting any additional defenses.

### FORTY-FIFTH DEFENSE

Travelers has no obligation to Plaintiff to the extent they failed to join necessary parties

to the adjudication of this action.

**WHEREFORE,** Defendant Travelers Indemnity Company respectfully request this

Court to enter judgment in its favor:

A. Declaring that Travelers is under no obligation to defend and/or indemnify
Homestake in connection with the Underlying Action;

B. In the alternative, declaring that the applicable limits of liability for "bodily
injury" in the Travelers Policies have been exhausted and, therefore, that
Travelers has no obligation to defend or indemnify Homestake with respect to any
bodily injury claims arising out of the Underlying Action;

C. In the alternative, declaring, to the extent Travelers owes any obligations to
defend and/or indemnify Homestake in connection with the Underlying Action,

that such obligations shall be reduced for any uninsured or self-insured years and by the coverage afforded Homestake by any other insurance contract that does or may provide coverage to Homestake;

D. Awarding Travelers its costs in this action; and

E. Awarding Travelers such other and further relief as the Court deems just and proper.

Dated: May 31, 2007

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By

Attorneys for Travelers Indemnity Company

Sandra D. Hauser
Cliona A Levy
1221 Avenue of the Americas
New York, NY 10020

and

Robert C. Johnson
M. Keith Moskowitz
7800 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606