1   DAVEN G. LOWHURST (State Bar No. 124723)
    dglowhurst@thelen.com
2   JOHN A. CHATOWSKI (State Bar No. 174471)
    jachatowski@thelen.com
3   THELEN REID BROWN RAYSMAN & STEINER LLP
    101 Second Street, Suite 1800
4   San Francisco, CA   94105-3601
    Telephone:  415-371-1200
5   Facsimile:  415-371-1211

6   Attorneys for Plaintiff
    HOMESTAKE LEAD COMPANY OF MISSOURI

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11  HOMESTAKE LEAD COMPANY OF              CASE NO.  C-07-2634-EMC
    MISSOURI,
12                                         PLAINTIFF HOMESTAKE LEAD
              Plaintiff,                   COMPANY OF MISSOURI'S
13                                         OPPOSITION TO DEFENDANT
    v.                                     CONTINENTAL INSURANCE
14                                         COMPANY'S MOTION TO DISMISS
    NATIONAL UNION FIRE INSURANCE          OR IN THE ALTERNATIVE TO STAY
15  COMPANY OF PITTSBURGH, PA, and
    THE CONTINENTAL INSURANCE
16  COMPANY,                               Date of Hearing:   August 22, 2007
                                           Time:              10:30 a.m.
17            Defendants.                  Judge:             Magistrate Edward M. Chen
                                                              Courtroom C, 15th Floor
18

19

20

21

22

23

24

25

26

27

28

SF #1314783 v1
─────────────────────────────────────────────────────────────

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................... 2

   A. Defense and Settlement of the Ellison and Bray Claims ................................. 2

   B. The BNSF Action and CNA's Coverage Action ............................................ 4

   C. Procedural Status of this Action ..................................................................... 5

III. DISCUSSION ..................................................................................................... 6

   A. This Action for Damages Cannot Be Dismissed or Stayed Because CNA
      Cannot Show that "Exceptional Circumstances" Warrant Such Relief ............. 6

      1. CNA's Reliance upon *Brillhart* and its Progeny is Misplaced ................. 6

      2. The Court Should Not Abstain from Exercising Jurisdiction over
         this Action ......................................................................................... 11

         a. CNA's Motion Should be Denied Because This Action and
            the New York Action are Not Substantially Similar ..................... 11

         b. None of the *Colorado River* Factors Weigh in Favor of
            Dismissal or a Stay ................................................................. 13
            (1) No Court has Assumed Jurisdiction over Property ........... 14
            (2) This Federal Forum Would Not Inconvenience the
                Parties ........................................................................ 14
            (3) Permitting this Action to Proceed will not Result in
                Piecemeal Litigation ................................................... 14
            (4) The New York Action does not have "Priority" over
                this Action ................................................................... 15
            (5) Application of State Law ................................................ 15
            (6) Adequacy of the State Court Proceedings ....................... 16
            (7) Prevention of Forum Shopping ...................................... 17

      3. Even if this Court were to Apply the *Brillhart* Standard, it should
         not Dismiss or Stay this Action .......................................................... 18

         a. CNA has Offered No Evidence To Support its Claims ................. 18

         b. None of the *Brillhart* Factors Weigh in Favor of Dismissal
            or a Stay ................................................................................. 19
            (1) Abstention will not Avoid the Determination of State
                Law Issues ................................................................. 19
            (2) Homestake did not Engage in Forum Shopping ............... 20
            (3) There is no Duplicative Litigation .................................. 20

|  | | |
|---|---|---|
| B. | This Court Should Not Dismiss this Case for Convenience ................................. 21 | |
| | 1. | CNA's Authority Is Inapposite ................................................ 21 |
| | 2. | The Facts do Not Warrant Dismissal ....................................... 22 |
| IV. | CONCLUSION ............................................................................................. 24 | |

PLAINTIFF HOMESTAKE LEAD COMPANY OF MISSOURI'S OPPOSITION TO DEFENDANT CONTINENTAL INSURANCE
COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3

*AAR Intern., Inc. v. Nimelias Enters. S.A.,*
    250 F.3d 510 (7th Cir. 2001)......................................................................................... 12

4

*A. J. Industries, Inc. v. District Court,*
    503 F.2d 384 (9th Cir. 1974)......................................................................................... 22

5

6

*Admin. Comm. v. Gauf,*
    188 F.3d 767 (7th Cir. 1999)......................................................................................... 12

7

*Allstate Ins. Co. v. Davis,*
    430 F.Supp.2d 1112 (D. Hi. 2006) ............................................................................... 19

8

9

*Allstate Ins. Co. v. Mercier,*
    913 F.2d 273 (9th Cir. 1990)......................................................................................... 20

10

*Ambrosia Coal and Const. Co. v. Morales,*
    368 F.3d 1320 (11th Cir. 2004).................................................................................. 6, 13

11

12

*American Casualty Company v. Krieger,*
    181 F.3d 1113  (9th Cir. 1999)...................................................................................... 20

13

*American International Underwriters, Inc. v. Continental Ins. Co.,*
    843 F.2d 1253 (9th Cir. 1988)....................................................................................... 14

14

*Baskin v. Bath Township Bd. of Zoning Appeals,*
    15 F.3d 569 (6th Cir. 1994)........................................................................................... 12

15

16

*Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,*
    800 F.2d 325 (2d. Cir. 1986)......................................................................................... 16

17

*Black Sea Investment v. United Heritage Corp.,*
    204 F.3d 647 (5th Cir. 2000)........................................................................................... 8

18

19

*Brillhart v. Excess Ins. Co.,*
    316 U.S. 491 (1942) ...............................................................................................Passim

20

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ...............................................................................................Passim

21

22

*Continental Cas. Co. v. Robsac Industries,*
    947 F.2d 1357 (9th Cir. 1991)....................................................................................... 19

23

*Crawley v. Hamilton Co. Commissioners,*
    744 F.2d 28 (6th Cir. 1984)........................................................................................... 13

24

25

*Employers Reinsurance v. Karussos,*
    65 F.3d 796 (9th Cir. 1995)........................................................................................10-11

26

*Golden Eagle Ins. v. Travelers Companies,*
    103 F.3d 750 (9th Cir. 1996)......................................................................................10-11

27

28

SF #1314783 v1                                      -iii-

PLAINTIFF HOMESTAKE LEAD COMPANY OF MISSOURI'S OPPOSITION TO DEFENDANT CONTINENTAL INSURANCE
COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY

*Government Employees Ins. Co. v. Dizol,*
    133 F.2d 1220 (9th Cir. 1998) .......................................................................... 7, 19

*Homedics, Inc v. Valley Forge Ins. Co.,*
    315 F.3d 1135 (9th Cir. 2003) ................................................................................ 23

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    12 F.3d 908 (9th Cir. 1993) ...................................................................................... 15

*Koster v. Lumbermens Mut. Cas. Co.,*
    330 U.S. 518, 524 (1947) .......................................................................................... 22

*Lueck v. Sundstrand Corporation,*
    236 F.3d 1137 (9th Cir. 2001) ....................................................................... 21, 23-24

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ................................................................................................. 18

*Lumen Const., Inc. v. Bryant Const. Co., Inc.,*
    780 F.2d 691 (7th Cir. 1995) .................................................................................... 12

*McLaughlin v. United Virginia Bank,*
    955 F.2d 930 (4th Cir. 1992) .................................................................................... 11

*Mitcheson v. Harris,*
    955 F.2d 235 (4th Cir. 1992) .................................................................................... 19

*Monegro v Rosa,*
    211 F.3d 509 (9th Cir. 2000) .................................................................................... 22

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) ............................................................................................. Passim

*National Chiropractic Mut. Ins. Co. v. Doe,*
    23 F.Supp.2d 1109 (D. Alaska 1998) ....................................................................... 19

*Noerr Motor Freight, Inc. v. Eastern R.R. Presidents Conference,*
    113 F.Supp. 737 (E.D. Pa. 1953) ............................................................................. 18

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ................................................................................................. 21

*Public Affairs Assoc. v. Rickover,*
    369 U.S. 111 (1962) ................................................................................................. 19

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1976) ............................................................................................. 19-20

*RepublicBank Dallas, Nat'l Ass'n. v. McIntosh,*
    828 F.2d 1120 (5th Cir. 1987) ............................................................................. 12-13

*Snodgrass v. Provident Life and Accident Ins. Co.,*
    147 F.3d 1163 (9th Cir. 1998) ........................................................................... 7-8, 9

*Southwind Aviation v. Bergin Aviation,*
    23 F.3d 949 (5th Cir. 1994)..............................................................................7

*Travelers Indemnity Co. v. Madonna,*
    914 F.2d 1364 (9th Cir. 1990)...............................................................13, 15, 16

*United National Ins. Co. v. R & D Latex,*
    242 F.3d 1102 (9th Cir. 2001)......................................................................8-11

*Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,*
    915 F.2d 7 (1st Cir. 1990) .........................................................................14-15

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ....................................................................................7

**STATE CASES**

*Garamendi v. Mission Ins. Co.,*
    131 Cal.App.4th 30 (2005).............................................................................23

*Gramatan Home Investors Corp. v. Lopez,*
    46 N.Y. 2d 481 (1979) .................................................................................17

*N.A.S. Holdings, Inc. v. Pafundi,*
    12 A.D. 3d 751 (3rd Dept. 2004) ....................................................................16

*Textile Technology Exchange, Inc. v. Davis,*
    81 N.Y. 2d 56 (1993) ...................................................................................16

**MISCELLANEOUS**

W. Schwarzer, A. Tashima and J. Wagstaffe, <u>Cal. Practice Guide, Fed. Civil Proc. Before Trial</u>
    ¶ 4:835, p. 4-97 (2007) .................................................................................22

Siegel, N.Y. Prac.,
    section 224 at 328, and section 452 at 684-685 (2d. ed)................................................16

PLAINTIFF HOMESTAKE LEAD COMPANY OF MISSOURI'S OPPOSITION TO DEFENDANT CONTINENTAL INSURANCE
COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY

## I.  **INTRODUCTION**

Plaintiff Homestake Lead Company of Missouri ("Homestake") submits this Opposition to the Motion to Dismiss or in the Alternative to Stay filed by The Continental Insurance Company ("CNA").  CNA's motion should be denied because this action is properly filed in this Court, Article III jurisdiction must be exercised in the absence of "extraordinary circumstances" (which clearly do not exist here), and this District is anything but an inconvenient forum.

First, this is not a "reactive declaratory judgment action" (Motion, 1:2) to CNA's declaratory relief complaint in New York state court.  Indeed, while CNA claims the two actions are "similar" (Motion, 1:13) in that there may be "an overlap of factual questions," it concedes that the actions are "not identical" (Motion, 6:21), do not presently have the same parties (Motion, 3:12), and do not contain the same causes of action.  (Motion, 6:22-23.)  Homestake filed this breach of contract action to recover damages for the failure of CNA and National Union Fire Insurance Company ("National Union") (collectively "Defendants") to defend Homestake "in full" and to pay the remaining balance of the defense costs which Homestake incurred in the successful defense and settlement—with Defendants' participation—of two groups of bodily injury claims—the "Ellison" and "Bray Claims"—for which Defendants accepted, and did not deny, their policy obligations to defend and indemnify Homestake.

In contrast, the central issue in the New York action is whether CNA's pollution exclusion excuses it from providing a defense and indemnity to Homestake (and others) in connection with a pending suit (*BNSF Railway Company v. The Doe Run Resources Corporation, et al.*) and in which, as to Homestake, the Ellison and Bray Claims are explicitly not an issue.  Homestake's claims in this action are not a "subset" (Motion, 3:12) of CNA's claims in the New York action, and the two cases are certainly not so similar as to warrant abstention.

This Court may only dismiss or stay this action upon a finding that (1) there is an ongoing parallel state action; and (2) exceptional circumstances exist.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).  Because CNA cannot make such a showing, it argues that the more lenient test employed by the Supreme Court in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) should apply.  However, that test is reserved for actions for purely

1   declarative relief, and not actions for damages for breach of contract such as this one.  In any

2   event, even if this Court were to apply *Brillhart*, the result would be the same:  Because the New

3   York action and this action are not substantially similar, the Court should retain jurisdiction over

4   this matter.[1]

5   Second, CNA has not demonstrated by competent admissible evidence that it is entitled to

6   the relief it seeks.  CNA has submitted no evidence to support its argument that Homestake should

7   be compelled to litigate its claims in the New York action.  Further, it has offered no evidence—

8   none—which supports its argument that because some of the parties in the New York action are

9   based in "or near" New York, that the New York action would be the most convenient forum for

10  this case.

11  Finally, CNA misstates the law by arguing that this Court should dismiss this action for

12  *forum non conveniens*.  The authorities cited by CNA are cases where litigation in a <u>foreign</u>

13  <u>country</u> would be more convenient for the parties.  Here, there is no dispute that venue is proper in

14  this District.  There is no dispute that several key witnesses reside in California.  And there is no

15  dispute that a California jury has a legitimate interest in deciding a case brought by one of its

16  corporate citizens, Homestake.

17  Because CNA has not demonstrated that the facts warrant this Court overriding

18  Homestake's choice of forum, CNA's motion should be denied.

19  **II.     STATEMENT OF FACTS**

20  **A.     Defense and Settlement of the Ellison and Bray Claims**

21  Beginning late in the year 2000, Homestake was named as a defendant in a series of

22  actions filed in Missouri.  The plaintiffs in those actions were railroad employees alleging bodily

23  injury as a result of exposure to products mined and/or produced by Homestake and others.  The

24  initial group of cases became known as the Ellison Claims.  (Hendrick Decl., ¶ 2.)  Homestake

25  ─────────────────────────

26  [1]  CNA's central argument is that this action should be dismissed under *Brillhart* because the
    crux of Homestake's claim is its declaratory relief cause of action.  As explained below, this is
27  false.  However, if the Court is even remotely concerned with the presence of Homestake's
    claim for declaratory relief, Homestake would be amenable to dismissing it as to CNA.

28

1  tendered the Ellison Claims to its insurers, including Defendants, which accepted them and which

2  later agreed with each other and with other Homestake insurers to share Homestake's defense

3  costs.  (*Id.*)  Indeed, over the months and years that followed, Defendants did in fact make some

4  partial payments of Homestake's defense costs, though said payments were sporadic, and

5  ultimately, insufficient to make Homestake whole.  (*Id*. at ¶ 6.)

6      In 2003, Defendants and three other Homestake insurers agreed to settle the Ellison Claims

7  up to a total sum recommended by Homestake's defense counsel.  (*Id.* at ¶ 3.)  The primary people

8  handling the matter for Homestake and Defendants were (1) for CNA, Gretchen Ramos, Esq. of

9  Carroll, Burdick & McDonough in San Francisco, and Leticia Diaz, at that time in the CNA office

10  in New Jersey; (2) for National Union, Steve Caporelli, who Homestake is informed and believes

11  currently resides in the Bay Area, and National Union's outside counsel Jamie Vels, Esq. of the

12  Los Angeles office of Lewis Brisbois Bisgaard & Smith; and (3) for Homestake, Jim Hendrick of

13  Thelen Reid Brown Raysman & Steiner in San Francisco.  (*Id.*)

14      As part of the settlement of the Ellison Claims, Homestake agreed to release certain co-

15  defendants in those cases—including BNSF Railway Company—if CNA, National Union and

16  Homestake's other insurers confirmed their obligations to reimburse Homestake in full for its

17  defense costs and settlement payments, without reservation.  All parties agreed.  (*Id.* at ¶ 4.)

18  Specifically, Defendants each (1) agreed "to fund its full share of the settlement amount as has

19  been agreed among the insurers"; (2) agreed "not, thereafter, to seek reimbursement from

20  Homestake of any portion of the settlement payment"; (3) agreed to "pay. . . all reasonable and

21  necessary defense costs which have been incurred and will be incurred by Homestake in the

22  defense of the claims being settled. . . in the portions which have been agreed among the insurers";

23  (4) agreed "not to seek reimbursement from Homestake of any portion of the defense costs paid";

24  and (5) confirmed "that the cost sharing agreement among the insurers provides for payment of the

25  settlement amount and reasonable and necessary defense costs in full (i.e. the percentage shares

26  total 100%)."  (*Id.*)

27      In May 2003, Homestake tendered to Defendants and its other insurers 90 new bodily

28  injury claims.  These claims—including certain additional later-filed claims and suits against

1  Homestake— eventually were collectively referred to by the parties as the Bray Claims. (*Id.* at ¶

2  5)  In 2004, Defendants and two of Homestake's other insurers authorized Homestake's defense

3  counsel to settle the Bray Claims without the participation of the fifth insurer, The Travelers

4  Indemnity Company.  The settlement of the Bray Claims was eventually completed in or about

5  June 2005 and, like the Ellison Claims before it, was funded by Defendants and by Hartford

6  Accident & Indemnity Company and the Insurance Company of North America.  (*Id.*)  Further, as

7  was the case in connection with the settlement of the Ellison Claims, as part of its settlement of

8  the Bray Claims, Homestake entered into a companion settlement agreement with certain of its co-

9  defendants—including BNSF—by which it released its claims for indemnity and contribution

10 against those co-defendants.  Homestake did so again in reliance upon its expectation that

11 Defendants would fulfill their obligations to reimburse Homestake's defense costs in full.  (*Id.*)

12 Indeed, Defendants continued to make additional payments to Homestake for its defense costs in

13 August and September 2005—although these payments were incomplete, untimely, insufficient.

14 (*Id.* at ¶ 6.)

15 **B.**      **The BNSF Action and CNA's Coverage Action**

16        In July 2005, BNSF Railway Company served Homestake with a complaint in Missouri

17 state court to recover amounts BNSF had paid to settle various bodily injury and property damage

18 claims <u>other than the Ellison and Bray Claims</u>.  (*See* BNSF Complaint at ¶¶ 212-213 and 220-221,

19 Ex. 1 to Declaration of Vance Woodward in Support of CNA's Motion to Dismiss or in the

20 Alternative to Stay ("Woodward Decl.").)  Indeed, BNSF explicitly stated in its complaint that it

21 was <u>not</u> seeking any relief from Homestake with respect to the Ellison and Bray Claims.  (*Id.*)

22        On August 9, 2005, Homestake tendered its defense of the BNSF action to its insurers,

23 including CNA.  However, instead of agreeing to defend Homestake, as it had done for the Ellison

24 and Bray Claims, by letter dated January 29, 2007, and received by Homestake on or about

25 February 6, 2007, CNA invoked its pollution exclusion and denied that it owed Homestake any

26 defense or indemnity in the BNSF action.  On January 26, 2007, <u>three days before</u> issuing its

27 denial letter, and without informing Homestake, CNA filed suit in New York state court seeking a

28 declaration of its rights and responsibilities under its policies in connection with the pending

1   BNSF action.  (*See generally* CNA Complaint, Ex. 2 to Woodward Decl.)  CNA did not serve

2   Homestake with its complaint until April 20, 2007.  Homestake subsequently filed an answer in

3   the New York action.  (*See* Ex. 5 to Woodward Decl.)

4           On or about June 1, 2007, two weeks <u>after</u> Homestake served its Complaint in this action,

5   Hartford filed a Counterclaim in the New York action against CNA, National Union and Travelers

6   <u>only</u>.  (*See* Ex. 7 to Woodward Decl.)  The Counterclaim alleges that to the extent CNA and

7   National Union fail to pay Homestake's defense costs in connection with certain unidentified

8   claims "independent of the BNSF Action"—presumably the Ellison and Bray Claims—such that

9   Homestake then requires Hartford to pay more of the costs remaining due to Homestake, then

10  Hartford is entitled to contribution from CNA and National Union.  (*Id* at ¶¶ 77-85.)

11  **C.      Procedural Status of this Action**

12          On May 17, 2007, Homestake filed its Complaint herein against National Union and CNA

13  seeking damages on the grounds that Defendants breached their policies by "failing to provide

14  HOMESTAKE with a complete defense of the ELLISON CLAIMS and BRAY CLAIMS and to

15  reimburse HOMESTAKE for all outstanding defense costs."  (Complaint, ¶ 29.)  Homestake also

16  alleged that Defendants breached the covenant of good faith and fair dealing by, among other

17  things, "[a]fter initially paying a portion of HOMESTAKE'S defense costs in connection with the

18  ELLISON CLAIMS and BRAY CLAIMS pursuant to the January 2003 cost-sharing agreement

19  among HOMESTAKE'S insurers and the March 25, 2003 agreement between HOMESTAKE and

20  its insurers, once the settlements of the ELLISON and BRAY CLAIMS were concluded, and

21  DEFENDANTS' potential liability on those claims had been capped, DEFENDANTS refused to

22  pay HOMESTAKE'S remaining defense costs, unreasonably and without justification."

23  (Complaint, ¶ 35.)  Finally, Homestake included a "belt and suspenders" cause of action for

24  declaratory relief premised on its claim for breach of contract. (Complaint, ¶¶ 37-41.)

25          Neither National Union, who has answered Homestake's Complaint, nor CNA, has

26  challenged this Court's jurisdiction, nor do they contend venue here is improper.  Instead, CNA

27  alone argues that this action must be dismissed in favor of the purportedly "similar" action in New

28  York (Motion, 1:13), even though CNA concedes that the actions are "not identical" (Motion,

6:21), they do not presently involve the same parties (Motion, 3:12), and they do not contain the same causes of action. (Motion, 6:22-23.) Further, by not raising the Hartford Counterclaim in its motion as a basis to dismiss or stay this action, CNA concedes that it is irrelevant to the issue before this Court. The Counterclaim did not raise the issue here -- <u>Homestake's</u> entitlement to reimbursement. It simply alleged that if Homestake compels Hartford to pay more costs as a result of the failure of CNA and National Union to do so, then Hartford will seek contribution from CNA and National Union. However, that potential contribution claim by Hartford cannot be addressed or adjudicated until after this Court decides if CNA and/or National Union have an obligation to reimburse more of Homestake's defense costs and, if not, whether Homestake thereafter prevails upon Hartford to pay the shortfall. Hartford's contribution claim, therefore, is conjectural and premature. Finally, CNA has indicated that if it loses its motion it will bring a third party complaint against Homestake's other insurers, including Hartford. (Motion, 11:8-14.) If that happens, one would assume that Hartford would simply dismiss its Counterclaim in the New York action.

## III.    DISCUSSION

**A.    This Action for Damages Cannot Be Dismissed or Stayed Because CNA Cannot Show that "Exceptional Circumstances" Warrant Such Relief**

### 1.    CNA's Reliance upon *Brillhart* and its Progeny is Misplaced

Article III jurisdiction must be exercised in the absence of extraordinary circumstances. *Colorado River*, 424 U.S. at 818. Accordingly, "as between state and federal courts, the rule is that the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *Id.* at 817. "[T]he federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Moses H. Cone Mem'1 Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15 (1983) (*quoting Colorado River*, 424 U.S. at 817). Thus, "[o]nly the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 818.

Under *Colorado River*, a federal court may stay or dismiss an action only where: (1) there is an ongoing parallel state action; and (2) exceptional circumstances exist. *Id.* In light of *Colorado River*'s narrow application, the balance weighs heavily in favor of the exercise of

1   jurisdiction.  *See, e.g., Ambrosia Coal and Const. Co. v. Morales*, 368 F.3d 1320 (11th Cir. 2004)

2   (*quoting Colorado River*, 424 U.S. at 818).

3       Relying on *Brillhart v. Excess Ins. Co.*, CNA contends that because Homestake's

4   Complaint also includes a declaratory relief claim, a different standard applies.  CNA is wrong.

5   Under the Declaratory Judgment Act, a district court may decline the exercise jurisdiction over a

6   pure declaratory relief action even though subject matter jurisdiction is otherwise proper based on

7   "considerations of practicality and wise judicial administration."  *Wilton v. Seven Falls Co.*, 515

8   U.S. 277, 288 (1995).  However, where the plaintiff seeks declaratory relief and coercive relief,

9   the court must apply the stricter *Colorado River* test.

10      This distinction was addressed by the Ninth Circuit in *Snodgrass v. Provident Life and*

11  *Accident Ins. Co.*, 147 F.3d 1163 (9th Cir. 1998).  There, the plaintiff, an emergency room

12  physician, injured his hand and submitted a claim to his disability insurer Provident.  Provident

13  initially made payments to Snodgrass under its policy, but then stopped and refused to make any

14  further disbursements.  *Snodgrass*, 147 F.3d at 1164.  Snodgrass sued Provident in state court for

15  breach of contract, among other claims seeking damages.  Snodgrass also sought a declaration that

16  he was totally disabled under the policy.  *Id.*

17      After Provident removed the case to federal court, the district court, *sua sponte*, ordered

18  the parties to show cause why the case should not be remanded back to state court pursuant to the

19  Declaratory Judgment Act.  After hearing oral argument, the district court remanded the case, and

20  Provident appealed.  The Ninth Circuit reversed, holding that the *Colorado River* test governed

21  because in addition to seeking declaratory relief the plaintiff sought damages for breach of

22  contract and for violation of various state consumer laws.  The court noted:

23          [W]hen other claims are joined with an action for declaratory relief
            (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission,
24          or claims for other monetary relief), the district court should not, as a
            general rule, remand or decline to entertain the claims for declaratory
25          relief.  Claims that exist independent of the request for a declaration are
            not subject to the Declaratory Judgment Act's discretionary
26          jurisdictional rule.  They invoke the "virtually unflagging" obligation
            of the district court to hear jurisdictionally sufficient claims.

27

28

1  *Id.* at 1167 (*citing Government Employees Ins. Co. v. Dizol*, 133 F.2d 1220, 1225 (9th Cir. 1998))

2  (emphasis added).  Other Circuits have reached the same conclusion.  *See, e.g., Southwind*

3  *Aviation v. Bergin Aviation*, 23 F.3d 949, 951 (5th Cir. 1994) ("Although some of the relief sought

4  by Southwind is declaratory in nature, Southwind also requests coercive remedies for breach of

5  contract in the form of damages, attorney's fees, and injunctive relief.  Inclusion of these coercive

6  remedies indisputably removes this suit from the ambit of a declaratory judgment action."); *Black*

7  *Sea Investment v. United Heritage Corp.*, 204 F.3d 647 (5th Cir. 2000) ("Under the *Colorado*

8  *River* doctrine, when a party seeks coercive relief in addition to declaratory relief, federal courts

9  have a virtually 'unflagging obligation . . . to exercise the jurisdiction given them,' and should

10  only abstain in 'exceptional circumstances.'").

11      Courts have noted that in some limited circumstances, a claim that on its face may appear

12  to seek coercive relief may in fact be derivative of a claim for declaratory relief such to warrant

13  *Brillhart* abstention.  However, these cases arise only where the court must resolve the claim for

14  declaratory relief <u>before</u> reaching the merits of the coercive claims.  In these cases the coercive

15  claims are "dependent" on or "ancillary" to the declaratory relief action.  Again, the Ninth Circuit

16  in *Snodgrass* explained:  "the appropriate inquiry for a district court in a Declaratory Judgment

17  Act case is to determine whether there are claims in the case that exist independent of any request

18  for purely declaratory relief, that is, <u>claims that would continue to exist if the request for a</u>

19  <u>declaration simply dropped from the case</u>." *Snodgrass*, 147 F.3d at 1167-1168 (emphasis added).

20  In *Snodgrass* the court found that the plaintiff's monetary claims arising from breach of contract

21  and various state consumer laws independently met the requirements for diversity jurisdiction

22  under 28 U.S.C. section 1332(a).  Thus, because the claims for monetary relief could exist without

23  the declaratory judgment action, the district court was required to retain jurisdiction over the

24  action.

25      This same result was reached by the Ninth Circuit in *United National Ins. Co. v. R & D*

26  *Latex*, 242 F.3d 1102 (9th Cir. 2001).  In that case, Mydrin was sued for a defective product.

27  Travelers agreed to defend Mydrin under a reservation of rights.  After initially spending more

28  than $300,000 to defend Mydrin Travelers abruptly cut off all support.  Then, while the actions

1   were still pending, Travelers filed an action in federal court for declaratory relief and for

2   reimbursement of the defense costs it had advanced in defending Mydrin in the underlying

3   actions. *R & D Latex*, 242 F.3d at 1106.

4   ///

5       The district court declined to exercise discretionary jurisdiction under the Declaratory

6   Judgment Act, and dismissed the action. *Id.* at 1107-1108. Two weeks later, Mydrin filed its own

7   declaratory relief action in state court, which Travelers removed to federal court. Travelers then

8   filed a counterclaim for reimbursement for the money it had spent defending Mydrin in the

9   underlying action. *Id.* at 1108. Mydrin again moved to dismiss on abstention ground, the same

10  basis that the district court dismissed Travelers' earlier 1994 action. The district granted Mydrin's

11  motion and Travelers appealed. *Id.* at 1108.

12      The Ninth Circuit reversed because of Travelers' reimbursement counter-claim. The court

13  held that in determining whether the presence of claims for monetary relief affected the court's

14  ability to abstain from hearing the case, "the district court should <u>consider whether it has subject</u>

15  <u>matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined</u>

16  <u>with one for declaratory relief.</u>" *Id.* at 1113. In finding that the district court erred in not retaining

17  jurisdiction, the court noted:

18          It appears the district court believed that, for purposes of this
            analysis, two claims are "independent of" one another only if one
19          can be resolved without disposing of the legal issues raised in the
            other. Thus, the court determined that the reimbursement claim here
20          was not independent of the declaratory claim, but rather "derivative"
            of it. We do not believe this is the proper analysis. A breach of
21          contract claim could be deemed derivative of a declaratory claim
            raising the same substantive questions, yet the presence of the breach
22          of contract claim would affect the district court's discretionary
            jurisdiction.
23
24  *Id.* at 1112. Because there was no dispute that the district court had subject matter jurisdiction

25  over Travelers' reimbursement claim, and that claim could have been sustained in federal court in

26  the absence of a claim for declaratory relief, the Ninth Circuit held that the district court abused its

    discretion in dismissing the action.
27

28

1    Here, Homestake's claims for breach of contract and breach of the covenant of good faith

2  and fair dealing can exist independently of, and are certainly not dependent upon, Homestake's

3  declaratory relief claim.  First, as in *Snodgrass*, this Court has jurisdiction over Homestake's

4  claims for reimbursement even if its declaratory relief claim were dropped from the case.

5    Second, Homestake's reimbursement claim does not need to be joined to a claim for

6  declaratory relief.   Homestake filed suit because CNA and National Union stopped reimbursing

7  Homestake for its defense costs in connection with the Ellison and Bray Claims after those claims

8  had been settled and Defendants' liability had been capped.  This action is not a mere "coverage

9  action" because CNA has already taken substantial steps to provide coverage, and Homestake has

10 relied on these actions in entering into the underlying settlements.  The declaratory relief claim is

11 simply "belt and suspenders" because Homestake's contract claim has already matured.

12    CNA's reliance on *Employers Reinsurance v. Karussos,* 65 F.3d 796 (9th Cir. 1995) and

13 *Golden Eagle Ins. v. Travelers Companies,* 103 F.3d 750 (9th Cir. 1996) is misplaced.  In those

14 cases insurers sued other insurers for declaratory judgment and contribution, seeking clarification

15 of their duties to their joint insured with respect to <u>pending</u> underlying litigation.  The courts held

16 that an order granting monetary relief was dependent on the court first favorably resolving the

17 claim for declaratory relief.  However, the Ninth Circuit has held that *Karussos* does not apply

18 where independent claims for monetary relief are joined with a request for declaratory judgment

19 (*see, e.g., Snodgrass*, 147 F.3d at 1167-68; *R & D Latex*, 242 F.3d at 1112), which is exactly the

20 case here.  Homestake's case is not a declaratory relief dispute, but an action for reimbursement of

21 defense costs—much like Travelers' reimbursement claim in *R & D Latex*—in connection with

22 two long-settled groups of claims.[2]  CNA and National Union agreed to indemnify Homestake for

23 the costs of settling the Ellison and Bray Claims, and have partially reimbursed Homestake for it's

24

25

---

26 [2]   Indeed, in *R & D Latex*, at least one of the two underlying actions against Travelers' insureds
     was still pending at the time of the oral argument before the Ninth Circuit, and yet the court
27   still found that the district court erred in dismissing the case.  *R & D Latex*, 242 F.3d at 1106.

28

1  defense costs for those claims.  Thus, because the "heart" of Homestake's federal action is not for

2  declaratory relief, but rather for monetary damages, *Karussos* and *Golden Eagle* do not apply.

3       Finally, CNA suggests that *R & D Latex* actually supports its position that this Court

4  should apply *Brillhart* to this case:

5         Although Homestake alleges claims for breach of contract and bad
         faith in addition to its request for declaratory relief, because the
6         request for declaratory relief lies at the heart of the action—as the
         breach of contract and bad faith claims are wholly dependent upon
7         the resolution of Homestake's request for declaratory relief—the
         Brillhart/Wilton abstention doctrine applies.

8

9  (Motion, 4:2-28.)  In fact, however, this excerpt from *R & D Latex* is nothing more than the

10 court's description of its prior holdings in *Karussos* and *Golden Eagle*.  *See R & D Latex*, 242

11 F.3d at 1112 (after citing *Karussos* and *Golden Eagle,* the court stated: "Both times we concluded

12 that, despite requests for monetary relief, the actions were primarily declaratory in nature and

13 therefore jurisdiction remained discretionary.")  Accordingly, not only is this excerpt from *R & D

14 Latex* <u>not</u> the holding of the court, but the court in that case actually found exactly the opposite,

15 that is, that the reimbursement claim was <u>not</u> merely "derivative" because it could be sustained in

16 the absence of a claim for declaratory relief.

17      **2.    The Court Should Not Abstain from Exercising Jurisdiction over this
             Action**

18
        **a.    CNA's Motion Should be Denied Because This Action and the
19            New York Action are Not Substantially Similar**

20      Under *Colorado River*, courts should only abstain under exceptional circumstances.

21 *Colorado River*, 424 U.S. at 813.  The decision to abstain results after a "careful balancing" of

22 several factors "with the balance <u>heavily weighted</u> in favor of exercising jurisdiction."  *Moses H.*

23 *Cone*, 460 U.S. at 16 (emphasis added).  As the Supreme Court stated in *Moses H. Cone*:

24         [O]ur substantial task in cases such as this is not to find some
         substantial reason for the exercise of federal jurisdiction by the district
25         court; rather, the task is to ascertain whether there exists "exceptional"
         circumstances, the "clearest of justifications;" that can suffice under
26         *Colorado River* to justify the *surrender* of that jurisdiction.

27

28

SF #1314783 v1                          -11-

1    *Id.* at 25-26 (emphasis in original). However, because cases that are not truly duplicative do not

2    invite *Colorado River* deference, an examining court must first assess whether the federal and

3    state court actions are even "substantially similar" or "parallel." *Colorado River*, 424 U.S. at

4    819-820.

5           With regard to parallel state and federal proceedings, "the Supreme Court has held, over

6    and over . . . that in the usual case the federal courts must hear the cases that fall within their

7    jurisdiction." *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934 (4th Cir. 1992) (emphasis in

8    original) (internal citations omitted). Moreover, "[t]he *Colorado River* doctrine does not give

9    federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues

10   or factual disputes in those cases may be addressed in past or pending proceedings before state

11   tribunals." *McLaughlin*, 955 F.2d at 935 (internal citations omitted).

12          In order to constitute a "parallel" proceeding, the "federal and state proceedings [must]

13   involve substantially the same parties and substantially the same issues." *Ambrosia*, 368 F.3d at

14   1330 (*quoting Colorado River*, 424 U.S. at 818). That "substantial similarity" requires an

15   equally-resulting substantial likelihood that the state litigation will dispose of all claims presented

16   in the federal case. *Lumen Const., Inc. v. Bryant Const. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.

17   1995). "The issue is whether [the state court proceeding], as it *currently* exists, *is a parallel* state-

18   court proceeding." *Baskin v. Bath Township Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir.

19   1994) (citation omitted) ( emphasis in original). If there is any doubt that the state litigation

20   would be an "adequate vehicle for the complete and prompt resolution of the issues between the

21   parties," it would be a "serious abuse of discretion" for a district court to stay or dismiss a case in

22   deference to the state litigation. *AAR Intern., Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th

23   Cir. 2001) (*citing Moses H. Cone*, 460 U.S. at 28). Absent "substantial similarity" of parties, a

24   proceeding cannot be parallel. *Ambrosia*, 368 F.3d at 1330.

25          Here, the substance of Homestake's complaint is not substantially similar to the issues

26   raised by CNA in the New York action. In fact, these suits are quite different. Homestake's

27   federal suit is a collection action for reimbursement of attorneys fees incurred in <u>claims that have</u>

28   <u>already settled with Defendants' participation and agreement</u>. This is not a declaratory relief

1   action, as CNA and National Union have both agreed to indemnify Homestake for the settlement

2   of the underlying Bray and Ellison Claims.  Homestake is simply asking this Court to compel

3   Defendants to make Homestake whole for its defense costs.  In contrast, the New York action

4   relates to an ongoing underlying BNSF action.  Moreover, central to this federal action will be

5   Homestake's insurers' cost-sharing agreement and agreements to settle the Ellison and Bray

6   Claims, which are not implicated in the New York action.  Finally, while there may conceivably

7   be some factual overlap between the two actions, the Ellison and Bray Claims are specifically

8   <u>carved out</u> of the BNSF action.

9           The parties in this federal action and the New York action are also dissimilar.  *Compare*

10  *Admin. Comm. v. Gauf*, 188 F.3d 767, 772 (7th Cir. 1999) (holding cases not parallel where

11  plaintiff in federal case was not party in state action); *RepublicBank Dallas, Nat'l Ass'n. v.*

12  *McIntosh*, 828 F.2d 1120 (5th Cir. 1987) (holding cases not parallel where additional party was

13  present in federal action); *Crawley v. Hamilton Co. Commissioners*, 744 F.2d 28, 31 (6th Cir.

14  1984) (holding cases not parallel where defendants in respective actions were different).  None of

15  the parties in the New York action other than Homestake, National Union and CNA, are present in

16  this action.  The reason is simple:  CNA and National Union owed Homestake an independent

17  duty to defend Homestake "in full" after Defendants settled the Ellison and Bray Claims on its

18  behalf.  The presence of other potential insurance would have no bearing on these issues.

19                    **b.       None of the *Colorado River* Factors Weigh in Favor of Dismissal**
                                **or a Stay**

20

21          Under *Colorado River* and its progeny, even where there is another action pending

22  involving the same subject matter—which is not the case here—several factors must first be

23  weighed before abstaining from an action.  "No one factor is necessarily determinative," and

24  "[t]he weight to be given to any one factor may vary greatly from case to case[.]"  *Moses H. Cone*,

25  460 U.S. at 16.  Furthermore, "the factors must be considered flexibly and pragmatically, not as a

26  'mechanical checklist.'"  *Ambrosia*, 368 F.3d at 1332 (*quoting Moses H. Cone*, 460 U.S. at 16).

27          The Supreme Court in *Colorado River* listed four factors that a court may consider in

28  determining whether to stay or dismiss an action: (1) whether the state court first assumed

1 | jurisdiction over property; (2) inconvenience of the federal forum; (3) the desirability of avoiding
2 | piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent
3 | forums. *Colorado River*, 424 U.S. at 818-819.  In *Moses H. Cone,* the Court added two additional
4 | factors: (5) whether federal or state law provides the rule of decision on the merits; and (6)
5 | whether the state court proceedings are inadequate to protect the federal litigant's rights. *Moses*
6 | *H. Cone*, 460 U.S. at 23, 26.  In the Ninth Circuit, a seventh factor is also considered: the
7 | prevention of forum shopping. *See Travelers Indemnity Co. v. Madonna,* 914 F.2d 1364, 1367-68
8 | (9th Cir 1990).  Here, none of the relevant factors weighs in favor of a dismissal or a stay.

9 | <center>(1)     No Court has Assumed Jurisdiction over Property</center>

10 | Since this case deals with monetary obligations, neither this Court nor the New York state
11 | court have taken control of any property.  Therefore, this factor does not support abstention.

12 | <center>(2)     This Federal Forum Would Not Inconvenience the<br>Parties</center>
13 |

14 | This Court is also not so inconvenient so as to warrant abstention.  According to its web
15 | site, CNA is the seventh largest commercial insurer in the country and has an office in San
16 | Francisco.  Thus, CNA would be hard-pressed to claim that litigating this case in California would
17 | be so burdensome as to warrant dismissal.  Further, as noted above, several key witnesses in this
18 | case reside in California, including the lawyers for Homestake, National Union and CNA that
19 | negotiated the settlement of the Ellison and Bray Claims.  Other likely Homestake witnesses will
20 | include Wayne Kirk, Esq., a former Thelen partner and former Homestake General Counsel, and
21 | Tom Wong, former Assistant Treasurer and Assistant Secretary of Homestake, who directed
22 | Homestake's insurance program, both of whom reside in the Bay Area.  Finally, Homestake's
23 | insurance broker, Marsh Risk & Insurance Services of San Francisco, was involved in the
24 | placement of the National Union policies and the adjustment of the bodily injury claims
25 | underlying this lawsuit, and its employees, including Bruce Anderson, John McLaughlin and Joe
26 | Duer, are residents of the Bay Area and are potential witnesses.  (Hendrick Decl.,  ¶¶ 3, 7.)
27 | Therefore, this factor also weighs against abstention.
28 |

(3)    Permitting this Action to Proceed will not Result in
            Piecemeal Litigation

Allowing this action and the New York action to continue will not result in piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American International Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). However, abstention "is not warranted simply because related issues . . . w[ill] be decided by different courts… [S]omething more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir. 1990).

As noted above, Homestake's federal action deals with issues that are outside the scope of the New York action. Allowing both suits to proceed will, therefore, not result in duplicative efforts or run the risk of reaching different results with respect to these different issues. In any event, even if there is some limited overlap between the two actions, "[d]uplication and inefficiency are not enough to support a federal court's decision to bow out of a case over which it has jurisdiction." *Villa Marina*, 915 F.2d at 19 (*citing Moses H. Cone*, 460 U.S. at 16.) In light of the substantial differences between this action and the New York action, and the fact that this Court must decide CNA's motion "with the balance heavily weighted in favor of the exercise of jurisdiction" (*Moses H. Cone*, 460 U.S. at 16), this factor also weighs against abstention.

(4)    The New York Action does not have "Priority" over
            this Action

While the New York action was filed in January 2007, this factor does not weigh in favor of abstention. The complaint in the New York action was not served on Homestake until April 20, 2007, less than a month before the commencement of this federal action on May 17, 2007, and both cases are in their infancy. The last defendant in the New York action filed its answer on June 15, 2007. None of the parties has served any discovery. The New York action has also been assigned and reassigned to three different justices since June, and other than a motion for admission pro hac vice filed by CNA, no substantive motions have been filed. (Balderston Decl.,

1  ¶¶ 2-4.)  In any event, this factor should be given less importance because, as noted above,

2  Homestake's case deals with different claims and issues than the New York action.

3                    (5)    Application of State Law

4          While Homestake's case deals with issues of state law, the "presence of state-law issues

5  weigh in favor of abstention only 'in some rare circumstances'" (*Moses H. Cone*, 460 U.S. at 26),

6  none of which apply here.  Indeed, in the Ninth Circuit, "the presence of state law issues –

7  <u>especially issues relating to breach of contract</u> – [are] not generally a valid justification for

8  granting a stay under the *Colorado River* doctrine."  *Intel Corp. v. Advanced Micro Devices, Inc.*,

9  12 F.3d 908, 915 (9th Cir. 1993) (emphasis added).  *See also Madonna*, 914 F.2d at 1370 ("Since

10  this case involves routine issues of state law – misrepresentation, breach of fiduciary duty, and

11  breach of contract – which the district court is fully capable of deciding, there are no such 'rare

12  circumstances' here.").  Just as in *Intel* and *Madonna*, this case deals with "routine" issues of state

13  law (breach of contract and bad faith).  Thus, this factor weighs against abstention.

14                    (6)    Adequacy of the State Court Proceedings

15          "The possibility that the state court proceeding might adequately protect the interests of the

16  parties is not enough to justify the district court's deference to the state action."  *Madonna*, 914

17  F.2d at 1370 (*quoting Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328

18  (2d. Cir. 1986)).  Here, the New York action would not protect Homestake's interests because

19  under New York law, had Homestake chosen not to bring this California action and instead chose

20  to assert a counterclaim in the New York Action, such assertion would in all likelihood have

21  resulted in the waiver by Homestake of its defense of lack of personal jurisdiction in New York.

22          As CNA conceded in its New York complaint, Homestake is a California corporation with

23  a principal place of business outside New York.  Further, CNA alleges no facts in its

24  complaint that would justify the use of New York's Long Arm Statute to assert

25  jurisdiction over Homestake, and Homestake has denied that it is subject to the jurisdiction of the

26  New York court.  However, under New York law, a defendant waives a defense of lack of

27  personal jurisdiction if it asserts a counterclaim unrelated to the allegations of the Complaint.

28

1    *Textile Technology Exchange, Inc., v. Davis*, 81 N.Y. 2d 56 (1993).  *See also N.A.S. Holdings,*

2    *Inc., v. Pafundi*, 12 A.D. 3d 751 (3rd Dept 2004).

3        In the *Textile Technology* case, the Court of Appeals took note of the fact that the

4    Appellate Divisions in New York had developed a rule whereby a defendant waived the defense

5    of lack of personal jurisdiction because the defendant by doing so, was taking affirmative

6    advantage of the court's jurisdiction.  *Textile Technology*, 81 N.Y. 2d at 58-59.  In adopting the

7    rule as the law of New York, the Court of Appeals wrote:

8           We agree with the underlying rationale of such rule and now adopt
            it  We clarify, however, that a counterclaim will only be
9           "unrelated" for these purposes when such counterclaim could
            potentially be barred under principles of collateral estoppel - where
10          the issues in the plaintiffs' claims are potentially identical and
            decisive of issues raised in the counterclaims (*see Gramatan Home*
11          *Investors Corp. v. Lopez*, 46 N.Y. 2d 481, 486, 414 N.Y.S.2d 308,
            386 N.E. 2d 1328)....While all counterclaims are "permissive"
12          (CPLR 3019), the spectre of collateral estoppel often requires a
            defendant to bring certain counterclaims in order to avoid the risk
13          of later preclusion (*see, e.g.* Siegel, N.Y. Prac. section 224 at 328,
            and section 452, at 684-685 [2d ed.]).

14   *Id.* at 59.

15       In *Gramatan*, the Court of Appeals, in discussing the doctrine of collateral estoppel,

16   stated that the two necessary elements that must be present for a party to invoke the principle of

17   collateral estoppel are (1) the party against whom the doctrine is applied must have "been afforded

18   a full and fair opportunity to contest the decision said to be dispositive of the present controversy,"

19   and (2) "Additionally, there must be proof that the issue in the prior action is *identical, and thus*

20   *decisive, of that in issue in the current action*."  *Gramatan*, 46 N.Y. at 485 (emphasis added).

21       Here, because this action and the New York action are not substantially similar, had

22   Homestake chosen to file a counterclaim in the New York action it would have been forced to

23   abandon or at least prejudice its jurisdictional defense.  Therefore, this factor also strongly weighs

24   against abstention.

25                    (7)    Prevention of Forum Shopping

26       Homestake did not engage in forum shopping.  Homestake did not assert its breach of

27   contract claims in the New York action because the New York action involves different issues and

28   witnesses.  At issue in this federal action is Homestake's entitlement to unpaid defense costs for

the Ellison and Bray Claims.  At issue in the New York action is whether Homestake is entitled to any defense at all in the ongoing BNSF action, <u>which by its very terms does not include the Ellison and Bray Claims</u>.  Therefore, CNA cannot imply forum shopping merely because Homestake chose not to add further claims to the already complex New York action.  The fact that both actions happen to involve, in part, disputes regarding coverage for bodily injury claims (Motion, 7:9-10) does not somehow make the cases "parallel" or "substantially similar."  California is also the logical choice for Homestake to file its case.  Homestake is a California corporation.  The National Union policies were issued in California.  Several key witnesses are located in California.  Finally, as noted above, if Homestake filed a counterclaim in the New York action it would have arguably waived its jurisdictional defense.  Thus, this factor also weighs against abstention.

      **3.**     **Even if this Court were to Apply the *Brillhart* Standard, it should not Dismiss or Stay this Action**

          **a.**     **CNA has Offered No Evidence To Support its Claims**

As the moving party, CNA carries the burden to establish that it is entitled to the relief it seeks.  Further, since CNA's arguments necessarily go beyond the four corners of the relevant pleadings, it must satisfy its burden through use of declarations, affidavits or other admissible evidence.  *Noerr Motor Freight, Inc. v. Eastern R.R. Presidents Conference*, 113 F.Supp. 737, 745 (E.D. Pa. 1953) (deciding whether venue was proper).  Here, however, CNA has offered no competent admissible evidence to support its theory that the New York action would be a more appropriate forum for this action, even under the *Brillhart* test.[3]

For example, CNA contends that this case should be dismissed because "[t]he majority of the interested parties are located in or near New York" and therefore "[t]he majority of documents and witnesses are <u>likely</u> located in or near New York."  (Motion, 11:6-8) (emphasis added).

---

[3]   Further, CNA should not be permitted to try to cure the evidentiary defects for the first time in its reply papers.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-895 (1990) (district court did not abuse discretion by refusing to consider late-filed affidavits).

1    However, CNA offers no evidence to support its assertions. Indeed, as noted above, several key

2    witnesses with knowledge concerning the facts in this federal action reside here in California.

3         CNA also argues that "the New York Action is further along" (Motion, 9:3-5) in the sense

4    that all of the interested parties have answered the complaint. However, the same is true here, as

5    both CNA and National Union have been served and made their initial appearances. Indeed, the

6    reason CNA has not demonstrated how much "further along" the New York action is because that

7    case, like this one, is in its infancy. (Balderston Decl., ¶¶ 2-4.)

8         Finally, CNA argues that Homestake is only "nominally incorporated in California" and

9    therefore, has "no connection to California." (Motion, 3:14-15.) Not true. Homestake is a

10   California corporation in good standing, and a number of its key former employees with

11   knowledge of the key issues in this case reside in California. (Hendrick Decl., ¶¶ 3, 7.)

12                    **b.    None of the *Brillhart* Factors Weigh in Favor of Dismissal or a Stay**

13        Even if this Court were to apply *Brillhart* to Homestake's federal suit, CNA's motion

14   should be denied. Under *Brillhart*, the central issue is whether "the questions in controversy

15   between the parties to the federal suit . . . can be better settled in the proceeding pending in the

16   state court." *Brillhart*, 316 U.S. at 495. While the Supreme Court did not provide an exhaustive

17   list of factors to consider, it did provide some useful guideposts, including (1) whether abstention

18   would avoid needless determination of state law issues, (2) whether abstention would discourage

19   litigants from filing declaratory actions as a means of forum-shopping, and (3) whether abstention

20   would avoid duplicative litigation. *Id*. at 495. However, the district court's discretion is not

21   unfettered. "A district court cannot decline to entertain such an action as a matter of whim or

22   personal disinclination." *Public Affairs Assoc. v. Rickover*, 369 U.S. 111, 112 (1962). Further,

23   there is "no presumption in favor of abstention in declaratory actions generally, nor in insurance

24   cases specifically." *Dizol*, 133 F.3d at 1224. A review of the *Brillhart* guideposts shows that

25   abstention is unwarranted in this case.

26                    (1)    <u>Abstention will not Avoid the Determination of State</u>
                            <u>Law Issues</u>

27

28

1    While Homestake's Complaint does assert state law claims, this does not warrant the

2 dismissal of this action. "The concern in this factor is with underlying issues of state law, not fact

3 finding in the specific case." *Nat. Chiropractic Mut. Ins. Co. v. Doe*, 23 F.Supp.2d 1109, 1118 (D.

4 Alaska 1998) (emphasis added). If state law is not clear, "absent a strong countervailing federal

5 interest, the federal court should not elbow its way…to render what may be an 'uncertain' and

6 'ephemeral' interpretation of state law." *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992).

7 Therefore, a federal court should only abstain, if at all, if the issues "implicate novel or unsettled

8 matters of state law." *Allstate Ins. Co. v. Davis*, 430 F.Supp.2d 1112, 1120 (2006). In contrast,

9 Homestake's claims here do not "implicate novel or unsettled matters of state law," and there are

10 certainly no "important state law issues" that this Court would be incapable of resolving.[4]

11    The authorities cited by CNA are also inapposite. This case does not implicate any

12 "complex state administrative processes." *Compare* C*ontinental Cas. Co. v. Robsac Industries*,

13 947 F.2d 1357, 1371 (9th Cir. 1991). Nor will this Court be called upon to analyze any "detailed

14 regulatory schemes" in connection with Homestake's claims. *Compare Quackenbush v. Allstate*

15 *Ins. Co*., 517 U.S. 706, 773 (1976) (J. Kennedy, concurring).[5] Homestake is simply seeking

16 reimbursement of its defense costs under a contract and for additional damages for breach of the

17 covenant of good faith and fair dealing. These are straightforward issues that federal courts have

18 adjudicated many times, and that this Court is certainly suitably equipped to decide.

19              (2)     Homestake did not Engage in Forum Shopping

20  _____

21 [4]   CNA does not even identify what these "important" issues would be, let alone that they are so
complex such that only a New York court would be qualified to decide them.

22 [5]   CNA's reliance on *Allstate Ins. Co. v. Mercier*, 913 F.2d 273 (9th Cir. 1990) is also misplaced.
23 There, a homeowner's insurer brought a pure declaratory judgment action to determine
whether it was obliged to defend and indemnify its insured in a pending state suit. After the
24 district court granted summary judgment in favor of the insurer, the insured appealed and the
Ninth Circuit reversed, holding that the district court should have abstained from hearing the
25 action. The chief basis for this holding was that because of the pending underlying action
"there is a real possibility that the district court's declaration of no coverage would conflict
with a state court's determination as to the coverage issue of the facts." *Mercier*, 913 F.2d at
26 278. In contrast, here, the Ellison and Bray Claims have been fully resolved. Thus, there is no
risk of any factual conflicts, and there is no question that a declaratory judgment at this point
27 will settle the controversy between the parties.

28

1    CNA's suggestion that Homestake's actions constitute an "inference of forum shopping" is

2    without merit.  (Motion, p. 7:22-23.)  As discussed above, Homestake did not assert its breach of

3    contract claims in the New York action for the simple reason that the New York action involves

4    different issues and witnesses.  Moreover, California is a logical choice because (1) Homestake is

5    a California corporation, (2) the National Union insurance policies were issued directly to

6    Homestake in California, and (3) several key witnesses are located in California.  Simply put, the

7    parties and issues in this litigation have a substantial connection to California.

8                              (3)    There is no Duplicative Litigation

9        The central concern regarding this *Brillhart* guidepost arises "when parallel state

10   proceedings involving the <u>same issues</u> and parties [are] pending at the time the federal declaratory

11   action is filed . . . ."  *American Casualty Company v. Krieger*, 181 F.3d 1113, 1118 (9th Cir. 1999)

12   (emphasis added.)  If so, "there is a presumption that the entire suit should be heard in state court."

13   *Krieger*, 181 F.3d at 1118.  However, as noted above, Homestake's action does not involve the

14   "same issues" as the New York action.  Thus, abstention would not avoid duplicative litigation,

15   since each case can be separately litigated without risking judgment on the same issues.

16       The fact that CNA filed its state court action in January 2007, but did not serve it on

17   Homestake until April, certainly does not raise "the specter of unnecessary duplication of effort

18   and waste of judicial resources should this Court decline to abstain."  (Motion, 9:15-17.)  CNA

19   will not be "forced to litigate similar issues in two forums" absent abstention.  The Bray and

20   Ellison Claims as to Homestake have been carved out of the BNSF action and, therefore, the New

21   York action as well.  And Defendants will not be litigating the propriety of their refusal to defend

22   Homestake "in full" in connection with the Ellison and Bray Claims in the New York action.

23   **B.    This Court Should Not Dismiss this Case for Convenience**

24       As a last gasp CNA suggests that this Court, even if it appropriately refuses to abstain from

25   this action, should nevertheless <u>dismiss</u> this case because "New York is a more convenient

26   forum."  (Motion, 1:8.)  CNA's argument is unsupported both by the law and the facts.

27

28

1    **1.    CNA's Authority Is Inapposite**

2    The authorities upon which CNA relies, *Lueck v. Sundstrand Corporation*, 236 F.3d 1137

3    (9th Cir. 2001 ) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), are plainly inapposite as

4    both cases involved the question of whether a federal action should be dismissed because there is a

5    more convenient forum in another country.

6    In *Lueck*, the estates of several passengers on a plane that had crashed in New Zealand, all

7    of whom were citizens of New Zealand, brought a product liability action against the Canadian

8    manufacturer of the plane and the American manufacturers of certain components.  The

9    defendants moved to dismiss for *forum non conveniens*.  The district court dismissed the case and

10   the Ninth Circuit affirmed, noting that "[a] district court has discretion to decline to exercise

11   jurisdiction in a case where litigation in a foreign forum would be more convenient for the

12   parties." *Lueck*, 236 F.3d at 1142 (emphasis added).  The court based its holding on the Supreme

13   Court's decision in *Piper Aircraft*, which it noted also involved a motion to dismiss an action on

14   the grounds that a foreign country was a more suitable forum.  *Id.* at 1143.

15   While the common law doctrine of *forum non conveniens* "remains viable in federal courts

16   where the proposed alternative forum is a foreign country," "where it is a different federal district,

17   forum non conveniens has been replaced by § 1404(a) which allows *transfer* from one district to

18   another." W. Schwarzer, *et al.,* California Practice Guide, Federal Civil Procedure Before Trial, ¶

19   4:835,p. 4-97 (2007).  The Ninth Circuit has likewise held that "[t]he doctrine of forum non

20   conveniens survives in federal court only where the alternative forum is in a foreign country." *See*

21   *Monegro v Rosa*, 211 F.3d 509, 513 (9th Cir. 2000) (emphasis added).  Thus, because CNA does

22   not claim that another country would be a more suitable forum, its motion must be denied.

23   **2.    The Facts do Not Warrant Dismissal**

24   Even assuming, *arguendo*, that this Court is inclined to consider CNA's arguments, an

25   examination of the relevant private and public factors weigh against dismissing this action.

26   First, as CNA concedes, there is a "strong presumption" in favor of the plaintiff's choice of

27   forum, a choice that may only be overcome when the relevant private and public factors "clearly

28   point towards trial in the alternative forum."  (Motion, 10:10-22 (*quoting Piper Aircraft*, 454 U.S.

1  at 255).)  Further, "'[i]n any balancing of conveniences, a real showing of convenience by a

2  plaintiff who has sued in his own forum will normally outweigh the inconvenience of the

3  defendant may have shown." *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947).

4         Second, the convenience of witnesses is typically the most important factor in ruling on a

5  motion to transfer for convenience. *A. J. Industries, Inc. v. District Court,* 503 F.2d 384, 389 (9th

6  Cir. 1974).  This factor clearly weighs in favor of Homestake.  As discussed above, several of the

7  parties' key witnesses reside in California, including the lawyers for CNA and National Union

8  who were involved in the negotiations between Homestake and its insurers that resulted in the

9  settlement of the Ellison and Bray Claims, several of Homestake's executives involved in the

10  purchase of Homestake's insurance, and Homestake's broker Marsh, who obtained the National

11  Union policies for Homestake.  (Hendrick Decl.,  ¶¶ 3, 7.)  The fact that Homestake's principal

12  office is no longer in California is irrelevant, as Defendants do not dispute that venue is proper in

13  this District, and several key witnesses reside here.

14         CNA suggests that the "center of gravity" of this case lies on "the East Coast" because

15  "[t]he majority of the interested parties are located in or near New York" and therefore "[t]he

16  majority of documents and witnesses are underline likely located in or near New York."  (Motion, 11:1-15

17  (emphasis added).)  Not true.  CNA has offered no evidence to support its assertion.  Further,

18  based on the issues raised in this federal action, the "center of gravity" of this case lies in

19  California.

20         Third, the various public factors—including the burdens on local courts, the interest in

21  having a matter decided locally, and the Court's familiarity with governing law—also do not

22  weigh in favor of dismissal.  CNA's characterization of this federal action as involving "parties

23  dispersed in various states regarding contracts entered into in different states" (Motion, 12:2-3) is

24  false.  Here, the issue in this federal action is whether CNA and National Union breached their

25  duty to make Homestake whole in connection with the defense of the Ellison and Bray Claims.

26  The majority of the key witnesses are in California.  Further, the issues at the forefront of the New

27  York action have no bearing on Homestake's claims.  Finally, California and its residents have a

28  strong interests in seeing that one of its corporate citizens have its day in court locally. There is no

1    reason to require the expansion of the New York action to accommodate what is in essence a

2    California "collection" action for attorneys fees and costs.

3        Finally, CNA suggests that because New York law may govern the interpretation of its

4    policies, Homestake should be forced to litigate its claim against CNA and National Union in New

5    York in order to avoid "potential conflicts." (Motion, 12-13.) Once again, however, CNA's

6    argument is unsupported by the law and the facts. This Court, sitting in diversity, must apply the

7    law of California for choice of law purposes. *Homedics, Inc v. Valley Forge Ins. Co.*, 315 F.3d

8    1135, 1138 (9th Cir. 2003). "In order to persuade a California court to apply the law of another

9    forum, the proponent of the other forum's laws must invoke the law of the foreign jurisdiction,

10    show that it materially differs from California law, and demonstrate how applying that law will

11    further the interest of the foreign jurisdiction." *Garamendi v. Mission Ins. Co.*, 131 Cal.App.4[th]

12    30, 41 (2005). Therefore, even assuming that its choice of law analysis is correct, because CNA

13    has not established that there is even a conflict between the laws of New York, Connecticut,

14    California, or any state for that matter, as to the relevant issues <u>in this case</u>, the necessary

15    predicate for its argument that dismissal will result in the "avoidance of unnecessary conflict of

16    laws" (Motion, 12:7-8) is missing. And where no choice of law inquiry is implicated "the choice

17    of law

18    ///

19    determination is given much less deference on a forum non conveniens inquiry." *Lueck*, 236 F.3d

20    at 1148 (motion to dismiss in favor of jurisdiction by a foreign country).

21        In any event, CNA cannot dispute that this Court is capable of interpreting CNA's policies,

22    even under New York law. Moreover, the National Union policies will likely be interpreted under

23    California law, where Homestake is a resident and where the policies were delivered.

24        Permitting this action to proceed will not result in a fragmented resolution of issues. CNA

25    has not and cannot establish that Homestake's choice of forum should be disregarded, and that it

26    should be forced to interject its reimbursement claim into the New York action. There is,

27    therefore, no basis to dismiss this action.

28

1

## IV.    CONCLUSION

2      CNA's motion should be denied. This action and the New York action are not substantially

3 similar, and even if they were, CNA has not and cannot demonstrate that abstention—under either

4 *Colorado River* or *Brillhart*—is warranted.  Homestake's declaratory relief action is "belt and

5 suspenders" because its breach of contract claim against the defendants has already matured.

6 Finally, there is also no basis to dismiss this case for *forum non conveniens* because the alternate

7 forum CNA proposes is not a foreign country, and CNA has not sustained its heavy burden to

8 overcome Homestake's legitimate selection of this forum for its reimbursement action.

9 Dated:  August 1, 2007

10                                   THELEN REID BROWN RAYSMAN & STEINER LLP

11

12                          By _____/s/ Daven G. Lowhurst_____
                                   DAVEN G. LOWHURST
                                   Attorneys for Plaintiff
13                                 HOMESTAKE LEAD COMPANY OF MISSOURI

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28