1  DAVEN G. LOWHURST (State Bar No. 124723)
   dglowhurst@thelen.com
2  JOHN A. CHATOWSKI (State Bar No. 174471)
   jachatowski@thelen.com
3  THELEN REID BROWN RAYSMAN & STEINER LLP
4  101 Second Street, Suite 1800
   San Francisco, CA   94105-3601
5  Telephone: 415-371-1200
   Facsimile: 415-371-1211
6
7  Attorneys for Plaintiff
   HOMESTAKE LEAD COMPANY OF MISSOURI
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| HOMESTAKE LEAD COMPANY OF MISSOURI,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and THE CONTINENTAL INSURANCE COMPANY,<br><br>    Defendants. | CASE NO.  C-07-2634-EMC<br><br>**DECLARATION OF JAMES T. HENDRICK IN SUPPORT OF PLAINTIFF HOMESTAKE LEAD COMPANY OF MISSOURI'S OPPOSITION TO DEFENDANT CONTINENTAL INSURANCE COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY**<br><br>Date of Hearing:  August 22, 2007<br>Time:  10:30 a.m.<br>Judge:  Magistrate Edward M. Chen<br>Courtroom C, 15th Floor |
|---|---|

SF #1293668 v2

DECL. OF JAMES T. HENDRICK IN SUPPORT OF PLAINTIFF HOMESTAKE LEAD COMPANY OF MISSOURI'S OPPOSITION TO DEFENDANT CONTINENTAL INSURANCE COMPANY'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY

I, James T. Hendrick, declare:

1. I am member of the bar of this Court and am a partner in the firm of Thelen Reid Brown Raysman & Steiner LLP (formerly Thelen Reid & Priest LLP), counsel of record for Plaintiff Homestake Lead Company of Missouri ("Homestake"). Except as otherwise indicated, the following is based on my own personal knowledge, and if called upon to testify thereto, I could and would do so competently.

2. Beginning late in the year 2000, Homestake was named as a defendant in a series of actions filed in Missouri. I was retained to advise Homestake regarding insurance coverage for the claims in about December 2000 and have been so retained ever since. The plaintiffs in those actions were railroad employees alleging bodily injury as a result of exposure to products mined and/or produced by Homestake and others. The initial group of cases became known as the Ellison Claims. Homestake tendered the Ellison Claims to its insurers, including Continental Insurance Company ("CNA") and National Union Fire Insurance Company ("National Union") (collectively "Defendants"). Defendants, and each of them, accepted the tender of defense and later agreed, with each other and with other Homestake insurers, to share Homestake's defense costs in certain proportions.

3. In 2003, Defendants and three other Homestake insurers agreed to settle the Ellison Claims up to a total sum recommended by Homestake's defense counsel. I was involved in the settlement discussions on behalf of Homestake as they pertained to securing the agreement of Homestake's insurers to settle these claims. As between Homestake and Defendants, the other principal players at that time were (1) for CNA, Gretchen Ramos, Esq. of the San Francisco office of Carroll, Burdick & McDonough, and Leticia Diaz, at that time in the CNA office in New Jersey; and (2) for National Union, Steve Caporelli, who I am informed and believe moved from New Jersey to the San Francisco Bay Area, where he presently resides, and National Union's outside counsel, Jamie Vels, Esq. of the Los Angeles office of Lewis Brisbois Bisgaard & Smith.

4. As part of the settlement of the Ellison Claims, Homestake agreed to release certain co-defendants in those cases—including BNSF Railway Company—if CNA, National Union and Homestake's other insurers confirmed their obligations to reimburse Homestake in full for its

defense costs and settlement payments, without reservation. All parties agreed. Specifically, Defendants each (1) agreed to "fund its full share of the settlement amount as has been agreed among the insurers"; (2) agreed "not, thereafter, to seek reimbursement from Homestake of any portion of the settlement payment"; (3) agreed to "pay. . . all reasonable and necessary defense costs which have been incurred and will be incurred by Homestake in the defense of the claims being settled. . . in the portions which have been agreed among the insurers"; (4) agreed "not to seek reimbursement from Homestake of any portion of the defense costs paid"; and (5) confirmed "that the cost sharing agreement among the insurers provides for payment of the settlement amount and reasonable and necessary defense costs in full (i.e. the percentage shares total 100%)."

5. In May 2003, Homestake tendered to Defendants and its other insurers 90 new bodily injury claims. These claims—including certain additional later-filed claims and suits against Homestake—eventually were collectively referred to by the parties (including Defendants) as the Bray Claims. In 2004, Defendants and two of Homestake's other insurers authorized Homestake's defense counsel to settle the Bray Claims without the participation of the fifth insurer, The Travelers Indemnity Company. The settlement of the Bray Claims was eventually completed in or about June 2005 and, like the Ellison Claims before it, was funded by Defendants and by Hartford Accident & Indemnity Company and the Insurance Company of North America. Further, as was the case in connection with the settlement of the Ellison Claims, as part of its settlement of the Bray Claims, Homestake entered into a companion settlement agreement with certain of its co-defendants—including BNSF—by which it released its claims for indemnity and contribution against those co-defendants. Homestake did so again in reliance upon its expectation that Defendants would fulfill their obligations to reimburse Homestake's defense costs in full.

6. After defendants CNA and National Union accepted Homestake's tender and agreed to defend the Ellison Claims and, later, the Bray Claims, Defendants made some partial payments of Homestake's defense costs, though the payments were sporadic and ultimately insufficient to make Homestake whole. As of the date of this declaration, the amounts owed by Defendants total in excess of $400,000. National Union's last payment to Homestake was in August 2005. CNA's last payment to Homestake was in September 2005.

1      7.    Other potential witnesses in this case include the following residents of the Bay Area: Wayne Kirk, Esq., a former Thelen partner and former General Counsel of Homestake Mining Company of California, the parent of Plaintiff Homestake Lead Company of Missouri, who was in charge of the initial response to the underlying bodily-injury claims in Missouri and notification of Homestake's insurers; Tom Wong, former Assistant Treasurer and Assistant Secretary of Homestake Mining Company of California, who directed Homestake's insurance program; employees of Homestake's local insurance broker, Marsh Risk & Insurance Services of San Francisco, which handled the placement of Homestake's insurance with National Union and assisted in the notification of Homestake's insurers of the underlying bodily injury claims, including in particular Bruce Anderson, John McLaughlin and Joe Duer.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of August, 2007, at San Francisco, California.

                                       /s/ James T. Hendrick
                                       James T. Hendrick

## GENERAL ORDER 45 CERTIFICATION

I, Daven G. Lowhurst, hereby attest pursuant to N.D. Cal. General Order No. 45 that the concurrence to the filing of this document has been obtained from each signatory hereto.

Executed this 1st day of August, 2007, at San Francisco, California.

                                       /s/ Daven G. Lowhusrt
                                       DAVEN G. LOWHURST
                                       Attorneys for Plaintiff
                                       HOMESTAKE LEAD COMPANY OF MISSOURI